STATE OF TEXAS VS. RUBEN GUTIERREZ   **73462**   1



1               REPORTER'S RECORD

2           VOLUME 10 OF 32 VOLUMES

3        TRIAL COURT CAUSE NO. 98-CR-1391-A

4   - - - - - - - - - - - - - - - x
                                  :
5   THE STATE OF TEXAS            : IN THE DISTRICT COURT
                                  :
6   VS.                          : 107TH JUDICIAL DISTRICT
                                  :
7   RUBEN GUTIERREZ               : CAMERON COUNTY, TEXAS
                                  :
8   - - - - - - - - - - - - - - - x

9

10              INDIVIDUAL VOIR DIRE

11

12      On the 30th day of March, 1999, the following

13  proceedings came on to be heard in the above-entitled and

14  numbered cause before the Honorable Benjamin Euresti,

15  Jr., Judge Presiding, held in Brownsville, Cameron

16  County, Texas.

17      Proceedings reported by machine shorthand.

18

19              A P P E A R A N C E S

20  APPEARING FOR THE STATE OF TEXAS:

21      HON. JOHN T. BLAYLOCK
        State Bar No. 00784302
22      HON. KAREN L. FISCHER
        State Bar No. 00790685
23      Assistant District Attorneys
        Cameron County Courthouse
24      974 East Harrison
        Brownsville, Texas   78520
25      (956) 544-0849

FILED IN
COURT OF CRIMINAL APPEALS

DEC 8 1999

Troy C. Bennett, Jr., Clerk

ORIGINAL

PAM L. ESQUIVEL, CSR, RPR

STATE OF TEXAS VS. RUBEN GUTIERREZ                    2

1    APPEARANCES CONTINUED:

2    APPEARING FOR THE DEFENDANT:

3         HON. SANTIAGO GALARZA
          State Bar No. 00787508
4         Law Offices of Santiago Galarza
          3100 East 14th Street
5         Brownsville, Texas   78521
          (956) 541-4157
6
          AND
7
          HON. DANIEL R. REYES
8         State Bar No. 16794290
          Perez & Reyes
9         316 Nolana Loop
          McAllen, Texas   78504
10        (956) 972-1414

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

STATE OF TEXAS VS. RUBEN GUTIERREZ                                i

**VOLUME 10**

**CHRONOLOGICAL INDEX**

**MARCH 30, 1999**

**INDIVIDUAL VOIR DIRE:**

| NAME | STATE | DEFENSE | VOL |
|------|-------|---------|-----|
| Anita Anaya | 4 | 6 | 10 |
| Lydia Caldera | 14 | 18 | 10 |
| Eric Escobedo | 22 | 24 | 10 |
| Monica Rivera | 47 | 52 | 10 |
| America Barrera Lopez | 77 | 80 | 10 |
| Velma Lazo Peralez | 87 | 90 | 10 |
| Marcia Knight | 113 | 136 | 10 |
| Delia Ruiz | 174 | 189 | 10 |

| | PAGE | VOL |
|--|------|-----|
| Adjournment..................................224 | | 10 |
| Court Reporter's Certificate...................225 | | 10 |

**ALPHABETICAL INDEX**

| NAME | STATE | DEFENSE | VOL |
|------|-------|---------|-----|
| Anaya, Anita | 4 | 6 | 10 |
| Caldera, Lydia | 14 | 18 | 10 |
| Escobedo, Eric | 22 | 24 | 10 |
| Knight, Marcia | 113 | 136 | 10 |
| Lopez, America Barrera | 77 | 80 | 10 |
| Peralez, Velma Lazo | 87 | 90 | 10 |
| Rivera, Monica | 47 | 52 | 10 |
| Ruiz, Delia | 174 | 189 | 10 |

STATE OF TEXAS VS. RUBEN GUTIERREZ                                    3

```
 1                    P R O C E E D I N G S
 2               (Open court, defendant present)
 3               THE COURT:  All right.  You may be seated.
 4    Okay.  Let the record reflect that the defendant is
 5    present in the courtroom; that after consultation with
 6    the lawyers in this case, the jurors that were voir dired
 7    in his absence have been recalled and he's being given an
 8    opportunity to view these jurors and make any comments.
 9               And we'll begin with Anita Anaya who was
10    the first juror called in his absence yesterday; and all
11    the other jurors will be recalled in the same order as
12    before.
13               Do you have any comments?
14               MR. REYES:  No, Your Honor.
15               MS. FISCHER:  Judge, juror number 31, if
16    you want to go ahead and put on the record that he
17    presented a medical excuse yesterday and the Court
18    excused him based on that.  The State does not object to
19    that.
20               THE COURT:  Yes.  Juror number 31, Richard
21    Santana, presented a doctor's excuse.  He was injured, as
22    the record will recall, after the general voir dire; and
23    the Court granted him a medical excuse.  And I do not
24    think there was any --
25               MS. FISCHER:  The State does not object to
```

STATE OF TEXAS VS. RUBEN GUTIERREZ                                    4

```
 1   him being excused.
 2                   MR. REYES:  We didn't object either, Your
 3   Honor, to him being excused.
 4                   THE COURT:  All right.  Are you ready to
 5   proceed?
 6                   MR. REYES:  We're ready to proceed.
 7                   MS. FISCHER:  State's ready.
 8                   THE COURT:  Bring Ms. Anaya in.
 9                   THE BAILIFF:  Yes, Your Honor.
10                   THE COURT:  Good morning, Ms. Anaya.
11                   MS. ANAYA:  Good morning.
12                   THE COURT:  I'm sorry to bring you back,
13   but there's some matters that we have to put on the
14   record; and I apologize for the inconvenience.
15                   MS. ANAYA:  No.  That's okay.
16                   THE COURT:  You may proceed.
17                   MS. FISCHER:  Thank you, Judge.
18                        ANITA ANAYA,
19       having been called as a prospective juror and, upon
20       her oath, was examined and testified as follows:
21                   VOIR DIRE EXAMINATION
22   BY MS. FISCHER:
23       Q.   Good morning, ma'am.
24       A.   Good morning.
25       Q.   I'm Karen Fischer.  You probably remember who I
```

STATE OF TEXAS VS. RUBEN GUTIERREZ                                    5

1    am.  This is Mr. Blaylock, the same folks that were here

2    yesterday.

3                    I'm not going to ask you a whole lot of

4    questions, ma'am.  When we spoke yesterday, basically

5    after I had explained the law to you about not only the

6    guilt/innocence phase of the trial but also what was

7    going to happen in punishment, you told me that you could

8    be fair and impartial.  Is that still your feelings here

9    today?

10        A.    Yes.

11        Q.    Okay.  Has anything changed -- we asked you a

12   lot of questions yesterday.  After going home last night

13   and thinking about things, have any of your answers

14   changed or any of your feelings about this case changed

15   in any way?

16        A.    No.

17        Q.    Okay.  What about your feelings about the death

18   penalty?  After thinking about it and knowing that it's a

19   potential punishment here, have any of your feelings

20   about the death penalty changed?

21        A.    No.

22        Q.    Okay.  So when I ask you can you be fair and

23   answer the questions we ask you honestly regardless of

24   how you feel about the death penalty, can you do that?

25        A.    Yes.

STATE OF TEXAS VS. RUBEN GUTIERREZ                          6

1      Q.   Anything else that you want to tell me,
2    anything that you may have thought of last night that you
3    might think important for me to know about whether or not
4    you can be a fair and impartial juror in this case?
5      A.   No, I don't have anything.
6           MS. FISCHER:  I don't have any further
7    questions.
8      Q.   (BY MS. FISCHER)  Thank you, ma'am.
9      A.   Thank you.
10          THE COURT:  Mr. Reyes?
11          MR. REYES:  May I proceed?
12                 **VOIR DIRE EXAMINATION**
13   BY MR. REYES:
14     Q.   Ms. Anaya, good morning.
15     A.   Good morning.
16     Q.   I don't remember if you remember, my name is
17   Daniel Reyes; and we represent -- Mr. Galarza and I
18   represent Mr. Gutierrez in this case.
19          We just needed to ask you some additional
20   questions.  I hope you weren't inconvenienced by having
21   to come back.  I'll be asking you some questions again.
22   If you don't understand one of my questions, just let me
23   know and I'll go ahead and rephrase it; is that okay?
24     A.   Okay.
25     Q.   Now, yesterday we talked about some general

STATE OF TEXAS VS. RUBEN GUTIERREZ                                  7

1   principles of law; for example, the indictment.  Remember
2   that?
3        A.    Uh-huh.
4        Q.    And how it's no evidence against a person.  And
5   you stated that you'd be able to follow the instructions
6   of the Court, that that indictment is absolutely no
7   evidence against a person; is that correct?
8        A.    Yes.
9        Q.    Okay.  And that hasn't changed since yesterday?
10       A.    No.
11       Q.    Okay.  And we talked about the presumption of
12  innocence, that everybody that's charged with a crime is
13  presumed innocent until and only if they prove him guilty
14  and that presumption will be overcome.  Do you remember
15  that?
16       A.    Uh-huh.  Yes, I do.
17       Q.    And you said you agreed with that; is that
18  correct?
19       A.    Yes.
20       Q.    And has anything changed since yesterday?
21       A.    No.
22       Q.    Okay.  We talked about beyond a reasonable
23  doubt, which is the definition that is before me, and
24  also the -- how it is -- or that's the burden that the
25  State of Texas has to meet before you can say that a

STATE OF TEXAS VS. RUBEN GUTIERREZ                    8

1    person is guilty.  Do you recall that?

2         A.   Yes.

3         Q.   And has anything changed from yesterday with

4    respect to your answers to this definition?

5         A.   No.

6         Q.   And you'd still be willing today, if selected

7    as a juror, to hold the State as to its burden?

8         A.   Yes.

9         Q.   We talked about the elements also, which are

10   over here --

11        A.   Uh-huh.

12        Q.   -- yesterday.  Remember that they had to prove

13   all six.  If they don't prove even one of those, you have

14   to say by your verdict not guilty.  Do you remember that?

15        A.   Yes.

16        Q.   And has anything -- you stated that -- you

17   stated yesterday that if the State failed to prove at

18   least one of those elements, that you would say by your

19   verdict not guilty.  Do you remember that?

20        A.   Yes, I do.

21        Q.   Okay.  And you're still in agreement with that

22   today?

23        A.   Yes.

24        Q.   We talked about the special issues which are in

25   front of you.  Remember that we gave you the number of

PAM L. ESQUIVEL, CSR, RPR

STATE OF TEXAS VS. RUBEN GUTIERREZ                                    9

1   votes that would be required, and how it is that the
2   jurors would have to reach a decision with respect to
3   each of the special issues.  Do you remember that?
4        A.   Yes.
5        Q.   Okay.  With respect to your answers that you
6   gave us yesterday, has anything changed since yesterday?
7        A.   No.
8        Q.   You'll still be able to follow the law and be
9   able to answer those three questions based on what's
10  presented to you in court?
11       A.   Yes.
12       Q.   We also talked about a person's right to remain
13  silent, and you agreed with that constitutional right; is
14  that correct?
15       A.   Yes.
16       Q.   And you also agreed that we have a right not to
17  present any evidence, and also a right not to talk to --
18  Mr. Gutierrez does not have to testify.  And you agreed
19  with that; is that correct?
20       A.   Yes.
21       Q.   And are you still in agreement with that today?
22       A.   Yes.
23       Q.   We talked about codefendant testimony of some
24  codefendant.  Another defendant might get a deal to come
25  testify against the accused who's on trial.  Do you

STATE OF TEXAS VS. RUBEN GUTIERREZ                          10

1    remember that?

2         A.   Yes, I do.

3         Q.   Okay.  And would you still be able to take into

4    consideration whatever deal that person might get in

5    reaching a decision as to whether or not to believe that

6    person?  Will you still be able to do that?  Just take it

7    into consideration and then make a decision as to whether

8    or not you believe what they're saying.

9         A.   Yes.

10        Q.   You'll still be able to do that?

11        A.   Uh-huh.

12        Q.   And you have not formed an opinion as to this

13   case; is that correct?

14        A.   No.

15        Q.   And you haven't heard anything about this case?

16        A.   No.

17        Q.   And you also stated yesterday that the fact

18   that you work at Valley Baptist Medical Center, that

19   would not affect you with respect to whether or not you

20   believe a doctor more than you would another person; is

21   that correct?

22        A.   Excuse me.  Can you repeat that, please?

23        Q.   You work at Valley Baptist Medical Center --

24        A.   Yes.

25        Q.   -- is that correct?

STATE OF TEXAS VS. RUBEN GUTIERREZ                                    11

1      A.    Uh-huh.

2      Q.    And the fact that you work with doctors, that

3    wouldn't affect the way you view their testimony in

4    court?

5      A.    No.

6      Q.    You would judge them just as you would judge

7    anybody else?

8      A.    Yes.

9      Q.    And you'd be able to hold the State to its

10   burden of proof?  Because in your questionnaire you

11   stated that you would hold them to a higher burden, but

12   the burden is beyond a reasonable doubt.  You'd be able

13   to set your feeling aside and then just require for them

14   to prove their case beyond a reasonable doubt; is that

15   correct?

16     A.    Yes.

17     Q.    And you would be willing to deliberate as a

18   juror with the rest of the jurors and then make a

19   decision; is that correct?

20     A.    Yes, I understand that.

21     Q.    Okay.  Anything else that you wanted to go

22   ahead and tell us, you know, that we didn't discuss

23   yesterday?

24     A.    No.

25     Q.    Thank you so much for your time, Ms. Anaya.

STATE OF TEXAS VS. RUBEN GUTIERREZ                                    12

1   Appreciate it.

2       A.    Okay.

3                 MR. REYES:  We have nothing further, Your

4   Honor.

5                 MS. ANAYA:  Thank you.

6                 THE COURT:  Yes.  Go ahead and step out.

7                 MS. ANAYA:  Okay.

8                 **(Prospective juror left the courtroom)**

9                 THE COURT:  Is this juror acceptable to

10  the State?

11                MS. FISCHER:  Your Honor, at this time the

12  State would use a peremptory strike against this juror.

13  We're going to use a peremptory.  No, not acceptable.

14                MR. REYES:  Okay.

15                THE COURT:  That'll be number five for the

16  State.

17                MS. FISCHER:  Yes Your Honor.

18                THE COURT:  Okay.  Bring her in.

19                THE BAILIFF:  Yes, Your Honor.

20                THE COURT:  Okay.  Ms. Anaya, that's all

21  we have for you today.  We appreciate you coming back;

22  and again, excuse us for the inconvenience.

23                MS. ANAYA:  Okay.  Thank you.

24                THE COURT:  Thank you.

25                THE BAILIFF:  I'll check and see if

STATE OF TEXAS VS. RUBEN GUTIERREZ                          13

```
 1    Ms. Caldera is out there.
 2                    THE COURT:  Okay.
 3                    THE BAILIFF:  No answer, Your Honor.
 4                    THE COURT:  Okay.  We'll wait for her to
 5    get here.  We'll be in recess.
 6                    (Recess taken from 9:05 a.m. to 9:41 a.m.)
 7                    THE COURT:  Where is the D.A.?
 8                    MR. GALARZA:  He should be -- he was just
 9    right next door.
10                    MS. FISCHER:  We're here, Judge.  I'm
11    sorry.
12                    THE COURT:  All right.  Bring her in.
13                    Good morning, Ms. Caldera.
14                    MS. CALDERA:  Good morning.
15                    THE COURT:  First of all, I need to
16    apologize for bringing you back, but there's some matters
17    we have to put on the record; and I apologize for that.
18                    MS. CALDERA:  All right.
19                    THE COURT:  And the lawyers just have a
20    few more questions for you, okay?
21                    MS. CALDERA:  All right.
22                    THE COURT:  Thank you.
23                    Go ahead.
24
25
```

PAM L. ESQUIVEL, CSR, RPR

STATE OF TEXAS VS. RUBEN GUTIERREZ                    14

```
1                        LYDIA CALDERA,
2          having been called as a prospective juror and, upon
3          her oath, was examined and testified as follows:
4                    VOIR DIRE EXAMINATION
5     BY MR. BLAYLOCK:
6          Q.    Good morning, Ms. Caldera.
7          A.    Good morning.
8          Q.    We talked at length yesterday.  Do you remember
9     that?
10         A.    Yes.
11         Q.    How is your mom doing?
12         A.    Oh, she's doing all right.
13         Q.    All right?
14         A.    Yes, all right.
15         Q.    Okay.  Let me ask you this.  It may seem like a
16    silly question, but is she substantially better today
17    than she was yesterday where you don't need to take care
18    of her anymore?
19         A.    Oh, no.  She's not -- I mean, she's all right,
20    you know, but she needs to be taken care.
21         Q.    Okay.  So you -- and you've had a night to
22    sleep on this and think about all your answers to
23    yesterday, right?
24         A.    Yes.
25         Q.    Okay.  And so, you're still saying that you
```

STATE OF TEXAS VS. RUBEN GUTIERREZ                           15

```
 1   couldn't concentrate as a jury -- a juror here because
 2   your mom is sick and she needs your care?
 3        A.   I still say that because really and truly, this
 4   morning I even had some mess with some papers and all
 5   that, you know, because I'm the one that has to take care
 6   of all that.
 7        Q.   Uh-huh.
 8        A.   So that's why I'm still, you know, saying the
 9   same thing.
10        Q.   All right.  And pardon us for calling you back,
11   ma'am, but we just want to check on just a few more
12   things to make sure.
13             And so you're still 100 percent -- you're
14   saying, "I couldn't concentrate, Judge, because of my
15   mom's condition.  I've got to take care of her"?
16        A.   Yes, sir.
17        Q.   Okay.  And you also said yesterday -- well,
18   correct me if I'm wrong -- that you had a religious
19   opposition to the death penalty.
20        A.   Well, yes, I do --
21        Q.   Okay.
22        A.   -- because -- and especially during these days,
23   you know --
24        Q.   Right.
25        A.   -- it's terrible.
```

STATE OF TEXAS VS. RUBEN GUTIERREZ                        16

1      Q.   And the Judge asked you real explicitly.  He
2  said, "Ms. Caldera, due to your religious beliefs, would
3  that make you an unfair juror in this case?"
4      A.   Yes.
5      Q.   And is that still -- well, what's your answer
6  to that today?
7      A.   Still the same.
8      Q.   100 percent?
9      A.   Yes.
10     Q.   You're not going to change that?
11     A.   No.
12     Q.   Okay.  Now, you also said on -- yesterday that
13  you would want the State in a case like this, if you were
14  a juror, to prove it beyond all doubt.  Not just a
15  reasonable doubt.  You said all doubt.  And you were very
16  sure of that.  Are you still sure of that?
17     A.   If I was a juror, yes.
18     Q.   Okay.  And you wouldn't come down off that?
19     A.   I don't think so.
20     Q.   Okay.  I noticed you just looked over at the
21  defendant.  You notice that he's here right now, right?
22     A.   Uh-huh.
23     Q.   Okay.  And you wouldn't come off that holding
24  us to a higher burden by him being here?
25     A.   No.

PAM L. ESQUIVEL, CSR, RPR

STATE OF TEXAS VS. RUBEN GUTIERREZ                    17

1       Q.   Okay.  Good.  And you say you have eye
2    problems, too?
3       A.   I sure do.
4       Q.   You said you had one eye -- one eye was worse
5    than the other?
6       A.   Yes.  And I have to go to the specialist,
7    especially this week that I'm off from school, you know,
8    because I'm having problems.
9       Q.   Okay.  And --
10      A.   That's what I need to do.
11      Q.   Correct me if I'm wrong, I think you said last
12   time that your eye problem would cause -- would affect
13   your ability to concentrate if you were a juror in this
14   case?
15      A.   Well, it really does affect for everything --
16      Q.   Okay.
17      A.   -- not only for -- you know, it's affecting me.
18   It's really affecting me.
19      Q.   And I appreciate that.  Now that you've had a
20   day to think about everything that you said yesterday,
21   would you change any answer to any question that I asked
22   you yesterday?
23      A.   No, sir.
24      Q.   Okay.
25              MR. BLAYLOCK:  That's all I have, Judge.

PAM L. ESQUIVEL, CSR, RPR

STATE OF TEXAS VS. RUBEN GUTIERREZ                    18

1              MR. GALARZA:  May I proceed, Your Honor?

2              THE COURT:  You may.

3              MR. BLAYLOCK:  At this time, though,

4    Judge, I -- well, never mind.

5              THE COURT:  Go ahead.

6                   **VOIR DIRE EXAMINATION**

7    **BY MR. GALARZA:**

8         Q.   Ms. Caldera, good morning.

9         A.   Good morning.

10        Q.   Again, we thank you for being here; and we're

11   sorry we inconvenienced you.

12             We -- yesterday we introduced ourselves.

13   Daniel Reyes is to my right and I'm Santiago Galarza.

14   I'm just going to be asking you a few questions.

15             You stated in your questionnaire that you

16   have some projects in progress that affect your ability

17   to concentrate, which include also taking care of your

18   mother; is that correct?

19        A.   Yes, sir.

20        Q.   You would not be able to set that aside in

21   order to sit here on the jury and just concentrate on the

22   jury; is that correct?

23        A.   Well, I already said it, you know.  And that's

24   the only thing, you know, that affects, you know, because

25   all those little problems, you know, with my mom and, you

STATE OF TEXAS VS. RUBEN GUTIERREZ                        19

1    know, me all by myself, you know, trying to do all that.
2    It's hard.
3         Q.   So because of the reason that you need to go
4    ahead and take care of your mom, you're concerned about
5    your mom, you would not be able to give your full
6    attention and concentrate on the case?
7         A.   That's one of the things.   Uh-huh.
8         Q.   Okay.   In addition, I believe you stated that
9    you would ask that the State prove their case beyond all
10   doubt; is that correct?
11        A.   Yes, sir.
12        Q.   Okay.   I went through beyond a reasonable
13   doubt.   Beyond a reasonable doubt, I advised you what you
14   would have to use is just your common sense.   Do you
15   remember that?
16             Beyond a reasonable doubt, what the State
17   needs to prove is beyond a reasonable doubt which is just
18   using your common sense and listening to the testimony.
19        A.   Yes.
20        Q.   Okay.   By what you're stating at this time is
21   what you would require the State to prove is beyond all
22   doubt; is that correct?
23        A.   Beyond all doubt, yes.
24        Q.   Okay.   Especially because it's a real serious
25   case; it's a capital murder case?

STATE OF TEXAS VS. RUBEN GUTIERREZ                          20

1        A.    Sure.  Yes.  Uh-huh.

2        Q.    You also stated that because of your religion,

3   you think it would affect you in trying to go ahead and

4   sit in this type of case?

5        A.    Yes.

6        Q.    Okay.  Has that changed at all?

7        A.    No.  No.  Especially these days, you know, I

8   mean, I still feel, you know, the same, you know.

9        Q.    Okay.  And for this reason, you would not be

10  able to sit in this case?  Because one of the

11  requirements, one of the things that might happen is that

12  this person might receive the death penalty.  And your

13  feelings are that you cannot sit in this type of case; is

14  that correct?

15       A.    Yes, sir.

16       Q.    Okay.  Would you be able to set any of these

17  feelings aside and just sit on this case at all?

18       A.    I really don't -- I don't think so.

19       Q.    Okay.  I need just a yes or no.  If it's no,

20  I'm just trying to go ahead and get an answer from you.

21       A.    No.

22       Q.    You would not be able to do that?

23       A.    No.

24             MR. GALARZA:  That's all I have at this

25  time, Your Honor.

STATE OF TEXAS VS. RUBEN GUTIERREZ                                21

1           MR. BLAYLOCK:  Judge, again, because of
2    her religious opposition to the death penalty, because
3    she would hold the State to a higher burden, because of
4    her eye problem, because of the fact she needs to take
5    care of her mom, I ask that she be excused to take care
6    of her mom.
7           MR. GALARZA:  There was no objection to
8    her being excused, Your Honor.
9           THE COURT:  All right.  Ms. Caldera, thank
10   you for coming back.  We appreciate your time.  At this
11   time you're excused to go.
12          MS. CALDERA:  Thank you very much.
13          THE COURT:  Thank you.
14          MR. GALARZA:  Thank you again.
15          MS. CALDERA:  And I'm with you.
16          MR. BLAYLOCK:  You're done this time,
17   ma'am.  I don't think we'll call you back.
18          MS. CALDERA:  All right.  Thank you very
19   much, okay?
20          MR. BLAYLOCK:  Take care of your mom.
21          MS. CALDERA:  I'm going there right now.
22          THE COURT:  Okay.  We need Mr. Escobedo.
23   I don't think he's here.
24          THE BAILIFF:  No answer, Your's Honor.
25          THE COURT:  Okay.  We'll wait for him to

PAM L. ESQUIVEL, CSR, RPR

```
 1    get here.
 2                    (Recess taken from 9:47 a.m. to 9:57 a.m.)
 3                    THE COURT:  All right.  You may be seated.
 4    Bring Mr. Escobedo in.
 5                    THE BAILIFF:  Yes, sir.
 6                    THE COURT:  Good morning, Mr. Escobedo.
 7                    MR. ESCOBEDO:  Good morning, sir.
 8                    THE COURT:  First of all, let me apologize
 9    for bringing you back.  There's a few things that we need
10    to put on the record; and I appreciate you coming back.
11                    MR. ESCOBEDO:  No problem, sir.
12                    THE COURT:  Have a seat.
13                    MR. ESCOBEDO:  Thank you.
14                    THE COURT:  Go ahead.
15                    MS. FISCHER:  Thank you, Judge.
16                         ERIC ESCOBEDO,
17      having been called as a prospective juror and, upon
18      his oath, was examined and testified as follows:
19                     VOIR DIRE EXAMINATION
20    BY MS. FISCHER:
21        Q.    Good morning, Mr. Escobedo.
22        A.    Good morning.
23        Q.    How are you doing?
24        A.    Good.
25        Q.    You remember who I am?  I'm Karen Fischer; this
```

STATE OF TEXAS VS. RUBEN GUTIERREZ                    23

1   is John Blaylock.

2                    MR. ESCOBEDO:  Hello.

3        Q.    (BY MS. FISCHER)  When we spoke yesterday, you

4   understood the importance of being fair and impartial on

5   all the legal issues; that included the proof in this

6   case beyond a reasonable doubt.  You understood that that

7   was the law and you had to follow that.

8                    You also understood about your feelings

9   about the death penalty --

10       A.    Yes.

11       Q.    -- and that you had to follow the law, and

12   answer the questions honestly, and make a decision based

13   on what you heard in the case, okay?

14       A.    Yes.

15       Q.    With that being the most important thing,

16   knowing that you have to be fair and impartial, is there

17   anything that you had told us yesterday, after going home

18   and sleeping on it and thinking about things, anything

19   different about your feelings here today?  Maybe your

20   feelings about the laws or anything that has changed

21   about how you felt yesterday.

22       A.    No, ma'am.

23       Q.    Okay.  What about your feelings about the death

24   penalty?

25       A.    I stand the same as yesterday.

STATE OF TEXAS VS. RUBEN GUTIERREZ                                24

```
 1        Q.   Basically the same?
 2        A.   Yes.
 3        Q.   Okay.  And if the Judge instructs you on the
 4   law, then you have to follow the law.  And you can do
 5   that?
 6        A.   Exactly.  Yes.
 7        Q.   Okay.  Is there anything else that you may have
 8   thought of that you didn't tell us yesterday, things that
 9   may have come up or questions you may have about the
10   process, or something I may need to know about you so
11   that we can have a fair and impartial jury?
12        A.   No, ma'am.
13        Q.   All right.
14             MS. FISCHER:  I don't have any further
15   questions, Judge.
16             MR. REYES:  May I proceed, Your Honor?
17             THE COURT:  You may.
18                   VOIR DIRE EXAMINATION
19   BY MR. REYES:
20        Q.   Mr. Escobedo, good morning again.
21        A.   Good morning, sir.
22        Q.   We apologize.  I hope we didn't inconvenience
23   you.
24        A.   That's no problem.
25        Q.   We just needed to ask you some additional
```

STATE OF TEXAS VS. RUBEN GUTIERREZ                              25

```
 1   questions.  And again, if you don't understand one of my
 2   questions, just let me know and I'll go ahead and
 3   rephrase them.
 4        A.    Okay.
 5        Q.    The first thing that I wanted to start off with
 6   is do you know anybody that works with the District
 7   Attorney's Office, be it an investigator or secretary,
 8   paralegal or an attorney?
 9        A.    No, sir.
10        Q.    Okay.  What about the name of witnesses that
11   were named on Tuesday of last week and the four
12   additional witnesses that we named yesterday?
13        A.    No, sir, I don't.
14        Q.    Thinking about those names, did they ring a
15   bell at all?
16        A.    No, sir.
17        Q.    Now, we talked yesterday about the indictment.
18   Remember that?  And I told you that an indictment under
19   our law is absolutely no evidence against a person -- is
20   absolutely no evidence against a person that's accused of
21   a crime.  Do you remember that?
22        A.    Uh-huh.
23        Q.    And that basically tells the person what
24   they're accused of specifically; and it also tells the
25   State what it is they have to prove to the jury beyond a
```

1    reasonable doubt.

2         A.    (Nods head).

3         Q.    In thinking about that, has your opinion

4    changed at all?

5         A.    No, sir.

6         Q.    And yesterday your opinion was that you agreed

7    with those principles; is that correct?

8         A.    Yes, sir.

9         Q.    We talked about the presumption of innocence,

10   the constitutional right that every person that is

11   accused of a crime, be it a misdemeanor, a traffic ticket

12   all the way up to murder or capital murder, that

13   presumption is given to every person that's accused of a

14   crime.  Did you agree with that?

15        A.    Yes, sir.

16        Q.    And I told you that that presumption stays with

17   the individual up until all the evidence has been

18   presented; and it can only be overcome if the State of

19   Texas presents enough evidence to the jury to convince

20   them beyond a reasonable doubt.  Did you understand that?

21        A.    Yes, sir.

22        Q.    And you agreed with that yesterday?

23        A.    Yes, sir.

24        Q.    Okay.  In thinking about it since yesterday,

25   has your opinion changed at all?

STATE OF TEXAS VS. RUBEN GUTIERREZ                              27

1        A.    No, sir.

2        Q.    We talked about beyond a reasonable doubt which

3   is the definition that's before me.  And the reason I

4   bring that up again is because in question 72 of your

5   questionnaire on page 16, you state on there, "Should the

6   State be required to prove their case beyond all doubt in

7   a capital murder case?"  And your answer was, "Yes."

8        A.    Uh-huh.

9        Q.    And the reason we ask this question is because

10  some people might be thinking, "Well, if it's a speeding

11  ticket or if it's, you know, a misdemeanor assault, or

12  burglary of a habitation, or a burglary of a building

13  case," do you see how that might not be considered in

14  some people's minds as serious as maybe a murder or a

15  capital murder?

16       A.    (Nods head).

17       Q.    So some people in their minds might be

18  thinking, "Well, because it's a more serious case, I'm

19  going to require the State to prove their case, you know,

20  beyond all doubt.  I don't want to have any doubt in my

21  mind whatsoever."  Do you see where that could happen?

22       A.    Yes.

23       Q.    My question to you yesterday was whether you'd

24  be able to set that opinion aside and follow the law

25  which is beyond a reasonable doubt.

STATE OF TEXAS VS. RUBEN GUTIERREZ                      28

1      A.    Yes, sir.
2      Q.    Would you hold the State to that burden of
3  proof?
4      A.    No.
5      Q.    Did you have any questions?  I know that this
6  definition seems kind of simple, but it really isn't
7  because there's several things that you have to look at.
8  For example, you have to, you know, use your reason and
9  your common sense, and carefully and impartially consider
10 everything that's presented to you.  Do you see that?
11     A.    Yes, sir.
12     Q.    And we're not required to present any evidence
13 to you.  But at the same time if we do present witnesses,
14 photographs, reports, anything like that, would you be
15 willing to take those into consideration in making a
16 decision?
17     A.    Yes, sir.
18     Q.    We talked about the elements.  And remember we
19 said that that definition needs to be applied to number
20 one.  That definition -- look at the evidence, consider
21 it, and see if the State of Texas proved element number
22 one to you beyond a reasonable doubt.  Do you see that?
23     A.    (Nods head).
24     Q.    And you have to take that definition, apply it
25 to the evidence, the facts that are presented to you,

STATE OF TEXAS VS. RUBEN GUTIERREZ                         29

 1    apply it to number two, which is on or about
 2    September 5th of 1998, and see if they convinced you
 3    beyond a reasonable doubt.  And you go -- you follow that
 4    procedure with respect to three, four, five and six.  Did
 5    you understand that?
 6         A.   Yes, sir.
 7         Q.   And if you were to be selected as a juror, if
 8    the State failed to prove one of those six elements,
 9    would you be able to come back with a verdict of not
10    guilty?
11         A.   Yes, sir.
12         Q.   And you honestly feel that way?
13         A.   Yes, sir.
14         Q.   Okay.  The reason I ask that is because some
15    people might be thinking, "Well, this is a capital murder
16    case."  And you can tell from the indictment more or less
17    some of the facts of the case.
18              And they might be thinking, "Well,"
19    because in their mind, a juror might be thinking it's
20    very serious.  "Even though they didn't prove element
21    number six, they proved a burglary of a house instead of
22    a robbery, I'm still going to give it to the State
23    because in my mind there was another felony committed."
24    Do you see where that could happen?
25         A.   Yes, sir.

STATE OF TEXAS VS. RUBEN GUTIERREZ                                30

```
1        Q.   Would you be of that -- would you be thinking
2   like that?
3        A.   Yes, sir.
4        Q.   Would you be thinking like that or --
5        A.   I would study it the best that I could.
6        Q.   So if in your mind they didn't convince you
7   that a robbery occurred -- let's say they convince you
8   that a burglary of a house happened instead of a robbery,
9   do you see how they're not meeting element number six?
10       A.   Uh-huh.
11       Q.   Okay.  So based on that, what would your
12  verdict have to be?
13       A.   Not guilty.
14       Q.   And do you feel that you would be able to do
15  that?
16       A.   Yes, sir.
17       Q.   Knowing that this is a capital murder case?
18       A.   Yes, sir.
19       Q.   Would you have any kind of problems doing that?
20       A.   I don't think I would.
21       Q.   Do you see how I would need a more definite
22  answer?  Because if you can't follow the law, right now
23  is the time for us to know because once you're seated as
24  a juror, we can't ask you any questions.  And if you
25  can't give me a definite answer right now, do you see how
```

1    I wouldn't know how it is that you're thinking?

2         A.   Yes, sir.

3         Q.   So if they didn't prove one of those six

4    elements to you, they only proved five for example, your

5    verdict under the law would have to be not guilty.

6         A.   Not guilty.

7         Q.   Would you have any problem following that

8    instruction?

9         A.   No, sir.

10        Q.   And we talked also about that in Texas we have

11   a bifurcated trial system.  It's basically a two-part

12   trial.  Do you remember that?

13        A.   Uh-huh.

14        Q.   And we said that you only get to Special

15   Issues 1, 2 and 3 if you find somebody guilty of capital

16   murder.  If you find somebody guilty of murder or

17   robbery, which are lesser included offenses, you don't

18   even have to worry about these questions.

19             And the ranges of punishment for murder

20   are five years to 99 years or life imprisonment; for

21   robbery it's two to 20, or any number of years in

22   between.

23             Would you be willing to listen to the

24   evidence, and then make a -- consider the full ranges of

25   punishment, and then make a decision as to what

STATE OF TEXAS VS. RUBEN GUTIERREZ                                  32

1   punishment to set, if any?

2        A.   Yes, sir.

3        Q.   We talked about the special issues.  Remember

4   we focused, for example, on Number 1 about probability.

5   And you agreed with me that it was more likely than not,

6   right?

7        A.   Yes, sir.

8        Q.   And basically what it's asking you to do is to

9   predict the future.  Did you agree with me?

10       A.   Yes, sir.

11       Q.   Because we can't tell the future.  And

12  basically what it's asking you to do is look into the

13  future and see whether or not he would commit future acts

14  of violence; and if he would, that would make him a

15  continuing threat to society.  Did you agree with me?

16       A.   Yes, sir.

17       Q.   And do you see how it's basically asking you to

18  punish an individual in this case for something that

19  might not even happen in the future?  Do you see that?

20       A.   Yes, sir.

21       Q.   And we went on to Question Number 2.  And I

22  told you that in this State just because you go in with

23  somebody into a Circle K and you shoot -- one of those

24  two persons shoots somebody, it doesn't necessarily and

25  automatically make the two people guilty of the murder.

1   They might be guilty of the theft when they went in there
2   to steal cigarettes, remember?

3        A.    Uh-huh.

4        Q.    But it doesn't necessarily make them
5   automatically guilty.  Do you understand that?

6        A.    Yes, sir.

7        Q.    And they have to show, one, that the person
8   actually killed the victim.  If they didn't, they have to
9   show that he intended to kill that victim.  And if they
10  can't prove that, then they at least have to prove that
11  he anticipated that a human life would be taken.  Do you
12  remember that?

13       A.    Yes, sir.

14       Q.    And would you be willing to follow that
15  instruction of the Court and use the facts to see whether
16  or not the State met its burden of proof with respect to
17  Question Number 2?

18       A.    Yes, sir.

19       Q.    I told you that you don't even get to Question
20  Number 3 if you answer "no" to either 1 or 2.  Remember
21  that?

22       A.    Yes, sir.

23       Q.    But if you answer "yes" to Number 1 and answer
24  "yes" to Number 2, then you have to come and you have to
25  look at Question Number 3.

STATE OF TEXAS VS. RUBEN GUTIERREZ                          34

1           And basically what it's asking you, "Is
2      there any one reason or set of reasons that are in your
3      mind sufficiently mitigating to give that person a life
4      sentence and not the death penalty?"  Did you understand
5      that?
6           A.   Yes, sir.
7           Q.   And did you understand that it's asking you to
8      look at all the evidence?  You know, what the State
9      introduces -- we don't have to present any evidence, but
10     if we do present it, would you be willing to consider
11     that in answering these questions?
12          A.   Yes, sir.
13          Q.   It's asking you to look at the circumstances of
14     the offense; for example, if the person actually -- was
15     he the shooter or was he just present, to look at those
16     things in determining whether or not how you're going to
17     answer that question.  Do you see that?
18          A.   Yes, sir.
19          Q.   And would you be willing to do that?
20          A.   Yes, sir.
21          Q.   It's asking you to look at the character and
22     the background of the individual, you know, what type of
23     person is he, does -- did he to go school, was he a
24     dropout, did he have any educational problems, is that
25     why he's a dropout, does he have any psychological,

STATE OF TEXAS VS. RUBEN GUTIERREZ                          35

1    psychiatric problems, all those things.  Do you remember
2    that?
3          A.    Yes, sir.
4          Q.    Would you be willing to take those into
5    consideration in answering that question?
6          A.    Yes, sir.
7          Q.    And the personal moral culpability of the
8    defendant, is there -- did he show remorse, you know, is
9    he sorry for what happened.  Would you be willing to look
10   at that and then make a decision as to how to answer that
11   question?
12         A.    Yes, sir.
13         Q.    We talked to you about a person's right to
14   remain silent.  Do you remember that?
15         A.    Yes, sir.
16         Q.    It's a constitutional right that every person
17   has if they're accused of a crime.  And did you agree
18   with me that that right extends to a person not having to
19   testify in court?
20         A.    Yes, sir.
21         Q.    And did you agree with me that that
22   constitutional right extends to that person not having to
23   talk to the police?
24         A.    Yes, sir.
25         Q.    And if the Court were to instruct you that that

STATE OF TEXAS VS. RUBEN GUTIERREZ                    36

1   is the law in this State, would you be willing to follow
2   that law?
3        A.   Yes, sir.
4        Q.   We talked about the spousal privilege in the
5   State; is that correct?
6        A.   Yes, sir.
7        Q.   And we told you that basically the spouse is
8   the one that has that right.  And nobody, not the State,
9   not us, can make her waive that right.  Only she and she
10  alone through her attorney can waive it if they want to.
11  Do you understand that?
12       A.   Yes, sir.
13       Q.   And knowing that, would you hold it either
14  against the State or against us if that spouse did not
15  testify?
16       A.   No, sir.
17       Q.   We talked about statements that might be
18  offered or introduced as evidence regarding the
19  individual who's on trial, that they might have given
20  what's called confessions or statements of accused.  Do
21  you remember that?
22       A.   Yes, sir.
23       Q.   And my question is whether you'd be willing to
24  take into consideration all the circumstances surrounding
25  the taking of that statement; for example, if maybe ten

STATE OF TEXAS VS. RUBEN GUTIERREZ                          37

```
 1    police officers questioned him one right after the other,
 2    whether he asserted his right to remain silent and they
 3    still questioned him, whether or not they threatened his
 4    family, his father, his mother or himself, you know, with
 5    prosecution, with arrest if he didn't, you know, give
 6    them a statement.
 7                Do you see how all those things might lead
 8    to that person not wanting -- not giving that statement
 9    voluntarily?
10         A.    Uh-huh.   Yes, sir.
11         Q.    If the Court were to instruct you that if in
12    your mind you believed that a statement was not taken
13    voluntarily, for you not to consider it for any purpose
14    whatsoever, that you would be willing to do that?
15         A.    Yes, sir.
16         Q.    Knowing this is a capital murder case, would
17    you still be willing to do that?
18         A.    Yes, sir.
19         Q.    We talked about codefendant testimony, how if
20    there's more than one accused person, the State might
21    make a deal with one of them.   Do you remember that?
22         A.    Uh-huh.
23         Q.    How that person would be expecting a life
24    sentence or a sentence of 99 years.   He might make a deal
25    with the State for like maybe ten, 15, 20 years; and then
```

1    he would come to court and testify against the person

2    who's on trial.  Do you see how that could happen?

3         A.   Yes, sir.

4         Q.   My question to you, Mr. Escobedo, is whether

5    you would be willing to keep an open mind in listening to

6    that codefendant and decide whether or not he's telling

7    the truth or not and look at that deal that he might

8    have.

9         A.   Yes, sir.

10        Q.   You as a juror would have to sit and listen to

11   the witnesses, judge their credibility, whether to

12   believe them or not.

13             I talked to you about a doctor.  Maybe

14   some people, some jurors might think, "He's a doctor.  He

15   has a degree in medicine.  I'm going to believe

16   everything he says."

17             Some jurors might think, "This is a police

18   officer.  Because he wears a badge, he took an oath to

19   uphold the law, I'm going to believe everything he has to

20   say."

21             But keeping in mind that, you know, a

22   doctor might have made a mistake, he might be trying to

23   cover it up, or he might be erroneous in a conclusion

24   that he might have made.  Do you see where we're all

25   human, we all make mistakes, and we might not be willing

STATE OF TEXAS VS. RUBEN GUTIERREZ                              39

1    to come to court under oath and recognize those mistakes?

2    Do you understand that?

3         A.   Yes, sir.

4         Q.   And same thing with the police officer.  You

5    see in here a police officer being arrested for crimes

6    all the time.  So these individuals are not angels.

7    Would you agree with me?

8         A.   Yes, sir.

9         Q.   So would you be willing to keep an open mind,

10   listen to their testimony, look at how it is that these

11   police officers or doctors or experts are acting in

12   court, and then make a decision as to whether or not to

13   believe them?

14        A.   Yes, sir.

15        Q.   And do you have any relatives in law

16   enforcement?

17        A.   No, sir.

18        Q.   And you have not been a victim of a crime

19   before; is that correct?

20        A.   No, I have not.

21        Q.   And you haven't heard anything about this case?

22        A.   No, sir.

23        Q.   So have you formed an opinion as to the guilt

24   or innocence of Mr. Gutierrez?

25        A.   No, sir.

STATE OF TEXAS VS. RUBEN GUTIERREZ                           40

1      Q.   I just wanted to cover about three things from
2  your questionnaire, and then I should be finished.  On
3  page 13, question 47, it's asking you whether you knew
4  anybody that had been to the penitentiary.  And you
5  stated that it was your brother-in-law; is that correct?
6      A.   My brother-in-law.
7      Q.   Would that affect you in any way in this case?
8      A.   No, sir.
9      Q.   On question 51, "Do you think crime is a
10 problem?"  And you stated, "Yes.  Crime is becoming a
11 normal day-to-day thing.  Once that begins to occur, you
12 know you have a problem."
13           Do you think that because you're of that
14 opinion, that would affect your decision-making in this
15 case?
16     A.   No, sir.
17     Q.   Would you be willing to keep an open mind,
18 listen to the facts, and make a decision just based on
19 the evidence?
20     A.   Yes, sir.
21     Q.   And would that at all come into play?
22     A.   I don't think it would, no.  No, sir.
23     Q.   Do you see how we need a definite answer,
24 whether or not it would or would not?
25     A.   No, I don't -- it won't.

STATE OF TEXAS VS. RUBEN GUTIERREZ                         41

1       Q.    And you're absolutely sure of that?

2       A.    I'm absolutely sure.

3       Q.    And it's asking you on page 14, question 53,

4   "Do you personally believe that criminal laws in the

5   United States and the State of Texas relating to criminal

6   defendants are too lenient?"  And you answered, "Yes."

7             Do you see how a juror might be thinking,

8   "Well, laws are too lenient.  And because I think that,

9   I'm going to go ahead and if I get on the jury, I'm going

10  to impose the highest penalty that there is for the crime

11  that I'm sitting as a juror on."  Do you see where that

12  could happen?

13      A.    Yes, sir.

14      Q.    If you were to be selected as a juror in this

15  case, would you be willing to -- I mean, would you --

16  because of your opinion, would you do that?

17      A.    I could put it aside and act fair to

18  Mr. Gutierrez.  I think I can -- I would.

19      Q.    You would?  And you honestly feel that way?

20      A.    Yes, sir.

21      Q.    On page 15, question 63, "What are your

22  feelings about the death penalty?"  "I am for it.  Why

23  have somebody in prison for the rest of their lives

24  living off our taxes for a crime that was not -- that was

25  not to that extent."

STATE OF TEXAS VS. RUBEN GUTIERREZ                           42

1           Do you see how because -- if you find
2     somebody guilty in a capital murder case, there's two
3     options based on your answers, a life sentence or the
4     death penalty.  And do you see how this would lead me to
5     believe that if you get on this jury, because you think
6     that if a person gets a life sentence, they're wasting
7     our tax dollars?  Do you see where --
8           A.    Yes, sir.
9           Q.    -- I could believe that because of your answer?
10          A.    (Nods head).
11          Q.    And if you were to be selected as a juror,
12    would you automatically want to answer those questions in
13    a way that would lead to the death penalty because of the
14    way you believe?
15          A.    I would answer those questions in a fair way,
16    not taking my opinion, just going by the facts that have
17    been -- that have been shown to me and the evidence, and
18    put my opinion aside to make the right -- try to do the
19    right judgment on that.
20          Q.    And you honestly feel that way?
21          A.    Yes, sir.
22          Q.    On page 16, "What is the best argument for the
23    death penalty?"  "Do you want murderers on our streets?"
24    And we talked about parole, remember yesterday?
25          A.    Yes, sir.

STATE OF TEXAS VS. RUBEN GUTIERREZ                          43

1      Q.   Because in your mind you think that somebody
2   that's convicted of murder might get on parole, you might
3   again be thinking to those questions and make sure --
4   answering them in a way that would be to the death
5   penalty because you don't want, you know, a person that
6   you've just convicted of murder to be out on the streets
7   after -- even if they're paroled.  Do you think that
8   would affect you in any way?
9      A.   No, sir.
10     Q.   And you honestly feel that way?
11     A.   I honestly feel that way.
12     Q.   Do you see how it would be a hard thing to do
13  to set that opinion aside because that's the way you
14  believe?
15     A.   Yes.
16     Q.   And the question then becomes can you set it
17  aside and then just follow the law?
18     A.   Yes, sir.
19     Q.   And you honestly feel that you can do that?
20     A.   I honestly feel that way.
21     Q.   The last question on page 21, question 81, "Do
22  you want to be a juror in this case?"  "Yes."  "Why or
23  why not?"  "I'm very interested in this case and to hear
24  both sides of the story."
25               I told you yesterday that we are not

STATE OF TEXAS VS. RUBEN GUTIERREZ                                44

1    required by law to present any evidence.  We can just sit
2    here, do absolutely nothing.  We don't have to ask
3    questions of any of the State's witnesses.  We don't have
4    to present any of our own witnesses.  We don't have to
5    introduce any documents, photographs.  And Mr. Gutierrez
6    does not have to testify.  That's a right that we have.
7    Do you understand that?
8         A.    Yes, sir.
9         Q.    What this leads me to believe is that you would
10   want to hear from the State and then you would want to
11   hear from us.  Do you see where I'm coming from?
12        A.    Yes, sir, I do.
13        Q.    My question is whether -- knowing that the law
14   doesn't require us to do anything, would you be able to
15   set your opinion aside and follow the law?
16        A.    Yes, sir.
17        Q.    You honestly feel that way?
18        A.    I honestly feel that way.
19        Q.    Would you in the back of your mind be thinking,
20   "Well, I wish I would have heard from him"?
21        A.    Well, I wish is a word that I guess everybody
22   would cross their mind, but I wouldn't hold it against
23   him.
24        Q.    Would it affect your verdict if you didn't hear
25   from him?

STATE OF TEXAS VS. RUBEN GUTIERREZ                    45

1        A.   No, sir.

2        Q.   Would it affect your verdict if we didn't

3    present any evidence?

4        A.   No.

5        Q.   And you honestly feel that way?

6        A.   I honestly feel that way.

7        Q.   Would you make a decision just based on what's

8    presented to you and nothing else?

9        A.   Yes, sir.

10             MR. REYES:  I have nothing further, Your

11   Honor.

12             THE COURT:  All right, Mr. Escobedo.  I'm

13   going to ask you to step down for a few minutes; and I

14   need to consult with the lawyers on a legal matter.

15             **(Prospective juror left the courtroom)**

16             THE COURT:  Is this venireperson

17   acceptable to the State?

18             MS. FISCHER:  Yes, Your Honor, he is.

19             THE COURT:  Is he acceptable to the

20   defendant?

21             MR. REYES:  We don't have a challenge for

22   cause, Your Honor, but we do exercise a peremptory

23   strike.

24             THE COURT:  That would be number five.

25             MR. REYES:  That's correct.

STATE OF TEXAS VS. RUBEN GUTIERREZ                          46

```
1                    THE COURT:  Bring him in.
2                    THE BAILIFF:  Yes, sir.
3                    THE COURT:  Mr. Escobedo, that's all the
4    questions we have for you.  We appreciate you coming by.
5                    MR. ESCOBEDO:  Thank you.
6                    THE COURT:  Thank you very much.  You're
7    excused to go.
8                    MR. ESCOBEDO:  Thank you.
9                    THE COURT:  See if Monica Rivera is here.
10                   THE BAILIFF:  No answer, Your Honor.
11                   THE COURT:  Okay.  We'll wait until she
12   gets here.
13                   (Recess from 10:19 a.m. to 11:13 a.m.)
14                   THE COURT:  Okay.  You may be seated.
15   Bring in Ms. Rivera.
16                   THE BAILIFF:  Yes, Your Honor.
17                   THE COURT:  Good morning, Ms. Rivera.
18                   MS. RIVERA:  Hi.
19                   THE COURT:  First of all, let me apologize
20   for bringing you back, but we need to put some other
21   things on the record.
22                   MS. RIVERA:  It's no problem.
23                   THE COURT:  Thank you.  We appreciate it.
24                   You may proceed.
25                   MR. BLAYLOCK:  Thank you, Judge.
```

STATE OF TEXAS VS. RUBEN GUTIERREZ                          47

```
 1                        MONICA RIVERA,
 2        having been called as a prospective juror and, upon
 3        her oath, was examined and testified as follows:
 4                    VOIR DIRE EXAMINATION
 5   BY MR. BLAYLOCK:
 6        Q.   Good morning, Ms. Rivera.
 7        A.   Good morning again.
 8        Q.   Remember we talked quite a bit yesterday?
 9        A.   I'm sorry?
10        Q.   Remember yesterday we talked --
11        A.   Yes.
12        Q.   -- quite a bit?
13        A.   Uh-huh.
14        Q.   I just want to ask you a few more questions.
15        A.   Sure.
16        Q.   First of all, just let me ask you, all the
17   things that you said yesterday, if I ask you all the same
18   questions, would you answer them all the same way today?
19        A.   I believe so.
20        Q.   Okay.  Good.  You live at -- what's your
21   address?
22        A.   15 Moore Avenue.
23        Q.   Okay.  Do you know the Cook family that lives
24   over there?
25        A.   No.
```

STATE OF TEXAS VS. RUBEN GUTIERREZ                    48

```
1        Q.   Did you have a murder in your neighborhood not
2    too long ago, in 1998?
3        A.   Yes, we did.
4        Q.   Okay.  Do you know anything about that?
5        A.   Not really.
6        Q.   Did that scare you or make you feel one way or
7    the other?
8        A.   No.  Uh-uh.
9        Q.   Good.  Did you know anything about that case?
10       A.   No.
11       Q.   Okay.  Did you know the -- did you know John
12   Paul Garza?
13       A.   No.
14       Q.   And you didn't -- you said you didn't know the
15   Cook family or Glen Cook?
16       A.   Uh-uh.  No.
17       Q.   Were you living there when that took place?
18       A.   I lived across the street when that took place,
19   but what I heard was just a murder.  That's all.
20       Q.   Okay.  Do you know the outcome of that trial at
21   all?
22       A.   No, sir.
23       Q.   You don't see John Paul Garza around that
24   neighborhood anymore, do you?
25       A.   No, sir.
```

STATE OF TEXAS VS. RUBEN GUTIERREZ                    49

1        Q.    Okay.  Let me just go right into your
2    questionnaire one more time.
3        A.    Sure.
4        Q.    And we talked a little bit about this
5    yesterday.  We talked about the burden of proof, right?
6        A.    Yes.
7        Q.    And you know we got that burden of proof, okay?
8    It's beyond a reasonable doubt, right?
9        A.    Yes.
10       Q.    Do you remember?
11       A.    Yes.
12       Q.    Do you remember what reasonable doubt is?
13       A.    I remember, but I can't say.
14       Q.    Based on your --
15       A.    Explain it.
16       Q.    -- reason and common sense --
17       A.    Yes.
18       Q.    -- the kind of thing to make you hesitate to
19   act in the most important of your own affairs, right?
20       A.    Uh-huh.
21       Q.    Okay.  And in your questionnaire you said you
22   would want the State to prove it to you in this kind of
23   case beyond all doubt.  Do you remember saying that?
24       A.    Yes.
25       Q.    Do you still feel that way?

STATE OF TEXAS VS. RUBEN GUTIERREZ                    50

1        A.    Yes.

2        Q.    Okay.  So you would want the State to have a

3    higher burden than normal?

4        A.    Yes.

5        Q.    And why is that?

6        A.    To me, that is proof that the person did commit

7    the crime.  It's evidence towards me that he should be

8    punished or --

9        Q.    Okay.  Well, let's say that you listened as a

10   juror to all the evidence and you thought -- I mean, your

11   reason said, "Yeah, I think he did it.  I think he did

12   it.  My reason tells me he did it, but they didn't prove

13   it beyond all doubt because I have a few doubts in my

14   mind."

15              Let's say I have a doubt about, you know,

16   the State said that he was wearing a yellow shirt; and

17   the witness said that he thought it was orange.  So I've

18   got a doubt about what color his shirt was.

19              I mean, would you say the State didn't

20   prove it beyond all doubt because I don't know everything

21   about this case?  I have a doubt.  That's a doubt, right?

22   You would admit that's a doubt?

23       A.    Yes.

24       Q.    Okay.  So would you want the State to prove it

25   beyond all doubt?

PAM L. ESQUIVEL, CSR, RPR

STATE OF TEXAS VS. RUBEN GUTIERREZ                        51

```
 1        A.    Yes.
 2        Q.    Okay.  So if one of the witnesses said he had a
 3   yellow shirt and another witness said he had an orange
 4   shirt, and you as a juror sitting there, you don't know
 5   what color of shirt, you would say, "Not guilty because
 6   I've got a doubt about what color his shirt was"?
 7        A.    Well, they don't know for sure what color the
 8   shirt was.  So I would say not guilty right there.
 9        Q.    Okay.  So you would want the State to prove
10   every detail --
11        A.    Yes.
12        Q.    -- beyond all doubt?
13        A.    Yes.
14        Q.    And you understand that is a higher burden,
15   that you're holding the State to a higher burden?
16        A.    Yes.
17        Q.    And tell me again a little bit more why you
18   would want a higher burden in this kind of case.
19        A.    It's a man's life that you're going to put away
20   in jail forever or death.  You should really consider the
21   factor --
22        Q.    Okay.
23        A.    -- before you decide.
24        Q.    Well, is there any way I could talk you out of
25   that and say -- you know, the law says beyond a
```

STATE OF TEXAS VS. RUBEN GUTIERREZ                    52

1   reasonable doubt, based on your reason and your common
2   sense.  And you're saying, "No.  In this kind of case
3   it's got to be all doubt, all or nothing."
4        A.   I need evidence, I mean, like proof, I mean,
5   real factors for a sure answer.
6        Q.   Beyond all doubt?
7        A.   Beyond all doubt.
8        Q.   All right.  That's all the questions I have.
9             MR. GALARZA:  May I proceed, Your Honor?
10            THE COURT:  You may.
11                  **VOIR DIRE EXAMINATION**
12   BY MR. GALARZA:
13        Q.   Monica, we introduced ourselves yesterday and
14   also last Tuesday; is that correct?  My name is Santiago
15   Galarza.  This is Daniel Reyes.
16        A.   Hi.
17        Q.   We both represent Mr. Gutierrez.  First of all,
18   thank you for being back over here again.  We apologize
19   if this is any inconvenience to you.
20        A.   No.
21        Q.   Okay.  Let me first go into the -- what you
22   were talking about right here.  You understand that a
23   person can be charged for a ticket for speeding --
24        A.   Yes.
25        Q.   -- for D.W.I. and also for murder and capital

1    murder.  You understand that?

2         A.    Yes.

3         Q.    Okay.  If the Court were to tell you that the

4    proof that you need or the proof that they need to go

5    ahead and show you is beyond a reasonable doubt for the

6    ticket and for all the other cases, would you be willing

7    to follow that?

8         A.    Yes.

9         Q.    Okay.  Like an example, if they were to tell

10   you that in a capital murder case, the proof that they

11   need to go ahead and show you is beyond a reasonable

12   doubt, okay, not beyond all doubt, okay?

13        A.    Okay.

14        Q.    Remember I went through the elements yesterday

15   to you?

16        A.    Yes, sir.

17        Q.    And I went ahead and showed you that there's

18   six elements that the State needs to prove beyond a

19   reasonable doubt.

20        A.    Yes.

21        Q.    Okay.  And that's all that they need to go

22   ahead and prove to you.

23        A.    (Nods head).

24        Q.    Do you agree with me?

25        A.    Yes.

STATE OF TEXAS VS. RUBEN GUTIERREZ                    54

1      Q.   Okay.  If the State -- if the Court tells you
2  this is all that they need to prove beyond a reasonable
3  doubt, are you willing to follow this?
4      A.   Yes.
5      Q.   Okay.  Like an example, they need to go ahead
6  and prove all the elements; one, the defendant; on or
7  about the 5th day of September, 1998; in Cameron County
8  Texas; number four is intentionally; number five is he
9  caused the death of an individual by stabbing that
10 individual with a screwdriver or object unknown to the
11 grand jury; and number five -- I'm sorry, still number
12 five, by striking that individual with an object unknown
13 to the grand jury, or by causing that individual to
14 impact with an object unknown to the grand jury; and then
15 number six, and the said defendant was then and there in
16 the course of committing or attempting to commit the
17 offense of robbery of the individual.
18            Do you understand that -- you remember I
19 told you about the lottery?
20     A.   Yes.  Uh-huh.
21     Q.   In order for you to win the lottery, you have
22 to get all six numbers; is that correct?
23     A.   Yes.
24     Q.   Well, it's the same thing here.  In order for
25 you to find the accused guilty of an offense, you need to

 1   find that the State proved all six elements beyond a
 2   reasonable doubt.
 3        A.   Yes.
 4        Q.   Okay?  If the Court would tell you that what
 5   needs to be proven by the State is beyond a reasonable
 6   doubt, would you be willing to follow that?
 7        A.   Just one or --
 8        Q.   Either -- well, they need to prove all six
 9   elements beyond a reasonable doubt.
10        A.   Yes, I would be willing to follow that.
11        Q.   Okay.  You stated earlier that you would
12   require proof of beyond all doubt.
13        A.   Yes.
14        Q.   Okay.  Because this is a more serious offense.
15        A.   Yes.
16        Q.   Okay.  If this Court would tell you that the
17   only proof they need to show you is beyond a reasonable
18   doubt, would you be willing to set aside that requirement
19   that you have of beyond all doubt and just follow what
20   the Court tells you?
21        A.   Yes.
22        Q.   Okay.  Like an example, if they were to prove
23   that the defendant, this is the person that committed
24   this offense, okay, they proved it beyond a reasonable
25   doubt, would you agree with me that on there it doesn't

STATE OF TEXAS VS. RUBEN GUTIERREZ                          56

1    say anything as to --

2         A.    Excuse me?

3         Q.    Would you agree with me that on there it

4    doesn't say anything that he needs to have a yellow or a

5    red shirt?  It doesn't require that.

6         A.    No, it doesn't.

7         Q.    Okay.  The only thing you need to know is

8    whether it was this defendant that caused this death,

9    whether it was this person.

10        A.    Yes.

11        Q.    Okay.

12        A.    But -- yes.  Uh-huh.

13        Q.    Again, let me go back.  Would you be willing to

14   set aside the requirement that you have of beyond all

15   doubt if the Court were to tell you that the only thing

16   that the State needs to prove is beyond a reasonable

17   doubt?  Would you follow what the Court tells you?

18        A.    Yes, what the Court tells me.

19        Q.    Let me just go through the information.  I'm

20   just going to be asking you some questions.  You stated,

21   I believe, that you don't know any of the parties in this

22   case; is that correct?

23        A.    Correct.

24        Q.    And you don't know any of the witnesses?

25        A.    No.

STATE OF TEXAS VS. RUBEN GUTIERREZ                          57

1      Q.    Okay.   Including the names that we gave you

2   yesterday?

3      A.    Yes.

4      Q.    Okay.   If one of the witnesses or somebody that

5   would come testify later on, if it happens that you know

6   him because he's a friend or acquaintance, would that

7   affect you in any way?

8      A.    No, sir.

9      Q.    Okay.   Would you automatically -- would you

10  agree with me to be fair and impartial in this case?

11     A.    Yes.

12     Q.    Okay.   You would not automatically just believe

13  what he's saying just because you know him?

14     A.    No.

15     Q.    We spoke to you about an indictment.   Do you

16  remember that?

17     A.    Yes.

18     Q.    Okay.   That that's not proof that the person

19  that's here is automatically guilty.

20     A.    Yes.

21     Q.    Okay.   I believe you also stated in your jury

22  questionnaire, and I'll quote you, "That a person is

23  innocent until proven guilty."

24     A.    Yes.

25     Q.    Okay.   So what that means is that you would

STATE OF TEXAS VS. RUBEN GUTIERREZ                    58

1    wait until all the evidence is presented and thereafter,

2    once you go deliberate, find a person guilty or not

3    guilty depending on what the witnesses state; is that

4    correct?

5         A.    Yes.   Uh-huh.

6         Q.    And you would be willing to follow this beyond

7    a reasonable doubt?

8         A.    Yes.

9         Q.    Okay.   Remember I spoke to you that beyond a

10   reasonable doubt is -- a reasonable doubt is a doubt

11   based on reason and common sense after a careful and

12   impartial consideration of all the evidence in the case.

13   Do you remember that?

14        A.    Yes.

15        Q.    And it is the kind of doubt that would make a

16   reasonable person to hesitate to act in the most

17   important of his own affairs.

18        A.    Yes.

19        Q.    In this case what we're talking about was about

20   you using your common sense.

21        A.    Yes.

22        Q.    Okay.   It also states, "A reasonable doubt

23   therefore must be proof of such a convincing character

24   that you would be willing to rely and act upon it without

25   hesitation in the most important of your own affairs."

STATE OF TEXAS VS. RUBEN GUTIERREZ                    59

```
1        A.    Correct.
2        Q.    Are you willing to follow this procedure --
3        A.    Yes.
4        Q.    -- to require the State to prove it beyond a
5   reasonable doubt?
6        A.    Yes.
7        Q.    Okay.  You're willing to set aside your way of
8   thinking that you need all doubt?
9        A.    Yes.
10       Q.    Okay.  And just follow beyond a reasonable
11  doubt?
12       A.    Yes.
13       Q.    Okay.  I gave you the example of purchasing a
14  home.
15       A.    I'm sorry?
16       Q.    The purchasing of a home, I gave you that
17  example.
18       A.    Oh, yes.  Uh-huh.
19       Q.    That if you would go purchase a home, if the
20  price was too high and if there was a lot of damage to
21  the house, would you purchase the home?
22       A.    No, I wouldn't.
23       Q.    Okay.  Because you would use your common sense
24  and you would automatically agree with me that probably
25  the house would not be worth it; is that correct?
```

STATE OF TEXAS VS. RUBEN GUTIERREZ                    60

1      A.    Correct.

2      Q.    Okay.  I went through the elements with you a

3    little while ago; and like I told you, that the State

4    needs to prove every single element beyond a reasonable

5    doubt; is that correct?

6      A.    Correct.

7      Q.    Okay.  Like in element number six, I went

8    through what robbery is and what burglary of habitation

9    is.  Do you remember that?

10     A.    Yes.

11     Q.    Robbery is a crime that's committed against a

12   person.

13     A.    Yes.

14     Q.    Would you agree with me?

15     A.    Yes.

16     Q.    Okay.  Burglary is when it's committed against

17   a habitation, a residence or against a building.

18     A.    Yes.

19     Q.    Okay.  So there are two different types of

20   felonies.  You would agree with me?

21     A.    Yes.

22     Q.    Okay.  If the State didn't prove element number

23   six, that they proved that the person committed burglary,

24   and what it says on there is that they need to commit or

25   they were going to commit robbery, what would your

STATE OF TEXAS VS. RUBEN GUTIERREZ                              61

1   verdict be at that time?

2        A.    Innocent.  They need to prove more.

3        Q.    Okay.  Which would be not guilty; is that

4   correct?

5        A.    Correct.

6        Q.    Because on there it says robbery and they

7   proved burglary; is that correct?

8        A.    Yes.

9        Q.    So at that point you would return a verdict of

10  not guilty; is that correct?

11       A.    Yes, because they need one more element.

12       Q.    Okay.  We spoke to you about what we call the

13  bifurcated trial.  And what that is is a two-part trial.

14  Do you remember that?

15       A.    Yes.

16       Q.    Okay.  What it is is the very first part is

17  when we go through the guilt/innocence, whether a person

18  is going to be found guilty or not guilty.

19              Okay.  We present all the evidence to you,

20  which includes statements, pictures, or anything else

21  that's presented to you.  And thereafter, the jury goes

22  back there and you all come back with a guilty or not

23  guilty.

24       A.    (Nods head).

25       Q.    If you all come back with not guilty, remember

STATE OF TEXAS VS. RUBEN GUTIERREZ                          62

1  | I told you that that one, it stops right there.
2  |      A.   Yes.
3  |      Q.   Okay.  You're willing to follow that?
4  |      A.   Yes.
5  |      Q.   Okay.  If you return a verdict of guilty, then
6  | at that point if you return a verdict of capital --
7  | guilty of capital murder, then we go through the three
8  | questions.
9  |      A.   Yes.
10 |      Q.   Okay.  Are you willing to follow those three
11 | questions?
12 |      A.   Yes.
13 |      Q.   Okay.  If you return a verdict of a lesser
14 | included offense, which is something less than capital
15 | murder, then at that point -- like an example, if you did
16 | not find him guilty of capital murder, you found him
17 | guilty of murder, then that would have a sentencing rage
18 | of five to 99 or life, okay?  You're willing to follow
19 | that?
20 |      A.   Yes.
21 |      Q.   Okay.  If you found him guilty of not capital
22 | murder and not murder, you found him guilty of robbery,
23 | that has a sentencing range of two to 20.  You're willing
24 | to follow that, to give him either two to 20 or anything
25 | in between?

STATE OF TEXAS VS. RUBEN GUTIERREZ                    63

1      A.    Yes.

2      Q.    Okay.  If you find him guilty of capital

3  murder, we would go into the three issues which the very

4  first issue is what they told -- what we spoke to you,

5  that you have to look into the future; is that correct?

6      A.    Yes.

7      Q.    Okay.  And at that point determine whether he's

8  going to commit or you believe he'll commit criminal acts

9  of violence.

10     A.    Yes.

11     Q.    Okay.  And Question Number 2 is where we

12  actually spoke to you about whether -- from the evidence

13  beyond a reasonable doubt, the defendant actually caused

14  the death of the individual, he intended to kill the

15  individual, or he anticipated that the individual would

16  be --

17     A.    Yes.

18     Q.    -- would -- he anticipated that a human life

19  would be taken, okay?  We gave you the Circle K example

20  at that point, okay?

21     A.    (Nods head).

22     Q.    You need to answer in words.

23     A.    Yes.

24     Q.    Okay.  The very first example we gave you was

25  the Circle K example where we both -- Mr. Reyes and I

STATE OF TEXAS VS. RUBEN GUTIERREZ                          64

1    both go in to Circle K with a gun.  At that point we both

2    agree that if somebody's going to give us a hard time,

3    we're going to kill whoever gives us a hard time.

4         A.    Yes.

5         Q.    Okay.  So in Question Number 2, if I actually

6    kill the clerk because she's giving me a hard time, your

7    response to the very first part would be "yes" because I

8    actually caused the death; is that correct?

9         A.    Yell.

10        Q.    Okay.  Your response to question number two as

11   to Mr. Reyes would be "yes" because he actually intended.

12   We both agreed that if somebody would give us a hard

13   time, we would kill the clerk, we would kill that

14   individual.

15        A.    Yes.

16        Q.    Okay.  Your response to question number three

17   would be "yes" because we both anticipated that maybe

18   somebody would be killed.

19        A.    Yes.

20        Q.    Okay.  Let me change the hypothetical a little

21   bit.  If we both go in to steal some cigarettes, he is

22   unaware that I have a gun.  We never speak about it or we

23   never talk about killing anybody, okay?  We both go in.

24   We both take the cigarettes.

25              Mr. Reyes gets out first.  Then I get out.

```
 1    As soon as I get out, I get the gun out and I kill the

 2    clerk.  Mr. Reyes is unaware that I have a gun.  He's

 3    unaware -- we never spoke about killing somebody, okay?

 4    The only thing we spoke about was going in and committing

 5    robbery, okay?

 6         A.    (Nods head).

 7         Q.    Your response as to question number one would

 8    be -- did I actually cause the death of the individual?

 9         A.    Yes.

10         Q.    Okay.  Did Mr. Reyes actually cause the death

11    of the individual?

12         A.    You were both involved.

13         Q.    Okay.

14         A.    So --

15         Q.    But in this hypothetical, we both just went in

16    to steal some cigarettes.  He didn't know that I had a

17    gun.  We never spoke about killing somebody.  We just

18    went in just to commit -- just to take some cigarettes.

19         A.    I would have to say yes.

20         Q.    Okay.  Did he actually cause the -- I was the

21    one that pulled the trigger.

22         A.    Yes.

23         Q.    I was the one that actually got the gun and

24    shot the clerk.

25         A.    Uh-huh.
```

STATE OF TEXAS VS. RUBEN GUTIERREZ                          66

1    Q.   Okay.  I was the one.  He did not know that I
2  had a gun, okay?  We had not talked about killing
3  somebody, okay?  I got the gun and I killed the clerk
4  once we got out without him knowing until we were already
5  outside.  I actually killed the clerk; is that correct?
6  I actually caused the death of the clerk.
7    A.   Yes.
8    Q.   Did he actually cause the death of the clerk?
9  Did he actually kill the clerk?
10   A.   No.  You did, but --
11   Q.   Okay.  Let me go on to question number two.
12 Did we ever speak about killing somebody?
13   A.   No.
14   Q.   So I had a gun.  So my intention was that
15 probably somebody might be killed because I knew I had a
16 gun.
17   A.   (Nods head).
18   Q.   Okay.  He did not know that I had a gun.  We
19 never spoke about killing anybody.  The only thing we
20 spoke about is going in and taking some cigarettes, okay?
21 Did he intend to kill somebody when we went in there?
22   A.   No.
23   Q.   Okay.  Did he anticipate that somebody would be
24 killed?  He did not know that I had a gun.  He did not --
25 we never spoke about killing somebody.

PAM L. ESQUIVEL, CSR, RPR

1       A.   No.

2       Q.   But I did; is that correct?

3       A.   Yes.

4       Q.   I anticipated because I had a gun.

5       A.   Yes.

6       Q.   Okay.  I intended to kill somebody if I had a

7  gun with me.

8       A.   Yes.

9       Q.   We spoke to you that in order for you to have a

10 "yes" answer, all 12 of you jurors have to agree to a

11 "yes" answer; is that correct?

12      A.   Correct.

13      Q.   And that's the procedure for Question Number 1

14 and that's the procedure for Question Number 2, okay?  In

15 order for you all to return a "no" answer, only ten of

16 you have to agree.  Do you remember that?

17      A.   Yes.

18      Q.   Okay.  And if ten of you say "no" and two of

19 you say "yes," you can still come back with a "no"

20 answer.

21      A.   Yes.

22      Q.   Okay.  So you're willing to follow that?

23      A.   Yes.

24      Q.   Okay.  Then if we return a "no" answer to

25 Question Number 1, then it stops there.  Do you remember

1    that?

2        A.    Yes.

3        Q.    If you return a "no" answer to Question

4    Number 2, it stops there.

5        A.    Yes.

6        Q.    Okay.  But if you return a "yes" answer to

7    Special Issue Number 1, then you go to Special Issue

8    Number 2.

9        A.    Uh-huh.

10        Q.    Okay.  If you return a "yes" answer to Special

11    Issue Number 2, then you go to Special Issue Number 3,

12    okay?  In that special issue, remember that we spoke to

13    you as to what you're trying to look at is whether this

14    person deserves life imprisonment rather than the death.

15    Do you remember that?

16        A.    Yes.

17        Q.    Okay.  Do you remember that we told you that in

18    this situation, you would look at the evidence, okay,

19    everything that was presented to you, how it happened.

20        A.    Yes.

21        Q.    Okay.  You would look at the circumstances of

22    the offense.  Remember that?

23        A.    Yes.

24        Q.    Okay.  You would look at the defendant's

25    character and background.

STATE OF TEXAS VS. RUBEN GUTIERREZ                    69

1        A.    Yes.

2        Q.    Like an example, education, how much -- and you

3    would also look at the personal moral culpability of the

4    defendant.

5        A.    Yes.

6        Q.    Are you willing to follow this?

7        A.    Yes.

8        Q.    We spoke to you that what this issue talks

9    about is the mitigating -- this is the mitigating issue;

10   is that correct?

11       A.    Yes.

12       Q.    Okay.  Which means that -- mitigating evidence

13   means evidence that a juror might regard as reducing the

14   defendant's moral blameworthiness, okay?  How culpable is

15   this defendant, this person in this case?

16       A.    Uh-huh.

17       Q.    Is he less culpable and does he deserve life

18   instead of death?  That's what you're looking for in this

19   issue.

20       A.    Yes.

21       Q.    Okay.  You're willing to follow that?

22       A.    Yes.

23       Q.    And you understand it?

24       A.    Yes.

25       Q.    We spoke to you about that a person has the

STATE OF TEXAS VS. RUBEN GUTIERREZ                    70

1    right to remain silent.

2         A.   Yes.

3         Q.   Okay.  And you understand that they don't have

4    to speak to a police officer.

5         A.   Uh-huh.  Yes.

6         Q.   They don't have to speak or testify here in

7    court.

8         A.   Yes.

9         Q.   And they don't have to go ahead and present any

10   evidence at all.

11        A.   Yes.

12        Q.   Okay.  If we would sit here and if the

13   individual did not testify in court, would you hold it

14   against him?

15        A.   No.

16        Q.   Okay.  If we would sit here and not present any

17   evidence at all, we would not question any other

18   witnesses and we don't present any witnesses, would you

19   hold it against the accused if the law states that they

20   don't have to present any evidence?

21        A.   No.

22        Q.   Okay.  Would you automatically -- if the State

23   did not prove their case beyond a reasonable doubt and if

24   we didn't present any evidence -- remember, going back to

25   the elements?  If they proved burglary instead of robbery

STATE OF TEXAS VS. RUBEN GUTIERREZ                        71

```
 1    in element number six, okay, and we did not present any

 2    evidence at all, what would your verdict be at that time?

 3         A.   If they proved it and they proved all six

 4    elements?

 5         Q.   If they didn't prove element number six.  You

 6    remember they proved burglary and --

 7         A.   Innocent, because they didn't prove element

 8    number six.

 9         Q.   All right.  So what would your verdict be at

10    that time?

11         A.   Innocent, because they need to follow -- well,

12    complete all six elements.

13         Q.   Okay.  So it would be not guilty at that time;

14    is that correct?

15         A.   Correct.

16         Q.   All right.  And that would be even if we don't

17    present any evidence at all?

18         A.   Sure.  Yes.

19         Q.   Okay.  Because the State is the one that has to

20    prove all six elements beyond a reasonable doubt.

21         A.   Yes.

22         Q.   Okay.  You agree with me on that?

23         A.   Yes.

24         Q.   And you're willing to follow that?

25         A.   Yes.
```

STATE OF TEXAS VS. RUBEN GUTIERREZ                    72

1      Q.    Okay.  We spoke to you about the spousal
2   privilege, that the wife has the right not to testify at
3   all.
4      A.    Yes.
5      Q.    Okay.  And if she does not testify, would you
6   hold it against the accused?
7      A.    No.  It's her choice.
8      Q.    Okay.  And we also spoke to you about the
9   codefendant's right not to testify.
10     A.    Yes.
11     Q.    Okay.  Would you hold that against the accused?
12     A.    No.
13     Q.    Okay.  You agree with me that in some
14   situations there's plea bargaining with codefendants?
15     A.    Yes.
16     Q.    Do you remember what plea bargaining is?
17     A.    Yes.
18     Q.    Okay.  Plea bargain is when a codefendant --
19   which in our hypothetical, if I was the one in trial,
20   Mr. Reyes was the codefendant, okay?  If he got a plea
21   bargain, which means if he got a lesser sentence or he
22   got probation or he got a dismissal just because he's
23   going to testify in a case -- do you understand what a
24   plea bargain is?
25     A.    Yes.

1      Q.   He's getting something in return for his

2   testimony, okay?  Would you agree with me that he has a

3   motive for testifying?

4      A.   Yes.

5      Q.   He's getting something in return.  He's getting

6   a plea bargain.  He's getting probation or he's getting a

7   dismissal.  So he has a motive to testify.

8      A.   Yes.

9      Q.   Okay.  And would you agree with me that people

10  might lie in order for them to get something in return?

11     A.   Yes.

12     Q.   Okay.  So would you take this into

13  consideration?

14     A.   Very much.

15     Q.   Okay.  We spoke to you about the doctors and

16  police officers and scientists.  They're also human; is

17  that correct?

18     A.   Yes.

19     Q.   Okay.  That this individual is -- just like all

20  of us, also make mistakes?

21     A.   Yes.

22     Q.   All right.  So maybe sometimes they might lie

23  in order to cover their mistake.

24     A.   Yes.

25     Q.   Would you agree with me as to that?

STATE OF TEXAS VS. RUBEN GUTIERREZ                              74

1        A.    Yes.

2        Q.    Would you be willing to take that into

3    consideration?

4        A.    Yes.

5        Q.    You stated, I believe, you have your dad that's

6    a police officer; is that correct?

7        A.    Yes.

8        Q.    And I believe you have a cousin or an uncle

9    that's a jailer?

10       A.    An uncle.

11       Q.    Okay.  And he works at the detention center you

12   said?

13       A.    Yes.

14       Q.    Okay.  Would you be willing to be fair and

15   impartial even though you have these family members that

16   are --

17       A.    Yes.

18       Q.    Okay.  Would you make a decision automatically

19   or believe police officers a lot more just because you

20   have family that's in law enforcement?

21       A.    No.  I'll be fair.

22       Q.    Okay.  So you would be willing to listen to the

23   testimony --

24       A.    Yes.

25       Q.    -- and decide after that?

STATE OF TEXAS VS. RUBEN GUTIERREZ                                75

1              You stated that you've never been a prior

2   victim; is that correct?

3        A.    That's correct.

4        Q.    You stated that you've kind of heard about the

5   case, but that you've blocked it out?

6        A.    Yes.   It's like the title, the name of it, but

7   that's it.   I just blocked it out.

8        Q.    Okay.   So you haven't formed an opinion as to

9   this?

10       A.    No.

11       Q.    Okay.   You've never served as a juror before?

12       A.    No, sir.

13       Q.    Thank you.

14             MR. GALARZA:   That's all I have at this

15   time, Your Honor.

16             THE COURT:   All right, Ms. Rivera.   I'm

17   going to ask you to step down for just a minute, and I'll

18   take up a legal matter.

19             **(Prospective juror left the courtroom)**

20             THE COURT:   Is this venireperson

21   acceptable to the State?

22             MR. BLAYLOCK:   No, Judge.   We challenge

23   for cause.   She clearly said she would hold the State to

24   a higher burden, including the hypothetical about the

25   yellow shirt and the orange shirt.

STATE OF TEXAS VS. RUBEN GUTIERREZ                         76

1            THE COURT:  I'll deny that.

2            MR. BLAYLOCK:  I would object for the

3    record.  I would ask that at the end, if I come in need

4    of another peremptory challenge because I'm going to have

5    to use one now, that I be given one.

6            THE COURT:  That'll be denied.

7            MR. BLAYLOCK:  Peremptory challenge.

8            THE COURT:  That'll be number --

9            MR. BLAYLOCK:  Six.

10           THE COURT:  -- six.

11           Bring her in.

12           THE BAILIFF:  Yes, Your Honor.

13           THE COURT:  Ms. Rivera, that's all the

14   questions we have for you.  You're excused to go.  Thank

15   you.

16           MS. RIVERA:  Thanks.

17           THE COURT:  Okay.  We'll resume at 1:30

18   with Ms. Barrera.

19           **(Lunch recess taken from 11:39 a.m. to**

20           **1:24 p.m.)**

21           THE COURT:  All right.  You may be seated.

22   Bring Ms. Barrera in.

23           THE BAILIFF:  Yes, Your Honor.

24           THE COURT:  Good afternoon, Ms. Barrera.

25           MS. LOPEZ:  Good afternoon.

STATE OF TEXAS VS. RUBEN GUTIERREZ                    77

```
1              THE COURT:  How are you?
2              MS. LOPEZ:  Okay.
3              THE COURT:  First of all, let me apologize
4   for bringing you back.  There's some other things that we
5   need to put on the record; and that's the only reason we
6   brought you back.
7              MS. LOPEZ:  Okay.
8              THE COURT:  So I appreciate your coming
9   back for us.
10             Go ahead.
11             MS. FISCHER:  Thank you, Judge.
12              AMERICA BARRERA LOPEZ,
13      having been called as a prospective juror and, upon
14      her oath, was examined and testified as follows:
15              VOIR DIRE EXAMINATION
16  BY MS. FISCHER:
17        Q.   Good afternoon, ma'am.  How are you?
18        A.   Okay.
19        Q.   I'm Karen Fischer.  You remember me from
20  yesterday.  Mr. Blaylock will be here in a minute.
21             When we spoke yesterday, you had told me
22  and you told the Judge that because of what happened to
23  your sister and the way that she was murdered, that it
24  would be impossible for you to be a juror in this case
25  because that would always be in the back of your mind.
```

STATE OF TEXAS VS. RUBEN GUTIERREZ                           78

1   Is that still your feeling here today?

2        A.   Yes.

3        Q.   And I know that you had told us through your

4   questionnaire that you were somewhat familiar with the

5   facts of this case; is that right?

6        A.   No.

7        Q.   Okay.  You don't know anything about the facts

8   of this case?

9        A.   No.

10       Q.   But hypothetically, if this case was similar to

11  the way that your sister died, would that cause your

12  verdict maybe in this case to change?

13       A.   I don't understand.

14       Q.   Okay.  Kind of like we talked about yesterday,

15  sometimes we have a feeling in our hearts --

16       A.   Okay.

17       Q.   -- that may influence what our final decision

18  is.  And kind of when you come into the jury and you're a

19  juror, you have to think only with your head.  And you

20  may have some feelings in your heart that may cause you

21  to not be fair.

22       A.   Right.

23       Q.   And that's what you told me yesterday.  I just

24  need to know if that's the same today.  You've had some

25  time.  You slept on it.  You went home.  And I hate the

STATE OF TEXAS VS. RUBEN GUTIERREZ                              79

```
1   fact that you probably did think about your sister --
2        A.   Yes.
3        Q.   -- last night; and I hate that for you.  But is
4   it still the same?  Are you still going to be biased in
5   this case because of what happened to her?
6        A.   I wouldn't know.  I wouldn't know.
7        Q.   Okay.  Now, yesterday you told me that you
8   thought you would.
9        A.   Yes.
10       Q.   Okay?  Have you changed your opinion --
11       A.   No.
12       Q.   -- or is it still the same?
13       A.   It's the same.
14       Q.   Okay.  So because of what happened to her, you
15   wouldn't be able to concentrate in this case?
16       A.   Right.
17       Q.   And you might hold it against the defendant
18   maybe if the facts were similar to the way that your
19   sister died; isn't that right?
20       A.   Right.
21                 MS. FISCHER:  I don't have any further
22   questions, Your Honor.
23                 MR. REYES:  May I proceed, Your Honor?
24                 THE COURT:  You may.
25
```

STATE OF TEXAS VS. RUBEN GUTIERREZ                          80

```
 1                    VOIR DIRE EXAMINATION
 2  BY MR. REYES:
 3       Q.    Good morning -- good afternoon, Ms. Barrera.
 4  How are you doing?
 5       A.    Okay.
 6       Q.    Is it Barrera or is it Lopez?
 7       A.    Lopez.
 8       Q.    Okay.  I'm just going to go ahead and ask you
 9  some other questions.  If you don't understand something
10  that I'm asking, just let me know and I'll rephrase it,
11  okay?
12       A.    Okay.
13       Q.    The first thing that I wanted to cover was from
14  your questionnaire some of the answers that you gave.  On
15  page 5, question 14, it asks you, "Do you have any health
16  problems, sight, hearing, emotional, et cetera, which
17  might affect your jury -- your service as a juror?"  And
18  you answered, "Yes."  And basically you have problems
19  with your blood pressure; is that correct?
20       A.    Uh-huh.
21       Q.    And --
22             THE COURT:  You need to answer yes or no.
23       A.    Yes.
24             THE COURT:  Thank you.
25       Q.    (BY MR. REYES)  Everything that's being said
```

STATE OF TEXAS VS. RUBEN GUTIERREZ                    81

1    needs to be taken down by the court reporter who is to

2    your left.  So you need to answer orally yes or no.

3         A.   Okay.

4         Q.   Okay.  So the fact that you have high blood

5    pressure, that would -- might interfere with your service

6    as a juror?

7         A.   Yes.

8         Q.   And the fact that your sister was killed and by

9    being here and hearing about this case, that's brought

10   back those --

11        A.   Yes.

12        Q.   -- that case; isn't that correct?

13        A.   Yes.

14        Q.   So you understand that everybody is entitled to

15   a fair trial?

16        A.   Yes.

17        Q.   And because if you as a juror might be sitting

18   here and you might hold it against the person who's on

19   trial because of something that might have happened to

20   you or your family, you understand how that individual

21   would not receive a fair trial?

22        A.   Yes.

23        Q.   Because you're making a decision based on

24   emotion --

25        A.   Yes.

STATE OF TEXAS VS. RUBEN GUTIERREZ                    82

1        Q.    -- and not based on the facts or the evidence.

2        A.    Yes.

3        Q.    Do you understand that?

4        A.    Yes.

5        Q.    And it was my understanding from you yesterday

6   that the fact that your sister was a victim of murder,

7   that that would affect your decision-making in this

8   case --

9        A.    Yes.

10       Q.    -- is that correct?  And is that still the case

11  today?

12       A.    Yes.

13       Q.    You also talked about -- you also talked on

14  page 13, question 52, "Should people accused of murder be

15  treated differently than people accused of committing

16  other crimes?"  And you answered, "Yes."  And that

17  would -- I would guess it would go back to your sister

18  being killed, right?

19       A.    Right.

20       Q.    You had talked about her son being the one that

21  killed her; is that correct?

22       A.    Right.  Yes.

23       Q.    And because you said that he only got about

24  five years and now he's out.

25       A.    Yes.

STATE OF TEXAS VS. RUBEN GUTIERREZ                    83

1        Q.   Is that why you believe that people who are
2    convicted of murder should get more of a sentence?
3        A.   Well, because he is still doing problems.  He's
4    still out there doing problems.
5        Q.   And because you have that personal experience
6    in your family, do you think -- would that affect you
7    also in this case because you can see that and then you
8    can -- that might affect you as a juror?  Do you see
9    where I'm coming from?
10       A.   Yes.
11       Q.   Because yesterday you said, "Well, he's already
12   out and he killed my sister."
13       A.   Yes.
14       Q.   And do you see how if you are to find somebody
15   guilty, even you as a jury will be responsible for
16   sentencing somebody?
17       A.   Yes.
18       Q.   And because you feel that way about your
19   nephew, that that might affect you in this case.  Do you
20   see where that could happen?
21       A.   Yes.
22       Q.   And do you think you would have a hard time
23   trying to set that feeling aside and making a fair
24   decision or would it be difficult?  Because all those
25   things would be coming back about your sister.

STATE OF TEXAS VS. RUBEN GUTIERREZ                          84

1        A.    Yes.

2        Q.    Do you see how that might happen?

3        A.    Uh-huh.   I don't think I could take it.

4        Q.    You don't think you could take it?

5        A.    No.

6        Q.    And is there any way -- I know it's very

7    difficult and we respect your -- you know, how it is that

8    you're feeling.  But is there any way that you would be

9    able to set it aside or it would affect you?  And if it

10   affects you, that's fine.  We need to know right now.

11       A.    I think so.

12       Q.    It would affect you?  Do you understand that

13   every person is presumed to be innocent of a crime?  Do

14   you understand that?

15       A.    Uh-huh.

16       Q.    And the presumption can only be overcome if the

17   State presents enough evidence to convince a jury that

18   that person is guilty beyond a reasonable doubt.  Do you

19   understand that?

20       A.    Yes.

21       Q.    Because with respect to that, on page 16,

22   question 69 where it's asking you to, "Please state your

23   personal belief regarding the following statement:  A

24   defendant is innocent until proven guilty beyond a

25   reasonable doubt."  And you didn't answer that.

STATE OF TEXAS VS. RUBEN GUTIERREZ                          85

```
 1        A.    Uh-huh.

 2        Q.    Do you think that you would be affected

 3   somewhat?  It goes, again, to your family --

 4        A.    Yes.

 5        Q.    -- and all that.  That would affect you also?

 6        A.    Uh-huh.  Yes.

 7        Q.    And question 21, page 80 is asking if are you

 8   familiar with the facts of this case; and you state that

 9   you are.

10        A.    No, I'm not.

11        Q.    You're not?

12        A.    No.

13        Q.    So that should have been a "no?"

14        A.    That should have been a "no."

15                   MR. REYES:  I have nothing further, Your

16   Honor.

17                   THE COURT:  All right.

18                   MS. FISCHER:  At this time the State would

19   challenge this juror for cause based on her past history

20   involving her sister's murder.

21                   MR. REYES:  We have no objection, Your

22   Honor.

23                   THE COURT:  Okay.  For the record I'll

24   grant that.

25                   Okay.  Ms. Barrera, thank you very much
```

STATE OF TEXAS VS. RUBEN GUTIERREZ                          86

 1   for coming back.  I appreciate you doing that.
 2                   MS. LOPEZ:  Okay.
 3                   THE COURT:  You're excused to go at this
 4   time.
 5                   MS. LOPEZ:  Thank you.
 6                   THE COURT:  Thank you.  We'll be in recess
 7   until Ms. Lazo Peralez shows up.
 8                   THE BAILIFF:  Let me go check, Your Honor.
 9   Maybe she's here.
10                   THE COURT:  All right.
11                   THE BAILIFF:  No, Your Honor, no answer.
12                   THE COURT:  We'll be in recess.
13                   **(Recess taken from 1:32 p.m. to 1:59 p.m.)**
14                   THE COURT:  All right.  You may be seated.
15   Bring in Ms. Lazo Peralez.
16                   THE BAILIFF:  Yes, Your Honor.
17                   THE COURT:  Good afternoon, Ms. Lazo.
18                   MS. PERALEZ:  Hi.  How are you doing?
19                   THE COURT:  How are you?
20                   MS. PERALEZ:  Okay.
21                   THE COURT:  First of all, let me apologize
22   for bringing you back.
23                   MS. PERALEZ:  Okay.
24                   THE COURT:  We just need to put some other
25   things on the record.

STATE OF TEXAS VS. RUBEN GUTIERREZ                        87

```
 1                    MS. PERALEZ:  Okay.

 2                    THE COURT:  So you may be seated; and I

 3   think we're ready to proceed.

 4                    MS. PERALEZ:  Okay.

 5                    THE COURT:  We'll try to get you out

 6   quick.

 7                    MS. PERALEZ:  Okay.

 8                    THE COURT:  Go ahead.

 9                    MS. FISCHER:  Thank you, Judge.

10                    VELMA LAZO PERALEZ,

11       having been called as a prospective juror and, upon

12       her oath, was examined and testified as follows:

13                    VOIR DIRE EXAMINATION

14   BY MS. FISCHER:

15       Q.    Good afternoon, Ms. Peralez.

16       A.    Good afternoon.

17       Q.    My name is Karen Fischer.  And Mr. Blaylock and

18   myself, we both work for the Cameron County District

19   Attorney's Office.

20       A.    Okay.

21       Q.    He spoke with you yesterday.  I just want to

22   ask a few more questions today; and then we're going to

23   let the defendant's attorneys speak with you.

24       A.    Okay.

25       Q.    Now that you've had an opportunity to go home
```

STATE OF TEXAS VS. RUBEN GUTIERREZ                          88

1    and think about things -- and I'm sure you probably did.

2    Did you not think about some of the questions we had

3    asked you yesterday?

4         A.   Yes, I did.

5         Q.   My question to you, then, is have any of your

6    attitudes or your beliefs about the trial and the court

7    system itself changed since yesterday?

8         A.   No, it hasn't.

9         Q.   Okay.  What about your feelings about the death

10   penalty?  Have any of your -- any of the answers that you

11   gave yesterday, are they changed today?

12        A.   No, they haven't.

13        Q.   Okay.  So then once again, we were real clear

14   yesterday, number one, you have to be fair and impartial;

15   and you said you could do that.

16        A.   Yes.

17        Q.   And number two, when Mr. Blaylock talked to you

18   about these questions here and he went over them very

19   carefully with you, he told you based on your answer to

20   these questions, the defendant may be subjected to the

21   death penalty.  You understood that?

22        A.   Yes.

23        Q.   And you told him that you would answer these

24   questions honestly --

25        A.   Correct.

STATE OF TEXAS VS. RUBEN GUTIERREZ                    89

```
 1         Q.    -- and not make a decision that would ensure
 2    the defendant not getting the death penalty.
 3         A.    Right.
 4         Q.    Is that still your answers here today?
 5         A.    Yes.
 6         Q.    Okay.   Is there anything else that we didn't
 7    ask you yesterday that you think might be important for
 8    us to know?
 9         A.    Not that I can think of right now.
10         Q.    Okay.   Anything that you're thinking that if
11    you become a potential juror in the case or any
12    questions -- this is the last time we get to talk which
13    is why I'm asking you questions.
14         A.    Okay.
15         Q.    This should be the last time we get to talk to
16    you --
17         A.    Okay.
18         Q.    -- Mr. Blaylock or myself, one-on-one.   And I
19    need to know if there's anything in your mind that makes
20    you feel like you might not be fair.   I mean, we talked
21    to you real extensively yesterday; and you told us you
22    could be fair and follow the law.
23         A.    Yes.
24         Q.    I need to make sure there's not something that
25    you're thinking of right now that may cause you to not be
```

STATE OF TEXAS VS. RUBEN GUTIERREZ                              90

```
 1   fair.
 2        A.   No.
 3        Q.   Okay.  So you're going to follow the law --
 4        A.   Yes.
 5        Q.   -- and answer the questions honestly?
 6        A.   Yes.
 7        Q.   Okay.  And that's it.
 8                  MS. FISCHER:  That's all I have, Judge.
 9                  MS. PERALEZ:  Okay.
10                  MR. GALARZA:  May I proceed, Your Honor?
11                  THE COURT:  You may.
12                       VOIR DIRE EXAMINATION
13   BY MR. GALARZA:
14        Q.   It's Ms. Peralez, right?
15        A.   Right.
16        Q.   Okay.  Good afternoon.  Again, you remember Mr.
17   Reyes and myself, Santiago Galarza.
18        A.   Yes.
19        Q.   Okay.  I'm just going to be going over some of
20   the questions that we already went through yesterday.
21   And we just need to go ahead and ask you the questions
22   again and we just need to go ahead and go through this
23   procedure.
24                  You stated that you didn't know any of the
25   parties; is that correct?
```

STATE OF TEXAS VS. RUBEN GUTIERREZ                    91

1      A.    Correct.

2      Q.    And you don't know any of the witnesses that

3  were called?

4      A.    Correct.

5      Q.    Including the witnesses, the names that I gave

6  you yesterday?

7      A.    Correct.

8      Q.    Okay.  If it happens that some of those

9  witnesses that you do know them and they're a friend of

10  yours, you're willing to go ahead and just listen to the

11  testimony and it wouldn't affect you in any way; is that

12  correct?

13      A.    Correct.

14      Q.    Okay.  You wouldn't automatically believe that

15  they're more credible just because you know them?

16      A.    No.

17      Q.    Okay.  We spoke to you about that person gets

18  indicted after all the -- well, after the police makes an

19  investigation, then after that all the paperwork is

20  presented to the District Attorney's Office.  And at that

21  point a person is indicted; is that correct?

22      A.    Correct.

23      Q.    Would you agree with me that at that time a

24  person is still presumed innocent?

25      A.    Correct.

STATE OF TEXAS VS. RUBEN GUTIERREZ                              92

1       Q.    Okay.  Would you agree with me that at that

2  point, that it's up to the State for them to prove their

3  case beyond a reasonable doubt?

4       A.    Correct.

5       Q.    Okay.  So at this point we're trying to select

6  the jury.  And at this point the person is still innocent

7  until you listen to all the evidence.

8       A.    Yes.

9       Q.    And then if you all go over to the jury room

10 and if at that time you believe that he's guilty, then

11 you return a verdict of guilty.

12      A.    Correct.

13      Q.    Okay.  If at that point you believe that they

14 didn't prove one of the elements -- remember the elements

15 we went over?

16      A.    Yes.

17      Q.    If they didn't prove one of the elements, then

18 what would your verdict be at that time?

19      A.    Not guilty.

20      Q.    Okay.  I went through element number six at

21 that point.

22      A.    Yes.

23      Q.    Remember burglary and robbery?

24      A.    Yes.

25      Q.    If they proved burglary in element number six

STATE OF TEXAS VS. RUBEN GUTIERREZ                    93

1   instead of robbery, which is what they have on there,
2   what would your verdict be at that time?
3        A.   Not guilty.
4        Q.   We went through the definition of beyond a
5   reasonable doubt.  It's over here.  And we stated that,
6   "A reasonable doubt is a doubt based on reason and common
7   sense after a careful and impartial consideration of all
8   the evidence in the case.  It is the kind of doubt that
9   would make a person hesitate to act in the most important
10  of his own affairs."
11            Do you remember that -- when we spoke
12  about the common sense?
13       A.   Correct.
14       Q.   That we try to go ahead and use our common
15  sense in order to determine if they have proved their
16  evidence beyond a reasonable doubt.
17       A.   Correct.
18       Q.   Remember that?  Okay.  "Reasonable doubt
19  therefore must be proof of such a convincing character
20  that you would be willing to rely and act upon it without
21  hesitation in the most important of your owns affairs."
22            We spoke of the purchase of a home.
23       A.   Yes.
24       Q.   Okay.  That if the home was valued at 50,000
25  and if they're selling it for 100,000, would you buy the

STATE OF TEXAS VS. RUBEN GUTIERREZ                    94

1   home?

2        A.    No.

3        Q.    Why not?

4        A.    Because it's not worth the 100,000.

5        Q.    And again, if it was worth -- it was selling

6   for 100,000 and this home once you saw it was damaged,

7   would you purchase the home?

8        A.    No.

9        Q.    Why?

10        A.    Because it's damaged.

11        Q.    Okay.  So at that point you're using your

12   common sense --

13        A.    Correct.

14        Q.    -- to determine whether it's worth it to

15   purchase this home or not --

16        A.    Right.

17        Q.    -- is that correct?  Okay.  That's the same

18   common sense and reasoning that we want for you to use in

19   this case.

20        A.    Yes.

21        Q.    Okay.  You look at all the evidence.  You look

22   at all the elements.  The six elements in this case are

23   that the defendant; element number two would be that on

24   or about the 5th day of September, 1998; number three

25   would be that in Cameron County, Texas; number four that

STATE OF TEXAS VS. RUBEN GUTIERREZ                          95

1   intentionally; number five, caused the death of an
2   individual by stabbing the individual with a screwdriver
3   or object known to the grand jury, or by striking the
4   individual with an object unknown to the grand jury, or
5   by causing the individual to impact with an object
6   unknown to the grand jury; and number six would be and
7   the said defendant was then and there in the course of
8   committing or attempting to commit the offense of robbery
9   of the individual.
10              Do you remember these six elements?
11      A.   Yes.
12      Q.   And going back to what I told you a little
13  while ago, you understand what's required in each
14  element?
15      A.   Yes.
16      Q.   Okay.  And you understand that the State needs
17  to prove this beyond a reasonable doubt?
18      A.   Yes.
19      Q.   Okay.  Going back to the hypothetical or the
20  burglary and robbery, if they proved burglary in element
21  number six, what would your verdict be at that time?
22      A.   Not guilty.
23      Q.   Okay.  Because one of the elements was not
24  proven --
25      A.   Yes.

STATE OF TEXAS VS. RUBEN GUTIERREZ                                      96

1        Q.    -- is that correct?

2        A.    Correct.

3        Q.    So we go back to the lottery.  If you buy a

4    lottery on Wednesday, tomorrow, and you only get five

5    numbers, do you get the lottery at that point?

6        A.    No, I don't.

7        Q.    Why not?

8        A.    Because I need to get all six numbers --

9        Q.    Okay.

10       A.    -- to match.

11       Q.    Okay.  We also spoke to you about the

12   bifurcated trial which is a two-part trial.  Do you

13   remember that?

14       A.    Yes.

15       Q.    Okay.  That the very first part is the guilt or

16   innocence, okay?  You listen to the testimony.  You

17   listen to all the evidence.  You see the pictures,

18   anything that's introduced at the trial stage.

19       A.    Okay.

20       Q.    Okay.  Once everything's introduced, once both

21   sides rest, then at that point the jury, all 12 jurors

22   will go to the back.  They'll decide.  They'll talk about

23   this case and then at that point decide whether a person

24   is guilty or not guilty.  Do you remember that?

25       A.    Yes.

STATE OF TEXAS VS. RUBEN GUTIERREZ                          97

```
 1        Q.   Okay.  At that point if you all decide he's not
 2   guilty, the case stops right there.
 3        A.   Uh-huh.
 4        Q.   Okay.  You're willing to go through that
 5   procedure?
 6        A.   Yes.
 7        Q.   Okay.  You're willing to go through the six
 8   elements.  If they proved it beyond a reasonable doubt,
 9   it's guilty.  If they fail to prove even one element,
10   then it's not guilty at that point.  Do you understand?
11        A.   Yes.
12        Q.   Okay.  Then if you decide not guilty, it stops
13   right there.  If your decision at that point is guilty,
14   then we go through -- if you all decide that he was
15   guilty of capital murder, then you go through the three
16   questions.
17        A.   Okay.
18        Q.   Is that -- remember that Question Number 1 --
19        A.   Yes.
20        Q.   -- if you all get a "yes" answer to that one --
21        A.   Yes.
22        Q.   -- you need 12 jurors to get a "yes" answer.
23        A.   Yes.
24        Q.   Okay.  Then you go on to Question Number 2.  Do
25   you remember that?
```

STATE OF TEXAS VS. RUBEN GUTIERREZ                          98

```
1        A.    Yes.
2        Q.    Okay.  If you get a "yes" answer to Question
3   Number 2, then you go to Question Number 3, okay?
4        A.    Yes.
5        Q.    Remember that in Question Number 1, only ten of
6   you need to say "no" in order for you all to bring back a
7   "no" answer?
8        A.    Yes.
9        Q.    Okay.  If you all bring back a "no" answer, it
10  stops right there.  Remember that?
11       A.    Yes.
12       Q.    Okay.  But if you bring a "yes" answer, you go
13  to Question Number 2.  At that point, if you bring back a
14  "no" answer, you only need ten people.  Do you remember
15  that?
16       A.    Yes.
17       Q.    Okay.  If you bring a "no" answer, then it
18  stops right there again.
19       A.    Okay.
20       Q.    Okay.  If you bring a "yes" answer, you need 12
21  people.  And if you bring a "yes" answer, it goes to
22  Question Number 3.  Remember that?
23       A.    Yes.
24       Q.    Okay.  So if a person -- if you all at that
25  point find him guilty of capital murder, then you go
```

STATE OF TEXAS VS. RUBEN GUTIERREZ                          99

1   through those three questions.

2        A.   Okay.

3        Q.   Okay.  Remember that I told you that you all

4   can find him guilty of something less, a less criminal

5   act than what actually he was being charged with.

6   Remember that?

7        A.   Yes.

8        Q.   Okay.  So like an example, if you find him not

9   guilty of capital murder, but if you find him guilty of

10  just murder, the sentencing range is from five to 99 or

11  life.

12       A.   Yes.

13       Q.   Okay.  You're willing to take that into

14  consideration?

15       A.   Yes.

16       Q.   If you find him not guilty of capital murder

17  and not guilty of murder, but you found him guilty of

18  robbery, the sentencing range is from two years to 20

19  years.  You're willing to go by that sentencing?

20       A.   Yes.

21       Q.   Special Issue Number 1, what it says up there,

22  "Is there a probability that the defendant would commit

23  criminal acts of violence that would constitute a

24  continuing threat to society?"

25                    Remember we spoke to you about probability

1    would mean that you're looking into the future.

2         A.    Correct.

3         Q.    Okay.  That you look at is there a probability

4    that this person is going to commit criminal acts of

5    violence?  Do you remember that?

6         A.    Yes.

7         Q.    Okay.  Remember that we spoke to you about

8    criminal acts of violence is acts against a person.

9         A.    Correct.

10        Q.    Okay.  So if it's acts against -- that they go

11   into a house to commit theft, that's not a criminal act

12   of violence.  Would you agree with me?

13        A.    Yes.

14        Q.    Because that's not an act against a person.

15        A.    Right.

16        Q.    Okay.  We went into Question Number 2, "Do you

17   find from the evidence beyond a reasonable doubt that the

18   defendant actually caused the death of the deceased;

19   number two, if he did not actually cause the death of the

20   deceased, that he intended to kill the deceased; or

21   number three, that he anticipated that a human life would

22   be taken?"  Do you remember that?

23        A.    Yes.

24        Q.    Okay.  Remember that we gave you a

25   hypothetical.  Mr. Reyes and I go into the Circle K.

1     A.   Yes.

2     Q.   Both of us have a gun.  We both agree that if

3 somebody tries to stop us from committing robbery, then

4 we're going to go ahead and kill somebody.

5     A.   Yes.

6     Q.   Okay.  So in the hypothetical, did I actually

7 cause the death of an individual?  Did I kill the clerk?

8     A.   Yes.

9     Q.   Did I actually cause the death?

10    A.   Yes.

11    Q.   Okay.  Hypothetical number two -- or the same

12 hypothetical.  Did I intend to kill somebody?

13    A.   Yes.

14    Q.   Did Mr. Reyes intend to kill somebody?

15    A.   No.

16    Q.   If we both spoke about it --

17    A.   Oh, yes.  Yes.

18    Q.   Okay.  Number three, did I anticipate that

19 somebody might be killed?

20    A.   Yes.

21    Q.   Did he anticipate that somebody might be

22 killed?

23    A.   Yes.

24    Q.   Okay.  Let's change the hypothetical.  If both

25 of us go in to take some cigarettes, we never talk about

STATE OF TEXAS VS. RUBEN GUTIERREZ                    102

1   killing somebody.  We never take any weapons.  As far as
2   both of our knowledge, we're not taking any weapons.
3         A.   Okay.
4         Q.   But then I to myself, I know that I have a gun
5   and I'm going to take that gun in there with me.
6   Mr. Reyes does not know anything about that.
7               We both go in there.  We both take some
8   cigarettes and we're scot-free.  He leaves.  Then as I'm
9   leaving, I take the gun out and I shoot the clerk anyway.
10  Did I actually cause the death of an individual?
11        A.   Yes.
12        Q.   Did Mr. Reyes cause the death of an individual?
13        A.   No.
14        Q.   Did I intend to kill somebody?
15        A.   Yes.
16        Q.   Did Mr. Reyes intend to kill somebody?
17        A.   No.
18        Q.   Did I anticipate that maybe somebody would be
19  killed?
20        A.   Yes.
21        Q.   Did Mr. Reyes anticipate that?
22        A.   No.
23        Q.   You're willing to follow this procedure?
24        A.   Yes.
25        Q.   Then we go into Issue Number 3.  If you

STATE OF TEXAS VS. RUBEN GUTIERREZ                    103

```
 1    answered "yes" to Number 1 and Number 2, we go into
 2    Number 3.  Remember that in Number 3, what we're asking
 3    you -- if I'm the one that's in trial, is there something
 4    from the evidence, from the circumstances of the offense,
 5    from my character and my background, or from my personal
 6    moral culpability that would require -- that you believed
 7    that I deserved life instead of death?
 8              Okay.  Remember that we spoke to you and
 9    told you look at all the evidence.
10         A.   Yes.
11         Q.   Look at the circumstances.
12         A.   Yes.
13         Q.   Okay.  So in all the evidence and
14    circumstances, you look at did I actually kill the
15    person?
16         A.   Yes.
17         Q.   Would you be willing to take that into
18    consideration?
19         A.   Yes.
20         Q.   Would you be willing to take into consideration
21    my educational background?
22         A.   Yes.
23         Q.   Would you be willing to take into consideration
24    whether I'm remorseful for what happened?
25         A.   Yes.
```

1     Q.   Okay.  As to Mr. Reyes, the same thing, would

2  you look at all the information?  You're going to look

3  into did he actually kill the person?  Did he actually

4  have the intent to kill the person?  Did he know that

5  somebody was going to be killed?

6     A.   Okay.

7     Q.   You're willing to follow that procedure?

8     A.   Yes.

9     Q.   And you're willing to take all that into

10  consideration?

11     A.   Yes.

12     Q.   I spoke to you as to you know that an accused

13  has the right to remain silent.

14     A.   Yes.

15     Q.   You know that he does not have to speak to a

16  police officer.

17     A.   Right.

18     Q.   He does not have to testify in court.

19     A.   Right.

20     Q.   And he does not have to present any evidence at

21  all.

22     A.   Right.

23     Q.   Including questioning any witnesses --

24     A.   Correct.

25     Q.   -- that are testifying.  You're willing to go

STATE OF TEXAS VS. RUBEN GUTIERREZ                          105

1   ahead -- would you agree with me -- let me go back up.

2   Would you hold it against the accused just because he's

3   not testifying?

4        A.    No.

5        Q.    Would you hold it against him just because he

6   did not give a statement?

7        A.    No.

8        Q.    Would you hold it against him just because he

9   did not present any evidence?

10       A.    No.

11       Q.    You know there's a spousal privilege.

12       A.    Right.

13       Q.    Okay.  This means that the wife does not have

14  to come in and testify.

15       A.    Right.

16       Q.    Would you hold it against the accused just

17  because the wife did not come in to testify?

18       A.    No.

19       Q.    If the wife was the only one that knew what

20  exactly happened in this case, would you hold it against

21  him?

22       A.    No.

23       Q.    In the back of your mind, would you say, "I

24  wish she would come over to testify.  Just because she

25  did not come over, I'll go ahead and find him guilty"?

STATE OF TEXAS VS. RUBEN GUTIERREZ                    106

```
 1        A.    No.
 2        Q.    Okay.  If we do not present any evidence, we do
 3   not question any of the witnesses --
 4        A.    Okay.
 5        Q.    -- and if the State proved element number one
 6   and number five beyond a reasonable doubt --
 7        A.    Okay.
 8        Q.    -- but then in element number six they proved
 9   burglary --
10        A.    Okay.
11        Q.    -- instead of robbery --
12        A.    Okay.
13        Q.    -- what would your verdict be at that time?
14        A.    Not guilty.
15        Q.    Because they didn't prove their case beyond a
16   reasonable doubt?
17        A.    Correct.
18        Q.    And you would agree with me that they're the
19   ones that have to prove the case?
20        A.    Yes.
21        Q.    We don't have to present any testimony at all.
22        A.    Correct.
23        Q.    Okay.  We spoke about codefendants testifying.
24   Do you remember what codefendants are?
25        A.    Yes.
```

STATE OF TEXAS VS. RUBEN GUTIERREZ                    107

1       Q.   If Mr. Reyes and I both go into Circle K, if
2   I'm the one that's on trial --
3       A.   Right.
4       Q.   -- Mr. Reyes is a codefendant.
5       A.   Yes.
6       Q.   Okay.  And you -- I believe we spoke to you
7   about plea bargaining.
8       A.   Yes.
9       Q.   Do you remember what plea bargaining is?
10      A.   Yes.
11      Q.   Okay.  What is it?
12      A.   It's when they offer you a lesser sentence.
13      Q.   Okay.  And it would be like less years --
14      A.   Right.
15      Q.   -- or maybe probation or maybe a dismissal.
16      A.   Yes.
17      Q.   You would agree with that?  So in this case,
18  like if Mr. Reyes was offered a dismissal just for his
19  testimony --
20      A.   Okay.
21      Q.   -- would you agree with me that he has a motive
22  for testifying?
23      A.   Yes.
24      Q.   Okay.  Because he's going to get something in
25  return; is that correct?

1      A.    Right.

2      Q.    Okay.  Would you agree with me that in some

3  instances, he might have a motive to lie because he's

4  going to get something in return?

5      A.    Yes.

6      Q.    Okay.  Would you take this into consideration?

7      A.    Yes.

8      Q.    Okay.  Would you look at him and would you see

9  what he's getting in return?

10     A.    Yes.

11     Q.    I spoke to you also that doctors, police

12 officers, scientists, we're all human; is that correct?

13     A.    Correct.

14     Q.    And that we all make mistakes.

15     A.    Correct.

16     Q.    Would you agree with me that sometimes when

17 somebody makes a mistake, they're trying to go ahead and

18 cover up their mistake?

19     A.    Correct.

20     Q.    Okay.  Would you agree with me that that would

21 be a necessity for that person to lie?

22     A.    Yes.

23     Q.    Okay.  So would you take this into

24 consideration once you listen to the testimony?

25     A.    Yes.

STATE OF TEXAS VS. RUBEN GUTIERREZ                    109

1      Q.   I believe you stated you have no relatives in

2  law enforcement.

3      A.   No.

4      Q.   And I believe you stated you've never been a

5  victim --

6      A.   No.

7      Q.   -- or a family member.

8      A.   No.

9      Q.   You stated that you've never heard about this

10  case.

11      A.   Correct.

12      Q.   And you still haven't formed an opinion?

13      A.   No.

14      Q.   Have you been -- ever been a juror?

15      A.   Yes.

16      Q.   Okay.  What kind of case was it?

17      A.   It was a lawsuit, civil.

18      Q.   Okay.  And I believe you stated that you all

19  made a ruling on it.

20      A.   Yes.

21      Q.   Okay.  Is there anything on that that might

22  affect you to serve on this case --

23      A.   No.

24      Q.   -- that would make you be biased?

25      A.   Oh, no.

STATE OF TEXAS VS. RUBEN GUTIERREZ                          110

1      Q.    Okay.  You also stated in your questionnaire on
2   page 16, number 61, I believe, "The punishment fits the
3   crime."  That was your quote.
4      A.    Yes.
5      Q.    You would be willing to just listen to the
6   testimony --
7      A.    Yes.
8      Q.    -- and deciding what actually the punishment
9   would be at that point?
10      A.    Yes.
11      Q.    Not just because it's a murder case --
12      A.    Oh, no.
13      Q.    -- automatically you would give them capital
14   murder --
15      A.    No.
16      Q.    -- give them death?
17      A.    No.
18      Q.    Now, I believe in number 75 you checked off,
19   "Strongly in favor of capital punishment."  Just because
20   you're in favor of this, you wouldn't automatically give
21   him --
22      A.    No.
23      Q.    -- the death penalty?
24      A.    No.
25      Q.    You wouldn't answer those questions --

STATE OF TEXAS VS. RUBEN GUTIERREZ                          111

```
 1        A.    Right.
 2        Q.    -- so he could get the death penalty?
 3        A.    No.
 4        Q.    You would be willing to listen to all the
 5   evidence --
 6        A.    Yes.
 7        Q.    -- and decide on that evidence?
 8        A.    Yes.
 9              MR. GALARZA:  That's all I have.
10        Q.    (BY MR. GALARZA)  Thank you.
11              THE COURT:  Okay.  I need to ask you to
12   step out for just a few minutes while I consult with the
13   lawyers --
14              MS. PERALEZ:  Okay.
15              THE COURT:  -- on a legal matter.  Thank
16   you.
17              (Prospective juror left the courtroom)
18              THE COURT:  Is this juror acceptable to
19   the State?
20              MS. FISCHER:  Yes, she is, Your Honor.
21              THE COURT:  To the defense?
22              MR. GALARZA:  Yes, she is, Your Honor.
23              THE COURT:  All right.  Bring her in.  Let
24   me swear her in again to be safe.
25              All right.  Let me swear you in one more
```

STATE OF TEXAS VS. RUBEN GUTIERREZ                          112

```
 1   time.
 2                   MS. PERALEZ:  Okay.
 3                   THE COURT:  Raise your right hand, please.
 4   Do you solemnly swear that in the case of the State of
 5   Texas against the defendant you will a true verdict
 6   render according to the law and the evidence, so help you
 7   God?
 8                   MS. PERALEZ:  Yes.
 9                   THE COURT:  Okay.  We're still not
10   finished with the process as you can see; and my office
11   will contact you when you have to come back to serve on
12   the jury.
13                   MS. PERALEZ:  Okay.
14                   THE COURT:  Okay.  Thank you very much.
15                   MS. PERALEZ:  Thank you.
16                   MS. FISCHER:  Thank you.
17                   THE COURT:  You're excused to go.
18                   We'll be in recess until Ms. Knight
19   arrives.
20                   (Recess taken from 2:10 p.m. to 2:43 p.m.)
21                   THE COURT:  You may be seated.  Bring
22   Ms. Knight in.
23                   THE BAILIFF:  Yes, Your Honor.
24                   THE COURT:  Good afternoon, Ms. Knight.
25                   MS. KNIGHT:  Good afternoon.
```