STATE OF TEXAS VS. RUBEN GUTIERREZ                    100

1        A.    Yes, sir.

2        Q.    Once we do our closing, we go ahead and close

3   at the end, then the 12 jurors will go to the jury room;

4   and that's when the 12 jurors will talk about it, will go

5   through all the six elements, and that's when the jurors

6   will say, "Well, do you find him guilty or not guilty?"

7             Okay.  If somebody believes something, if

8   somebody believes something else, of course, you keep on

9   going back and forth.

10       A.    Yes, sir.

11       Q.    Once you all have a verdict, then you all come

12   back and you tell us -- if you tell us he's not guilty,

13   then it stops right there.

14       A.    Uh-huh.

15       Q.    Okay.  If you tell us that it's guilty, then we

16   go on to the sentencing stage.  And the sentencing stage

17   is different for capital murder than the other crimes,

18   okay?  For capital murder what you need to do is you need

19   to prove -- or you need to go through all those three

20   questions.

21       A.    Yes, sir.

22       Q.    You need to answer yes or no to all those three

23   questions.

24       A.    Uh-huh.

25       Q.    Or -- an example, like if they do not prove

STATE OF TEXAS VS. RUBEN GUTIERREZ                                    101

1   element number six, therefore we go back that he's not
2   guilty of capital murder; would you agree with me?
3       A.   Yes, sir.
4       Q.   Okay.  But if you find him guilty of murder,
5   then the punishment range is from five to 99 or life
6   which means that you can give him five or you can give
7   him 99 or life, okay, or anything in between.  Would you
8   agree with me?
9       A.   Yes, sir.
10      Q.   Okay.  Would you automatically want to give
11  somebody death just because it's murder?
12      A.   Yes, I would.
13      Q.   Even though the law states --
14      A.   Well, my opinion I would.  But if it's the law,
15  I have to go with the law.
16      Q.   Okay.  And -- okay.  If you do not find him
17  guilty of capital murder and you do not find him guilty
18  of murder, but you find him guilty of robbery, which are
19  the lesser included offenses, okay, that means that you
20  can sentence him to two to 20 or anything in between.
21           Because they proved robbery and they did
22  not prove murder, so you found him guilty of robbery,
23  would you be willing to sentence him from two to 20 years
24  or anything in between for robbery?
25      A.   From two to 20 years for robbery?

STATE OF TEXAS VS. RUBEN GUTIERREZ                    102

1    Q.   Yeah.  Anything in between.  The least amount
2  you could sentence him to is two, the most is 20, or
3  anything in between.
4    A.   If they found him guilty for robbery?
5    Q.   Yeah.
6    A.   Yeah, I would.
7    Q.   Okay.  Let's go back to capital murder.  We
8  spoke to you or Mr. Blaylock spoke to you that those are
9  the three questions that need to be answered.
10    A.   Yes, sir.
11    Q.   Okay.  The very first question, "Is there a
12  probability that the defendant would commit criminal acts
13  of violence that would constitute a continuing threat to
14  society?"  This is asking you to look into the future.
15    A.   Yeah.
16    Q.   Okay.  And you don't know what the future
17  brings.
18    A.   No, sir.
19    Q.   But you stated you would look into his
20  background.
21    A.   Uh-huh.
22    Q.   Okay.  If a person committed murder, like an
23  example capital murder, and they did not have any prior
24  criminal record, would you automatically want to give
25  them the death penalty?

STATE OF TEXAS VS. RUBEN GUTIERREZ                    103

1       A.   Yeah, because why would we give him the right
2   to take somebody else's life?
3       Q.   All right.  Just because they took away
4   somebody else's life --
5       A.   Yes, sir.
6       Q.   -- you would want to give him the death
7   penalty?
8       A.   Yes, sir.  But if the law requires not to give
9   him -- you know, for something else, well --
10      Q.   Well, in capital murder it's either going to be
11  life or death.  It's one or the other.
12      A.   Uh-huh.
13      Q.   So in Question Number 1 they're asking you, "Is
14  there a probability that this person is going to commit
15  other criminal acts of violence?"
16      A.   Yes, probably.
17      Q.   Criminal acts of violence, I believe you stated
18  is like assault?
19      A.   Yes.
20      Q.   All right.  Would you agree with me that a
21  criminal act of violence is an act maybe against another
22  person?
23      A.   What do you mean act?
24      Q.   Like an example, if you go and I push you,
25  that's an act of violence.

STATE OF TEXAS VS. RUBEN GUTIERREZ                    104

1        A.    Yes, sir.

2        Q.    Okay.  If I go and if I have a D.W.I., would

3    that be an act of violence to you?

4        A.    D.W.I. and if you did what?  You were just

5    drinking, driving while intoxicated?

6        Q.    Yeah.  Would that be an act of violence to you?

7        A.    That would be -- act of violence, it wouldn't

8    be an act of violence.  It would be something dumb.  You

9    shouldn't be driving while intoxicated.

10        Q.    Okay.  How about burglary of a habitation,

11    would that be a criminal act of violence to you?

12        A.    Criminal violence?

13        Q.    Criminal act of violence.

14        A.    It depends if somebody's in there.  If there's

15    not somebody in there --

16        Q.    There's nobody in there.

17        A.    It's just burglary.

18        Q.    So you would agree with me that a criminal act

19    of violence is something that's done mainly against

20    another person?

21        A.    Yeah.

22        Q.    Are you willing to go ahead and follow that?

23        A.    The rules, yeah.

24        Q.    Are you willing to take that into

25    consideration?

1       A.    The things right here in the chart?  Yes, sir.

2       Q.    Okay.  If -- well, let me go into Special Issue

3  Number 2 which is Question Number 2.  This mainly talks

4  about the law of parties.  What it says is, "Do you find

5  from the evidence --" and it's missing up there, "beyond

6  a reasonable doubt that the defendant actually caused the

7  death of the individual; or if he did not actually cause

8  the death, that he intended that the person be killed; or

9  number three, that he anticipated that a human life would

10  be taken?"

11              Let's go into a hypothetical, the Circle K

12  example.  Me and my spouse go in there.  At that point we

13  both talk about taking some money.  We both take a gun

14  and we both say, "Well, if we go in there and if somebody

15  gives us a hard time, if the clerk doesn't want to give

16  us the money, we'll just go ahead and kill that person."

17  Do you follow me so far?

18       A.    Yes, sir.

19       Q.    If we both went in there and I killed the

20  clerk, we took the money and we left.  There was nobody

21  else in there except us two, my spouse and I, and the

22  clerk, okay?  So we left.  Did I actually cause the death

23  of the person, of the clerk?

24       A.    You?  You shot him, yes.

25       Q.    Okay.  Did my spouse actually cause the death

1    of the person?

2        A.    Actually -- what do they call it?  What was it?

3        Q.    Did she actually kill the person?

4        A.    Not actually, but she knew you were going to

5    end up doing something.

6        Q.    So that takes us into question number two.  Did

7    I intend that somebody might be killed?

8        A.    Yes, sir.

9        Q.    Did I intend to kill somebody?

10       A.    Uh-huh.

11       Q.    Did my spouse intend that somebody might be

12   killed?

13       A.    Yes, sir.

14       Q.    Question number three, did I anticipate that a

15   human life would be taken?

16       A.    Yes, sir.

17       Q.    Okay.  Did my spouse anticipate that a human

18   life would be taken?

19       A.    Yes, sir.

20       Q.    Okay.  Let me change the facts.  If we both go

21   in there, into the Circle K again, just to take some

22   cigarettes.  Then as we go in there -- before we go in

23   there, I have a gun.  My wife doesn't know it.  Because

24   as to my wife, we're just going to take some cigarettes

25   and that's it, okay?  I know I have a gun and I know I'm

1    going to go in there with a gun.

2              At that point we go in, we take the

3    cigarettes.  Nobody sees us.  As we leave, my wife leaves

4    first and I leave right behind her.  But as I approach

5    the door, I shoot the clerk.  There's nobody else in

6    there.  At that point did I actually kill the person?

7         A.   Yes, sir.

8         Q.   Did my wife actually kill the person?

9         A.   No, sir.

10        Q.   Did I intend that a person would be killed?

11        A.   Your wife or --

12        Q.   Myself.

13        A.   Yourself?  Yes.

14        Q.   Okay.  Did my wife intend that a person would

15   be killed?

16        A.   Yes, sir.  Oh, no.  Wait, wait.  No.

17        Q.   Okay.  Did I anticipate that somebody might be

18   killed?  Did I anticipate that a human life might be

19   taken?

20        A.   Yes, sir.

21        Q.   Did my wife anticipate that a human life might

22   be taken?

23        A.   No, sir, because she was already out.

24        Q.   And would you agree with me that it's also

25   because of the reason that we never spoke about killing

STATE OF TEXAS VS. RUBEN GUTIERREZ                    108

1   somebody and she did not know that I had a weapon?

2        A.   Yes, sir.

3        Q.   Okay.  She might be convicted of robbery; would

4   you agree with me?

5        A.   Yes, sir.

6        Q.   But not of murder or capital murder because she

7   did not know anything about it.

8        A.   If she didn't know anything about it, no,

9   but -- yeah.

10       Q.   So you would be willing to convict her or find

11  her guilty of robbery but not murder or capital murder?

12       A.   Yeah.

13       Q.   In Question Number 1 and Question Number 2, in

14  order for you or the jury to answer "yes" to these two

15  questions, all 12 jurors have to agree --

16       A.   Yes, sir.

17       Q.   -- which means that all 12 jurors once they

18  say, "Well, what's your answer to Question Number 1?"

19  All 12 of you have to say "yes."  And then you go into

20  Question Number 2 if as to Number 1 all 12 of you said

21  "yes."

22            If as to Question Number 1 ten of you said

23  "no" and two of you said "yes," then that's all you need.

24  Do you understand that?

25       A.   Yes, sir.

STATE OF TEXAS VS. RUBEN GUTIERREZ                     109

1        Q.    Okay.   In order for you all to bring us a "no"
2   answer, only ten of you have to say "no," okay?   And so
3   if you all say "no" as to Question Number 1, then it
4   stops right there.
5        A.    Okay.
6        Q.    Do you understand that?
7        A.    Yes, sir.
8        Q.    If you all say "yes," then we go into Question
9   Number 2, whether I anticipated or that I killed or
10  whether I intended to kill.   Again, all 12 of you have to
11  say "yes."   If you all -- if ten of you say "no," then it
12  stops right there.
13       A.    Yes.
14       Q.    Do you understand that only ten of you have to
15  agree to it?
16       A.    Yeah.   Uh-huh.
17       Q.    So if you all say "yes," then you go to
18  Question Number 3 which is the mitigation issue.   If ten
19  of you say "no," then it stops right there.
20             So in Question Number 3 we're trying to
21  find out, "Is this person more -- is there sufficient
22  circumstances or maybe even a circumstance that this
23  person deserves life instead of death?"   Do you
24  understand that?
25       A.    Yes, sir.

1      Q.   Is there something in the evidence, is there
2  something in the circumstances of the offense, is there
3  something in the defendant's character and background, or
4  is there something in the personal moral culpability of
5  the defendant that that person deserves life or death?
6      A.   Which one?  The one that committed the murder
7  or --
8      Q.   Okay.  Let me go back.  Me and my wife go in to
9  a Circle K.  I have a gun and she knows that I have a
10  gun.  Okay.  You've already answered "yes" to Question
11  Number 1, "yes" to Question Number 2.  And I'm the one
12  that killed the clerk.
13     A.   Uh-huh.
14     Q.   In Question Number 3, at that point would you
15  be willing to take into consideration the evidence,
16  whatever is presented here, the circumstances, how did
17  the offense happen, what was the result of it, my
18  character, my background, my education, personal moral
19  culpability of the defendant, am I --
20     A.   Not all --
21     Q.   -- remorseful for what I did, what was my
22  thinking?  Would you -- would you consider that -- take
23  that into consideration to determine yes, he deserves
24  life or no, he deserves death?
25     A.   No.  If you were the one --

STATE OF TEXAS VS. RUBEN GUTIERREZ                        111

```
 1        Q.   If I were the one that killed him.
 2        A.   If you were the one that -- no.  I would
 3   probably have to hear him because the law says to hear
 4   them all, right?  So I would have to make -- you know,
 5   hear them all.
 6        Q.   But even though you would hear them all, would
 7   you already have a decision before hearing them all?
 8        A.   No, sir.
 9        Q.   Would you already say, "He deserves life"?  I'm
10   sorry.  "He deserves death"?
11        A.   No.  Until like you say, I have to hear them
12   all the way you're supposed hear them.
13        Q.   Okay.  So as to my wife, if she was not the
14   killer, she was not the shooter, she knew about that I
15   had a gun, but she was not the shooter, would you be
16   willing to take all this into consideration?
17        A.   Your mom -- your wife?  All that, yes.
18        Q.   The circumstances, the evidence?
19        A.   Uh-huh.  Yes.
20        Q.   She did not kill the person?
21        A.   But she still knew that you had a gun.
22        Q.   Would you take all this into consideration?
23        A.   Some of them, yeah.
24        Q.   And you would not automatically say no, she
25   also deserves death because she knew I had a gun?
```

1      A.   No.  She has to --

2      Q.   This question is the opposite of Question

3  Number 1 and Number 2.  In order for you all to say "no,"

4  all 12 jurors have to say "no" in order for you all to

5  come back with a "no" answer.  Okay.  So what you say is

6  no, this person does not deserve life; he deserves death.

7      A.   The one that killed the guy?

8      Q.   Yeah.  Whether it's me if I'm in trial or it's

9  my wife and she's in trial, after taking into

10  consideration all that.  If you're going to answer yes,

11  this person deserves life, this person does not deserve

12  death, after considering everything, then only ten of you

13  have to come back with a "yes" or ten of you have to say

14  "yes" in order for you all to bring us a "yes" answer.

15      A.   Okay.

16      Q.   Do you understand that?

17      A.   Yes, sir.

18      Q.   Are you willing to follow that?

19      A.   Yes, sir.

20      Q.   Mr. Blaylock spoke to you about the accused has

21  the right to remain silent.

22      A.   Yes, sir.

23      Q.   What are your feelings as to that?

24      A.   My feelings about it?  That he has to be -- he

25  doesn't have to go to the stand or anything.

STATE OF TEXAS VS. RUBEN GUTIERREZ                    113

1        Q.   Yeah.   He doesn't have to talk to the police
2   officers.   He doesn't have to testify here in court.
3        A.   If that's the law, if he doesn't have to.
4        Q.   Would you automatically take it against him
5   just because he did not testify?
6        A.   No, sir.
7        Q.   Would you take it against him because he did
8   not talk to the police officers?
9        A.   No, sir.
10       Q.   He also spoke to you about the wife not
11  testifying.
12       A.   Uh-huh.
13       Q.   In my hypothetical, only my wife and I went in
14  there.   The clerk was the only other person in there.
15  There was nobody else.
16       A.   Yes, sir.
17       Q.   Okay.   If my wife did not testify, she's the
18  only other person that knew what went on.   Would you take
19  it against me because my wife did not testify?
20       A.   Would I -- no, sir.   That's the law.
21       Q.   Okay.   Let's go back to the hypothetical.   Two
22  people go in and they kill a child, a five-year-old
23  child.   Then at that point they leave.   Would you take it
24  against the codefendant just because -- or would you take
25  it against the accused just because the codefendant did

1  not testify?  Would you automatically find him guilty?

2      A.   Well, I really can't because you don't have

3  evidence, you know.  You can't find him guilty because,

4  you know, the codefendant didn't say anything or

5  anything.  So how can I find him guilty?

6      Q.   Okay.  Would you take it -- if there is a

7  statement from the accused, would you take into

8  consideration the time it's taken?  An example, if it was

9  taken at 3:00 in the morning, would you take that into

10 consideration?

11     A.   Yes, sir.

12     Q.   Okay.  Would you take into consideration the

13 number of police officers that are around him at the time

14 that the statement is taken?  Like an example, there was

15 four police officers and he took the statement -- they

16 took the statement at 3:00 in the morning.  Would you

17 agree with me that that's not a good time to take a

18 statement?

19     A.   No.  Any time would be the same, you know, to

20 take a statement.

21     Q.   Would you take into consideration the fact that

22 he got arrested at ten in the morning and the statement

23 was not taken until 3:00 in the morning?

24     A.   He got what?

25     Q.   Arrested at 10:00 in the morning, by 10:00 he

STATE OF TEXAS VS. RUBEN GUTIERREZ                                  115

1   was at the police department.

2        A.    At 10:00 -- by 3:00 he made the statement?

3        Q.    3:00 in the morning.

4        A.    Yeah.

5        Q.    Would you take that into consideration?

6        A.    Yes, sir.

7        Q.    I believe Mr. Blaylock spoke to you about

8   the -- a plea bargain.  You know what a plea bargain is,

9   right?

10       A.    A deal.

11       Q.    A deal.  And a deal can be that me and my wife

12  or me and somebody else go into a house.  The only person

13  that's there is a five-year-old boy.  As we go in, we try

14  to take something and then we kill the little boy.

15  Nobody else saw us.  I'm in trial first.

16             Would you take into consideration the fact

17  that he also should be considered for the death penalty;

18  is that correct?

19       A.    Yes, sir.

20       Q.    Okay.  Would you take into consideration the

21  fact that he was offered 20 or 30 years for testifying?

22       A.    Would I consider that?

23       Q.    Yeah.

24       A.    If that's the law, yes.

25       Q.    Okay.  Would you take into consideration the

STATE OF TEXAS VS. RUBEN GUTIERREZ                         116

1   fact that he might get probation even though he was also

2   inside the house?

3       A.    Probation?

4       Q.    Somebody was killed --

5       A.    Yeah, but I don't think they would probably

6   give him probation.

7       Q.    But if he was given probation, would you take

8   that into consideration?

9       A.    Yes.  He was testifying against somebody else?

10      Q.    Yeah.

11      A.    If that's the law, if they have to do that,

12  yes.

13      Q.    In that situation, me and somebody else went

14  into the house.  We both went in, somebody was killed.

15  Nobody knows whether it was me or somebody else that

16  killed him, the boy.

17             Do you agree with me that if my

18  codefendant, the other person that went in with me,

19  testified against me because he got less time, do you

20  agree with me that he has a motive to testify?  He's

21  going to get something in return?

22      A.    What do you mean?

23      Q.    He's going to get a better deal than I am.

24      A.    For testifying against somebody else?  If he

25  didn't know who committed -- both of you didn't commit --

STATE OF TEXAS VS. RUBEN GUTIERREZ                                117

```
1          Q.    Nobody knew.  Only I knew and my codefendant
2     knew who was the one that killed the little boy.
3          A.    And --
4          Q.    And he testified against me.
5          A.    Would I what?
6          Q.    Would you agree with me that he has a motive to
7     testify?  He's getting something in return for
8     testifying.  He's getting a lesser --
9          A.    Yeah, lesser time.  Would I consider that like
10    say consider --
11         Q.    Do you agree with me that he has a motive to
12    testify?  He has a reason to testify?
13         A.    Because he's getting a lesser charge, yeah.
14         Q.    Would you agree with me that he also might have
15    a reason to lie?
16         A.    Sure.
17         Q.    Would you take that into consideration?
18         A.    Yes, sir.
19         Q.    I believe you -- well, would you agree with me
20    that police officers, doctors, scientists, that
21    everybody's human?
22         A.    Yes, sir.
23         Q.    Would you agree with me that everybody makes
24    mistakes?
25         A.    Yes, sir.
```

STATE OF TEXAS VS. RUBEN GUTIERREZ                    118

1      Q.   Okay.  At that point if they make the mistake,
2  would you agree with me that they might lie in order to
3  cover it?
4      A.   If the mistake, yeah, you know, they probably
5  would lie.  Well, they are lying.  Some of them do lie
6  anyway.
7      Q.   So you would agree with me that some police
8  officers come in here and take -- or swear under oath and
9  they still might lie under oath?
10     A.   Yes, sir.
11     Q.   Would you take that into consideration?
12     A.   Yes, sir.
13     Q.   Have you -- I believe you have a relative in
14 law enforcement; is that correct?
15     A.   Yes, sir.
16     Q.   You have a brother?
17     A.   Brother.
18     Q.   And he's working you said at the --
19     A.   Prison guard.
20     Q.   And he's the one that applied at the
21 Brownsville Police Department?
22     A.   Yes, sir.
23     Q.   Has he already been hired?
24     A.   I don't know, sir.
25     Q.   Okay.  Would that keep you from being fair and

STATE OF TEXAS VS. RUBEN GUTIERREZ                    119

1    impartial?  An example, would you believe the police
2    officers a lot more just because your brother is in law
3    enforcement?
4         A.   No, sir.
5         Q.   Would you just listen to the testimony --
6         A.   Yes, sir.
7         Q.   -- and not automatically decide on the
8    testimony?
9                   Have you ever been a prior victim?  Has
10   your house --
11        A.   A what?
12        Q.   A prior victim.
13        A.   They almost did, but no.
14        Q.   Did you catch them or what happened?
15        A.   We scared them off.
16        Q.   Okay.  Would you take that against the accused
17   just because you were almost a victim?
18        A.   No.
19        Q.   You would just listen to the testimony?
20        A.   Yes, sir.
21        Q.   Have you heard about this case in the
22   newspaper, TV, anywhere?
23        A.   No, sir.
24        Q.   Have you already formed an opinion?
25        A.   No, sir.

STATE OF TEXAS VS. RUBEN GUTIERREZ                    120

1      Q.    Have you served on a jury before?

2      A.    No, sir.

3      Q.    Let me go back to the question on Number 1 and

4   to Number 3.  If a person committed capital murder, in

5   order for the Court to consider the death, you need to

6   answer "yes" to Number 1, "yes" to Number 2 and "no" to

7   Number 3.

8              The person -- an example, a hypothetical,

9   we went into the house.  We killed the little boy.  I'm

10  in trial.  The jury comes back and you all find me

11  guilty.  At that point what is your result -- what is

12  your response as to whether they deserve the death or

13  life?

14     A.    Death because they found you guilty.

15     Q.    Okay.  Would you still go through all the three

16  questions?

17     A.    Yeah, I would still go over them because that's

18  the law.  You have to go through everything.

19     Q.    Okay.  If I don't have any other priors, I've

20  never been arrested before, okay, Question Number 1 is

21  asking you look into the future, whether I'm going to

22  commit a criminal act again.

23     A.    Yeah, but you never know because, you know, you

24  would say you never commit a crime, but all of a sudden

25  you just snap and you probably would do it again --

STATE OF TEXAS VS. RUBEN GUTIERREZ                                    121

```
 1        Q.    Okay.
 2        A.    -- because you'll probably snap again.
 3        Q.    If I was found guilty as to capital murder,
 4   would you automatically -- even though I didn't have any
 5   prior criminal record, nothing shows that I'm going to
 6   commit the crime again, I have a college degree, I've
 7   always been working, I don't have anything bad against
 8   me.
 9        A.    Would I consider the death penalty?
10        Q.    Would you automatically answer "yes" and not
11   consider Question Number 1 because I committed a capital
12   murder?
13        A.    And they found you guilty of it, would I
14   consider Question Number 1 whether there is a probability
15   that he would commit criminal acts of violence again?
16        Q.    Yes, sir.
17        A.    I would.
18        Q.    You would just answer "yes"?
19        A.    I would say "yes" because, you know --
20              MR. BLAYLOCK:  I object to the question,
21   Judge.  The standard is if his reason and common sense
22   told him that he would not probably commit a crime in the
23   future of violence, would he go against his reason and
24   common sense and answer it falsely just to ensure a
25   certain result?  That's the standard; and I ask that it
```

STATE OF TEXAS VS. RUBEN GUTIERREZ                          122

```
 1    be asked like that.
 2                   THE COURT:  It's been asked already.  Go
 3    ahead.
 4         Q.   (BY MR. GALARZA)  What would your response be
 5    as to Question Number 1 if I committed capital murder and
 6    like they told you, I have a four-year college degree, I
 7    was working as a teacher, I don't have any criminal
 8    records --
 9         A.   But they already found you guilty.
10         Q.   -- but they already found me guilty?
11         A.   But you were guilty.
12         Q.   Okay.  But would you take into consideration --
13         A.   The background?
14         Q.   Everything, that I don't have anything in my
15    record?
16         A.   Well, I would look at it, yes.
17         Q.   But you already have a response just because
18    they have found me guilty of capital murder?
19         A.   Well, after -- you know, like you say, the law,
20    you have to go through everything, right?  I have to go
21    through everything.  What if, you know, maybe, just maybe
22    there might be a reasonable doubt, right?
23         Q.   Okay.  What I'm trying to get at, just because
24    I commit a capital murder, would you automatically say he
25    deserves the death?
```

STATE OF TEXAS VS. RUBEN GUTIERREZ                    123

1        A.    Yes, sir, I would say that.

2        Q.    So you would look at every single question, but

3    you would automatically -- even though you're answering

4    every single question, you would still say he deserves

5    the death penalty?

6        A.    But I would look at everything, yes, sir.

7        Q.    If there's something in there -- like an

8    example, if nine jurors say, "He does not deserve the

9    death," so -- you're trying to answer Question Number 1,

10   okay?

11       A.    Nine jurors?

12       Q.    Nine jurors say, "No, he does not deserve

13   death."  So their answer is "no," okay?  Remember that

14   you need ten.

15       A.    Ten to say --

16       Q.    Would you automatically say "yes" just because

17   you already know as to -- in your mind that he deserves

18   "yes"?  Even though I'm educated, I have no prior

19   criminal record, I've never committed a crime before,

20   this is the first time I've ever committed one.

21       A.    Would I say --

22       Q.    Would -- the question is would anybody be able

23   to change your mind?

24       A.    Well, like I say, they explain it or something

25   they go right to everything, yeah.

STATE OF TEXAS VS. RUBEN GUTIERREZ                          124

```
1          Q.    Well, I'm going through everything.
2          A.    Yeah.
3          Q.    Educated --
4          A.    Yeah, if something -- yeah, well, you know,
5     I'll probably change my mind if I find something
6     different or something, yeah.
7          Q.    I'm telling you what the evidence is going to
8     show.  I have a four-year degree.  I've never committed a
9     crime before, not even a class C.  I've never done
10    anything else before.  I've been teaching all this time.
11         A.    What was your reason for doing it?
12         Q.    Well, I went --
13         A.    You snapped?
14         Q.    -- in to commit burglary.
15         A.    I have to say you're guilty.
16         Q.    So you would automatically just find me guilty
17    and give me the death penalty?
18         A.    Because you murdered somebody, yes.
19         Q.    Would you be able to set that aside and, if the
20    jurors gave you some information, automatically change
21    your mind or you would automatically --
22         A.    Like say there was somebody else that didn't --
23    if he didn't deserve -- you know, if somebody -- unless
24    somebody came up and said, "Do you know what?  They found
25    the -- you know, it wasn't him.  They made a mistake.  It
```

1   was somebody else that killed him," then eventually

2   you're going to -- yes.  No.

3        Q.    Okay.  But there's no way -- I've already been

4   found guilty.

5        A.    Yeah.

6        Q.    What you're looking at now is these three

7   questions.

8        A.    The three questions.  Actually on Number 3

9   because you're asking for the background and everything.

10       Q.    Yeah.

11       A.    Not the first two.  You're just going for

12   the --

13       Q.    But you also have to take into consideration

14   the prior criminal record, number one.

15       A.    Yeah.  On Number 3, right?

16       Q.    Okay.  Let me go back.  How do you know if

17   Number 3 -- in Number 1, I'm sorry, it says, "Is there a

18   probability that the defendant would commit criminal acts

19   of violence?"  They're telling you to look into the

20   future; is that correct?

21       A.    Yeah.

22       Q.    How do you know if this person is going to

23   commit other acts of violence?

24       A.    For what he did.

25       Q.    Okay.  Let's go back.  I have not done

1    anything.

2            A.    No, no, but he did.  He murdered someone.

3            Q.    At that time?

4            A.    At that time, yes, sir.

5            Q.    Just because of what he did, you would

6    automatically find him guilty and give him the death

7    penalty?

8            A.    Yes, sir, because actually whatever he did in

9    the past didn't -- doesn't really matter for what he

10   did -- oh, sorry -- for what he did that day because, you

11   know -- he might be a doctor, a judge, and still kill

12   him, you know, and have a good record.  He's still going

13   to -- you never know if he's going to snap again and do

14   it again.

15           Q.    Okay.  So is your feeling anybody that commits

16   capital murder deserves the death penalty?

17           A.    Yes, sir, but the law -- that's what -- my

18   personal feeling, yes.

19           Q.    So --

20           A.    But if the law asks me to do something else to

21   go by the law, I have to do what the law says.

22           Q.    But will your end result always be the same

23   way?

24           A.    If something else comes up, yeah.

25           Q.    Okay.  Somebody committed capital murder, you

STATE OF TEXAS VS. RUBEN GUTIERREZ                    127

1  look at everything?

2      A.   At everything, I'll look at everything.  And if

3  something -- you know, if something might, you know, out

4  of the blue come out and, you know, make something doubt

5  about it.

6      Q.   Okay.  Let me ask you this.  What is out of the

7  blue?

8      A.   Like let's say --

9      Q.   Let's go back.  I commit a capital murder.  I

10  went into the Circle K.  I shot the clerk.

11     A.   Yeah.  Say you shot him, right?  But what if

12  he, you know, tried to shoot you or whatever, you know,

13  say -- you know, something like that.

14     Q.   Okay.  But let me give you -- and that's

15  self-defense.

16     A.   Yeah, that's self-defense, but you're still

17  committing a murder because you're the one that's going

18  to steal, right?

19     Q.   So in that situation, you would automatically

20  give him the death penalty?

21     A.   For murder.

22     Q.   No.  I got convicted of capital murder.

23     A.   Oh, capital murder?  Okay.  You didn't give me

24  like a choice there.

25     Q.   Okay.  I got convicted of capital murder

1    because I went in to Circle K.  I shot somebody because

2    they did not want to give me money.  Or in your

3    hypothetical, they put the alarm on.  So I shot them

4    because they put the alarm on.

5         A.    That's capital murder.  I would still --

6         Q.    It's still capital murder.

7         A.    Yes, sir.

8         Q.    Okay.  Would you still give them death in

9    either way?

10        A.    In either way because --

11              MR. BLAYLOCK:  I object, Judge.  He's

12   trying to bind him to a certain answer.

13              THE COURT:  I'll sustain the objection.

14   Will he consider.

15        Q.    (BY MR. GALARZA)  Will you consider life in

16   that situation?

17        A.    Life?

18        Q.    In either one.

19        A.    For what?

20        Q.    Well, if I went in and they did not want to

21   give me the money.  I heard that they put the alarm on

22   for the police to come over --

23        A.    And you shot them?

24        Q.    I shot him.

25        A.    And would I consider for just life in prison?

STATE OF TEXAS VS. RUBEN GUTIERREZ                            129

1      Q.   The other hypothetical, I went in.  I went
2   ahead and shot them, shot the clerk because they did not
3   want to give me the money.  Would you consider life or
4   death?
5      A.   Death because you already have a choice.  You
6   already did the choice.
7      Q.   Okay.  The only way you would consider life is
8   if it was in self-defense?
9      A.   Yeah.
10     Q.   Okay.  If I went into a house -- or let me get
11  back.  If I went into the bank, I went in by myself, and
12  as I get out -- nobody gave me a hard time.  Everybody's
13  on the floor.  As I get out I kill the police officer
14  that's there and then I leave.  Automatically you would
15  consider death in this situation?
16     A.   Yes, sir.
17     Q.   The only time you would consider life is if
18  it's self-defense?
19     A.   No, not say in self-defense, right?  But I'm
20  saying that, you know, say because if they found him
21  not -- like you say, all through all six, probably give
22  him life, you know, because you didn't find the evidence.
23          But say something, you know, brought up
24  like the -- you know, like you guys, right, you're
25  defending, you come up with something else, maybe I

STATE OF TEXAS VS. RUBEN GUTIERREZ                    130

```
 1    wouldn't because some new evidence came in or whatever,
 2    you know.
 3         Q.    Okay.  Let me go back.  So what you're saying
 4    is like in these elements right here, if they did not
 5    prove element number six --
 6         A.    And if the law requires they have to prove all
 7    six, then --
 8         Q.    And the person was found guilty or you found
 9    him guilty of murder --
10         A.    Uh-huh.
11         Q.    -- in that situation you would consider life?
12         A.    Life, yeah.
13         Q.    But if they found him guilty of capital murder,
14    you would always consider death?
15         A.    Yes, sir.
16         Q.    So you would not consider life in a capital
17    murder case?
18         A.    No, sir.
19              MR. GALARZA:  May we approach, Your Honor?
20              MR. BLAYLOCK:  I would ask just to clarify
21    that up.
22              THE COURT:  Go ahead and clarify that
23    point.
24
25
```

PAM L. ESQUIVEL, CSR, RPR

STATE OF TEXAS VS. RUBEN GUTIERREZ                        131

1              VOIR DIRE EXAMINATION

2   BY MR. BLAYLOCK:

3       Q.   Now, sir --

4       A.   Yes, sir.

5       Q.   -- you know you're going to have to answer

6   these questions honestly.

7       A.   Yes, sir.

8       Q.   We talked about that.

9       A.   Yes, sir.

10      Q.   And if there was something about the evidence

11  or about the man that made you believe that there was not

12  a probability that he would commit an act of violence in

13  the future, your reason and your common sense tells you,

14  you know, "I think that he probably won't commit an act

15  of violence in the future," would you still consider

16  saying "yes" to that question to ensure that he gets the

17  death penalty because of your beliefs?

18      A.   Because of my beliefs because he's going to --

19  the way I see it, I don't know if the -- the law is

20  different the way somebody else sees it, right?  The way

21  I see it, if he goes in, right, you know, like that --

22      Q.    Well, let me stop you there.  Let me stop you

23  there.  Let's say after hearing all the evidence, after

24  hearing all the evidence, your reason and your common

25  sense tells you there is no probability that he'll commit

STATE OF TEXAS VS. RUBEN GUTIERREZ                              132

1    an act of violence in the future.  I mean, you believe

2    that.

3                    Your reason and your common sense,

4    something -- I can't predict what all the evidence is

5    going to be.  Neither can he.  We can't give you a

6    hypothetical to include everything.

7         A.   Yeah.

8         Q.   It's impossible.  But let's say you hear

9    something in all the evidence where your reason and your

10   common sense tells you, you know, he probably won't

11   commit an act of violence in the future, would you answer

12   this one yes, he would, just to ensure that he gets the

13   death penalty?

14        A.   Well, no, you've got to go -- if you say

15   something --

16        Q.   So you would answer it honestly --

17        A.   Yes, sir.

18        Q.   -- based on the evidence --

19        A.   On the evidence.

20        Q.   -- whatever it is?

21        A.   Whatever it is, yes, sir.

22        Q.   Okay.  And the same thing with Question 2?

23        A.   Yes, sir.  It depends on the evidence and

24   everything that would show up.

25        Q.   Okay.  Now, because of your beliefs, you

STATE OF TEXAS VS. RUBEN GUTIERREZ                    133

1    believe this man should get the death penalty?
2         A.    Yes, sir, because he killed somebody.
3         Q.    Listen, listen.  In any set of hypothetical,
4    you believe -- you want the result to be death penalty.
5    You want that, okay?  And, I mean, let's say
6    hypothetically you want that result.  You want this man
7    to die.  Would you answer this one falsely --
8         A.    Oh, no, I wouldn't.
9         Q.    -- to ensure that he gets the death penalty?
10        A.    No, I wouldn't.
11        Q.    Would you answer this one falsely?
12        A.    No, sir.
13        Q.    Would you answer this one falsely?
14        A.    No, sir.
15        Q.    Okay.  So if your reason and your common sense
16   tells you to answer this one "no" --
17        A.    I would have to say "no" because that --
18        Q.    Because your reason and your common sense tells
19   you?
20        A.    Yeah.
21        Q.    And if your reason and your common sense tells
22   you that he couldn't have anticipated that a human life
23   be taken and you wanted him to get the death penalty
24   anyway, would you still say "no"?
25        A.    I would still say "no."  Yeah.

STATE OF TEXAS VS. RUBEN GUTIERREZ                    134

1        Q.    Okay.  So you would still be honest?

2        A.    Yeah.

3        Q.    And if your reason and your common sense tells

4   you there is something mitigating about the evidence or

5   the man that -- where he deserves a life sentence instead

6   of a death sentence, would you answer it falsely?

7        A.    No, sir.  I would answer it truthfully.

8                   MR. BLAYLOCK:  That's all I have, Judge.

9                   **VOIR DIRE EXAMINATION**

10  **BY MR. GALARZA:**

11       Q.    Let's go back into that same hypothetical, the

12  same questions that he asked you.  You've already

13  convicted me of capital murder because I killed the

14  clerk.  Something in your reason and common sense tells

15  you he might not -- it's asking you to look into the

16  future.

17       A.    Yeah, into the future, but we don't know the

18  future.

19       Q.    Okay.  But it's asking you to look into it.

20  Nobody knows the future.

21       A.    Yeah.

22       Q.    We'd all be millionaires by now.  So you

23  already know I committed capital murder.  You already

24  found me guilty of capital murder, okay?  You looked at

25  all the evidence and you found me guilty of capital

1    murder.  Now we're at the second part which is

2    sentencing.

3         A.    Yeah.  Which is the sentencing, yeah.

4         Q.    You look at Number 1.  After we present the

5    evidence to you, it's shown that I have a four-year

6    degree.  It's shown that I've never committed any crime

7    before.

8         A.    Would I consider --

9         Q.    Hold on.  Your reasoning might tell you maybe

10   this person will not do it again.

11        A.    Maybe.

12        Q.    In the back of your mind you think, "This

13   person might not do it again."  Would you still answer

14   "yes" even though --

15        A.    No, sir.  If my mind says -- you know, if I

16   think, "Well, maybe he wouldn't," right, or something,

17   right, I wouldn't.

18        Q.    What would it take you to say no, he wouldn't,

19   in that situation?

20        A.    Because it depends, you know, like you say,

21   that degree, college degree and, you know, they never did

22   anything like that, right?  But -- I would say it's kind

23   of hard because you're saying that I have to -- the law

24   says I have to consider it, right?

25        Q.    What I'm trying to do is I'm trying to make

1    sure that you are going to be fair and impartial because

2    a while ago you stated that to you, any capital murder --

3         A.    Yeah, to me.

4         Q.    -- case deserves death.

5         A.    That's to me, but the law requires it to go

6    look at --

7         Q.    And that only murder cases -- like in this

8    hypothetical if they didn't prove robbery, but you all

9    found him guilty of murder, only that murder case

10   deserves life?

11        A.    Yeah.

12        Q.    Okay.  So in that hypothetical, would -- just

13   because I got convicted of capital murder, would you

14   automatically answer every single question just to make

15   sure --

16        A.    Well, to prove -- because they proved it to you

17   that you did it, I would say because, you know -- but if

18   they say if you probably -- there be -- would commit

19   violence again somewhere else, you know, I'm going to

20   have to say "yes" because he's still going to do it

21   anyway.

22        Q.    So just because I committed --

23        A.    Capital murder.

24        Q.    -- capital murder --

25        A.    One time.

STATE OF TEXAS VS. RUBEN GUTIERREZ                     137

1      Q.    -- you believe that I'll commit it again?

2      A.    Yes, sir.

3      Q.    Even though I've never done anything before?

4      A.    Even though you -- there's people that have

5  done nothing in their life and they still go on a killing

6  rampage.

7      Q.    Okay.  So even though I don't have any criminal

8  record and if I committed a capital murder once, would

9  you --

10     A.    Would you --

11     Q.    Just capital murder, I've just committed it

12 once and I don't have anything else in my record, okay,

13 do you believe that I'll commit it again automatically?

14     A.    Would you -- I'll probably be convinced, yes,

15 sir.

16     Q.    So because of that, you would automatically say

17 "yes" to Number 1?

18     A.    For the way I believe it, yes.

19     Q.    Okay.  Would you be able to set that belief

20 aside and just consider everything that's presented to

21 you?

22     A.    Well, I have to go through it, yes.

23     Q.    How about murder?  If they found him guilty of

24 murder, and I told you the sentencing range is from five

25 years to 99 years or life, if he was found guilty of

STATE OF TEXAS VS. RUBEN GUTIERREZ                    138

1   murder, what would your sentence be automatically?
2        A.    Life.
3        Q.    Would you ever --
4             MR. BLAYLOCK:  I object, Judge.  He's
5   attempting to bind him to a certain set of circumstances.
6   The question should be --
7             THE COURT:  I'll sustain.  Would he
8   consider.
9        Q.    (BY MR. GALARZA)  Would you consider ever
10  giving him five years if they proved murder?
11       A.    No.
12       Q.    Would you --
13            MR. BLAYLOCK:  I object, Judge.  The form
14  of the question -- the form of the question is would you
15  consider the full range of punishment in a murder case
16  not knowing the facts?  And we can -- I would ask to
17  re-voir dire on facts if he wants to go into that.
18            THE COURT:  We've gone over all this.
19            MR. GALARZA:  I've already gone through
20  all the elements.
21       A.    The thing is that you're saying is that would I
22  consider it because they found him for murder, right?
23  How are you going to give somebody that murdered five
24  years?  It has to be a longer year span.  You know,
25  automatically you're not going to give him five years

STATE OF TEXAS VS. RUBEN GUTIERREZ                    139

1   because he killed, take somebody's life.  You're going to

2   consider the other things, you know, the other years that

3   you have to go.

4        Q.   (BY MR. GALARZA)  So to you -- and I can quote

5   you -- I believe you stated, "Justice is to do the same

6   to the person that killed the person?"

7        A.   Yes, same thing.

8        Q.   That's the way you believe?

9        A.   Yes.

10       Q.   So to you, if they committed murder, because

11  the range of punishment is from five to 99 or life, if

12  they prove murder and you found him guilty of murder, you

13  would automatically give him the most you can which is

14  life?

15       A.   Depending on the crime, yeah.

16       Q.   If it was murder.

17       A.   Well, that's why.

18       Q.   Okay.  I was found guilty of murder.  They

19  couldn't prove element number six, so you found me guilty

20  of murder, okay?  Would you automatically give me life or

21  would you consider everything else?  Just because to you

22  it says --

23       A.   No, no, but it depends, like you say, the

24  evidence.  Say if you have your background and stuff like

25  that, maybe you wouldn't.

STATE OF TEXAS VS. RUBEN GUTIERREZ                    140

```
 1        Q.    Okay.
 2        A.    See?  It all depends on the evidence you
 3   present and everything else.
 4        Q.    But --
 5        A.    I'm just not going to make a choice right away.
 6   Say if you committed -- I'm going to go through
 7   everything.  They have to explain everything so I can
 8   come out with something, "Hey, he doesn't have a right to
 9   go out," right?  But say, you know, something back there
10   he did something, you know --
11        Q.    So would you consider five to 99 or life?
12        A.    Yeah.
13        Q.    Anything in between, 5 to 99 or life?
14        A.    In between.
15        Q.    I believe you also stated, and I can quote you,
16   "Nothing makes me less morally blameworthy if I kill --
17   if I kill somebody."
18        A.    Who?  Me?
19        Q.    Well, me.
20        A.    Oh.
21        Q.    If I killed the clerk, there's nothing to you
22   that makes me less culpable?
23        A.    What's that, culpable?
24        Q.    Less responsible for the crime.
25        A.    If you killed him and you make less --
```

STATE OF TEXAS VS. RUBEN GUTIERREZ                     141

1      Q.   Is there anything that makes me less
2   responsible if I killed the clerk?
3      A.   No, sir.
4      Q.   You would automatically just give me death?
5      A.   Because you killed him.  It depends on what you
6   did.
7      Q.   I killed the clerk.  I went in with a gun.
8      A.   You knew you were going to shoot him, you're
9   going to shoot him.
10      Q.   If I needed to, I would shoot him.
11      A.   Yeah, because you should not have gone in with
12   a gun.  If you didn't have the intent to kill somebody,
13   you wouldn't take a gun.  You would just steal the money.
14      Q.   Okay.  So there's nothing that makes me less
15   blameworthy, less responsible for what I did?
16              MR. BLAYLOCK:  I object to the form of the
17   question, improperly trying to --
18              MR. GALARZA:  That's all I have at this
19   time, Your Honor.
20              THE COURT:  All right.  Mr. Sanchez --
21              MR. SANCHEZ:  Yes, sir.
22              THE COURT:  -- let me ask you to step down
23   for just a few minutes.
24              MR. SANCHEZ:  Sure.
25              THE COURT:  I need to take up a legal

STATE OF TEXAS VS. RUBEN GUTIERREZ                           142

1    matter and I'll bring you back in.

2                    MR. SANCHEZ:  Sure.

3                    THE COURT:  Okay.  Is this venireperson

4    acceptable to the State?

5                    MR. BLAYLOCK:  Yes, Judge.

6                    THE COURT:  Is it acceptable to the

7    defendant?

8                    MR. GALARZA:  Your Honor, at this time we

9    would challenge him for cause.  He's been going back and

10   forth, but he did state that he would not consider

11   anything else.  He would mainly consider the death

12   penalty.  Even in this last hypothetical or the last

13   question, he stated that he would just go ahead and

14   automatically give me the death penalty and there's

15   nothing to him that would make me less blameworthy.

16                    THE COURT:  I'll deny that challenge.

17                    MR. GALARZA:  We at this time would use a

18   peremptory, Your Honor.

19                    THE COURT:  Number ten.  Okay.  It's

20   already 11:43.  Tell Ms. Hernandez to be back at 1:30 and

21   bring in Ms. Teran.

22                    THE BAILIFF:  Yes, Your Honor.

23                    THE COURT:  Mr. Sanchez, that's all the

24   questions we have for you today.  You're excused to go.

25                    MR. SANCHEZ:  All right.

PAM L. ESQUIVEL, CSR, RPR

STATE OF TEXAS VS. RUBEN GUTIERREZ                                    143

```
1                      THE COURT:  Thank you, sir.
2                      MR. SANCHEZ:  Thank you.
3                      MR. GALARZA:  Thank you.
4                      MR. BLAYLOCK:  Nice to see you.
5                      THE COURT:  Good morning, Ms. Teran.
6                      MS. TERAN:  Good morning.
7                      THE COURT:  I'm sorry to keep you waiting,
8      but some questioning takes a lot longer than others.
9                      MS. TERAN:  That's okay.
10                     THE COURT:  And I think we're ready to
11     proceed.  I appreciate your patience.
12                     You may proceed.
13                     MS. FISCHER:  Thank you, Judge.
14                          EVARISTA TERAN,
15         having been called as a prospective juror and, upon
16         her oath, was examined and testified as follows:
17                     VOIR DIRE EXAMINATION
18     BY MS. FISCHER:
19         Q.   Good morning, ma'am.  How are you?
20         A.   Good morning.
21         Q.   My name is Karen Fischer.  This is John
22     Blaylock.  You met him when he was -- when we were all
23     here last week.
24         A.   Okay.  Yes.
25         Q.   We both work for the District Attorney's
```

STATE OF TEXAS VS. RUBEN GUTIERREZ                          144

1    Office.   That means we represent the people of Cameron
2    County here today.
3         A.   Yes.
4         Q.   Now, I have read through your questionnaire,
5    and I have been able to understand some of your feelings
6    about some of the issues we have in this case.   But let
7    me explain a little bit to you about how the whole
8    process works.
9         A.   Okay.
10        Q.   In the State of Texas we have a two-part trial
11   system.   The first part -- and if you're chosen as a
12   juror, your job would be to decide whether or not the
13   defendant is guilty.
14        A.   Yes.
15        Q.   The burden of proof during that or what my job
16   is I have to bring the evidence to you and prove beyond a
17   reasonable doubt that he did commit that crime.
18        A.   Yes.
19        Q.   If you find him guilty, then we move into the
20   punishment phase of the trial.   And it's during the
21   punishment phase of the trial that you are asked a series
22   of questions.   And based on your answers to those
23   questions, the Court may or may not impose the death
24   penalty.
25                    I want to talk about both of those stages,

STATE OF TEXAS VS. RUBEN GUTIERREZ                    145

1   first the guilt/innocence stage.  Now, you understand

2   this is a capital murder prosecution?

3         A.   Yes.

4         Q.   The defendant's been accused of, while in the

5   course of committing robbery, murdering Ms. Harrison.

6         A.   Yes.

7         Q.   That means that he could face the death

8   penalty.  But the law says that in order for you to find

9   him guilty, you have to find him guilty beyond a

10  reasonable doubt.  That's the standard.  But when we

11  asked you, "Should the State be required to prove their

12  case beyond all doubt in a capital murder prosecution,"

13  you said, "Yes."

14        A.   Well, in that -- in this case, I do not say

15  yes --

16        Q.   Okay.

17        A.   -- or not.

18        Q.   Okay.

19        A.   What I said is that my personal opinion is in

20  some cases they can be by Judge or by jury, a penalty --

21  I mean, a penalty -- of that penalty.  I'm sorry.

22        Q.   Okay.

23        A.   Some cases.

24        Q.   Okay.

25        A.   And --

STATE OF TEXAS VS. RUBEN GUTIERREZ                    146

1          Q.   Let's go ahead and talk about that, then, since
2    you brought up the death penalty.  You have some real
3    mixed feelings about it.  I noticed that you said that it
4    may be appropriate, but that you're opposed to it.  Tell
5    me how you feel about the death penalty.
6          A.   Personal opinion?
7          Q.   Yes.
8          A.   Okay.  It is -- like I said, in some cases they
9    need that penalty.
10         Q.   Right.
11         A.   They need that.  The community need that.  I
12   believe that if those people who dedicate his life doing
13   something -- it's not in this case.  Let's say like in
14   California they commit a lot of crimes in there.  And
15   some cases they're not -- they don't do anything about
16   it.
17                   And I believe that if they have some
18   penalty to do with those people who do something that's
19   not right for that community.  And if we can do -- it's
20   not like an example.  For those people who dedicate to do
21   something that's not right for that community, they -- I
22   think they think -- they're going to think better if
23   they're going to do -- they continue with that crime.
24         Q.   Okay.  But you keep saying in -- "not in this
25   case."  Could you not give the death penalty in this case

```
 1    for some reason?
 2         A.   I do not say I'm not.  I do not say I do.
 3         Q.   Okay.  So you don't know?
 4         A.   No.
 5         Q.   Okay.  But what will happen is that you're
 6    going to be asked a series of questions.  So there's not
 7    going to be a sentence that says, "Do you think the
 8    defendant should receive the death penalty?"  Or a
 9    question, and you have to say, "yes" or you have to say
10    "no."
11              Instead, you are asked questions.  And
12    based on your answers to those questions, the defendant
13    may receive the death penalty.
14         A.   Uh-huh.
15         Q.   Okay?  And so what you have to do, then, is
16    answer the questions.
17         A.   Okay.
18         Q.   Okay.  But do you have feelings about the death
19    penalty that would cause you for him to not want to get
20    it so you wouldn't be honest about the questions?
21              THE COURT:  To answer the questions.
22         Q.   (BY MS. FISCHER)  Yeah, in answering.  And
23    because if you have that personal belief -- I mean, you
24    told me a minute ago you don't know how you feel about
25    it.  I have to ask you now, can you do it?  Can you
```

1   answer the questions honestly or do you have personal

2   feelings that would cause you to say, "No, I don't think

3   the death penalty is a good idea"?

4        A.   No.  I can answer the questions.

5        Q.   Okay.  The questions, then, they ask you,

6   "Whether there is a probability that the defendant would

7   commit criminal acts of violence that would constitute a

8   continuing threat to society."

9             You're going to be asked, "Will the

10  defendant hurt again?"  Okay.  And you're going to have

11  to make a decision on whether or not you think that will

12  happen, okay?

13       A.   Yes.

14       Q.   If you hear evidence that the defendant will

15  hurt again, will you answer that question honestly?

16       A.   Yes.

17       Q.   Okay.  The next question, "Whether the

18  defendant actually caused the death of the deceased, or

19  did not actually cause the death of the deceased but

20  intended to kill the deceased or another, or anticipated

21  that a human life would be taken."

22             This question -- I know it's long and

23  convoluted -- basically asks if you can consider the

24  death penalty for people convicted under the law of

25  parties.

1              And the law of parties is that situation

2    Mr. Blaylock talked about with the bank robbers.  And you

3    have two people who are going to rob a bank.

4         A.    Yes.

5         Q.    One goes into the bank; the other one stays in

6    the car.  Under the law they're equally guilty.  How do

7    you feel about that?

8         A.    I feel that they're guilty, I mean both.

9         Q.    Okay.  Let's say that they both -- that they

10   decide that they're going to rob the bank.  And so they

11   both go into the bank.  They both have guns, but only one

12   of them kills the clerk.  Only one of them kills the bank

13   teller.  The other one doesn't.  The other one is over

14   there getting money.  And when the bank teller won't give

15   them the money, he tells his buddy, "Well, just shoot her

16   and kill her and let's take the money and run."  Okay?

17              Now, of course, the person that caused the

18   death, they can receive the death penalty.  Do you agree

19   with that?

20        A.    Uh-huh.

21        Q.    What about the one that didn't pull the

22   trigger?

23        A.    I believe that both are guilty of that, but one

24   is the one who shoot the gun.

25        Q.    What about the other one?

STATE OF TEXAS VS. RUBEN GUTIERREZ                         150

1        A.   The other one is not going to be that killed
2    it -- than the one who killed the man, but they had to
3    receive the punish.
4        Q.   But the law says they can get the same
5    punishment.
6        A.   Yes.
7        Q.   Do you agree with that?
8        A.   Yes.
9        Q.   Okay.  What if they both go in the bank, they
10   both have guns, and while one of them's getting the
11   money, the other one kills the clerk.  But the other one
12   doesn't tell him to kill him.  He doesn't say anything,
13   but they have this plan.  They both have their guns and
14   they're both going to get the money.
15            Do you think it's reasonable they
16   anticipated someone would have to die if they were going
17   to go in and take the money?
18       A.   No.
19       Q.   You don't?  Okay.  This question asks you here
20   if you think someone anticipated a human life would be
21   taken, you can consider the death penalty.
22       A.   Yes.
23       Q.   Okay.  If you both -- if two people go into a
24   Circle K and they both have guns and their goal is to get
25   the money, but only one of them shoots, do you think the

STATE OF TEXAS VS. RUBEN GUTIERREZ                                151

1    other guy should have anticipated they might have to use

2    that gun?

3        A.   Yes, because both of them have guns.

4        Q.   Okay.  Do you think the one that didn't pull

5    the trigger should get the death penalty?

6                   THE COURT:  Can you consider.

7        Q.   (BY MS. FISCHER)  Consider the death penalty?

8        A.   I believe so.

9        Q.   Okay.  Can you do it, though?  That's what the

10   question is.  You're going to have to answer these

11   questions.  Can you answer that question and can you

12   consider the death penalty?

13       A.   I believe so.

14       Q.   Okay.  The last question talks about things

15   that make you less to blame, okay?  So let's say you do

16   think he might hurt again, and you do think that he

17   pulled the trigger and he should have known the trigger

18   was going to be pulled.  Then you can consider things

19   that might make him less to blame, okay?  And then you

20   can consider whether life or death is more appropriate.

21                   Okay.  Is there something in your mind

22   that you're always going to consider or some reason that

23   you may always consider life in prison to be better than

24   death?

25       A.   Well, yes.

STATE OF TEXAS VS. RUBEN GUTIERREZ                    152

1      Q.   Tell me what it is.

2      A.   Well, it depends on the evidence.  It depends

3  in what we hear that -- the person who's going to testify

4  on the case.  And it depends on the circumstances, I

5  mean, what we see and what we hear.

6      Q.   So, then, you haven't made your mind up that

7  life is always better than death?

8      A.   Uh-huh.

9      Q.   You're going to consider everything you hear?

10     A.   Yes.

11     Q.   Okay.  Then the last question I'm going to ask

12  you and then I'm going to let Mr. Galarza talk to you is

13  that because the death penalty is an option and because

14  this is a serious offense, I have to prove this to you

15  beyond a reasonable doubt, but not beyond all doubt.  I

16  have to prove those first two questions.  I have to prove

17  that he's guilty beyond a reasonable doubt, not beyond

18  all doubt.  Can you follow that law?

19     A.   I believe so.

20     Q.   Okay.  So you're not going to say that I have

21  to be 100 percent right or all doubt?  You're going to

22  follow the law?

23     A.   Yes.

24          MS. FISCHER:  I don't have any further

25  questions, Judge.

PAM L. ESQUIVEL, CSR, RPR

STATE OF TEXAS VS. RUBEN GUTIERREZ                          153

1          THE COURT:  All right.  Let me -- it's
2  five 'til 12.  You're going to take a while.  So let
3  me --
4          MR. BLAYLOCK:  Can we approach right now,
5  Judge?
6          THE COURT:  All right.
7          **(Off the record discussion at the bench)**
8          THE COURT:  Let me excuse you for just one
9  minute.  I need to take up a legal matter and then I'll
10 bring you back in.
11         MS. TERAN:  Okay.
12         THE COURT:  Thank you.
13         **(Prospective juror left the courtroom)**
14         THE COURT:  All right.  The State had
15 something to --
16         MS. FISCHER:  Your Honor, at this time
17 we're going to use a peremptory strike against this
18 juror.
19         MR. BLAYLOCK:  If there's no objection
20 from the defense.
21         MR. GALARZA:  There's no objection.
22         THE COURT:  Okay.  That'll be number
23 seven?
24         MR. BLAYLOCK:  Yes, sir.
25         THE COURT:  Bring her in.

1                    Ms. Teran, that's all the questions we
2    have for you today.
3                    MS. TERAN:  Okay.
4                    THE COURT:  You're excused to go, and
5    thank you for your patience.
6                    MS. TERAN:  Okay.  Thank you very much.
7                    THE COURT:  Thank you.  Be back at 1:30
8    then.
9                    MS. FISCHER:  Yes, sir.
10                   **(Lunch recess taken from 11:53 a.m. to**
11                   **1:32 p.m.)**
12                   THE COURT:  All right.  Okay.  We're back.
13   You may be seated.  Bring in Ms. Hernandez.
14                   Good afternoon, Ms. Hernandez.
15                   MS. HERNANDEZ:  Good afternoon.
16                   THE COURT:  How are you?
17                   MS. HERNANDEZ:  All right.
18                   THE COURT:  Sorry we had to reschedule you
19   this afternoon, but it took a little longer with some
20   other people this morning.
21                   MS. HERNANDEZ:  Oh, it's okay.
22                   THE COURT:  Just do me a favor and speak
23   into the microphone so everybody can hear you.  The
24   lawyers have a few more questions for you, okay?
25                   MS. HERNANDEZ:  Okay.

STATE OF TEXAS VS. RUBEN GUTIERREZ                    155

```
 1                      THE COURT:  Go ahead.
 2                      MS. FISCHER:  Thank you, Judge.
 3                          ROSA HERNANDEZ,
 4        having been called as a prospective juror and, upon
 5        her oath, was examined and testified as follows:
 6                      VOIR DIRE EXAMINATION
 7   BY MS. FISCHER:
 8        Q.   Good afternoon, Ms. Hernandez.  How are you
 9   doing?
10        A.   All right, ma'am.
11        Q.   We need to talk to you -- I've read your
12   questionnaire, and so I know a little about -- actually,
13   I know a lot about you.  I know that you're pursuing a
14   criminal justice degree and that you plan some day to
15   have a career in that.  Tell me what you want to do
16   within the criminal justice system.
17        A.   I wanted to go into probation officer.
18        Q.   Okay.  You're planning on continuing on with
19   that?  Are you still attending school?
20        A.   Not at the time.
21        Q.   Okay.
22        A.   But I do want to go back.
23        Q.   Okay.  You also said that -- and I guess as
24   part of your schooling you've been to a maximum security
25   prison.  So you know what prison is like and you've also
```

STATE OF TEXAS VS. RUBEN GUTIERREZ                    156

1   been to what they call the death chamber over in

2   Huntsville; is that right?

3       A.   That's correct.

4       Q.   Okay.  Well, now, you know that this is a case

5   that involves the death penalty.  That's a possible

6   punishment in this case.  Is there anything about your

7   experiences in school that may cause you to be unfair in

8   this case?

9       A.   No.

10      Q.   Okay.  The reason why you're here and the

11  reason why we get to talk to you one-on-one is because we

12  need folks, we need 12 people who can be fair and

13  impartial.  And so, that means that not only the people

14  of Cameron County, who I represent here today, but

15  Mr. Gutierrez, he has the right to have a fair trial.

16           So if there are things that you have very

17  strong feelings about that may cause you to be unfair,

18  then that's what I need to talk to you about because we

19  just -- you know, you would agree with me that everybody

20  deserves a fair trial?

21      A.   Yes.

22      Q.   Okay.  There's something else, then, that I

23  noticed and that was the fact that your house has gotten

24  broken into a couple of times and your purse has gotten

25  stolen?

STATE OF TEXAS VS. RUBEN GUTIERREZ                    157

1        A.    That's correct.

2        Q.    Okay.  Tell me about that.  Is that going to

3   cause you to have any problems being a fair juror?

4        A.    No.  There won't be no problem.

5        Q.    Okay.  And the fact that you say your husband

6   has been arrested for drug charges in the past, is that

7   over and done with?

8        A.    Oh, yes.  That was back in -- when he was in

9   high school.

10       Q.    Okay.  He doesn't have any pending cases right

11  now in any of the courts or anything like that?

12       A.    No.

13       Q.    Okay.  So once again, I have to ask you the

14  question, can you be fair or you will not hold it against

15  anybody because of some of your past experiences?

16       A.    No.  I think I can be fair.

17       Q.    Okay.  The -- we asked you the question about

18  if you've known anyone who's been to the penitentiary.

19  Do you know someone who's been to prison before?

20       A.    Well, my husband's stepfather has been.

21       Q.    Okay.  Why did he go to prison?

22       A.    As far as I can remember, I think -- I don't

23  know if he killed or he tried to kill his wife.

24       Q.    Okay.  Did you know him when all that was going

25  on or was that long before you met your husband?

STATE OF TEXAS VS. RUBEN GUTIERREZ                          158

1       A.   No.  That was long before I met him.

2       Q.   Okay.  Do you have any personal -- I mean, this

3  case obviously involves a murder.  I mean, are there any

4  personal feelings that might cause you to be unfair in

5  this case?

6       A.   No.

7       Q.   Okay.  Now, we need to talk about the law.

8  We've asked you a lot of personal questions.  I need to

9  talk to you about the law.  In the State of Texas we have

10  a two-part trial system.

11            The first part of that, if you were chosen

12  as a juror, would mean your job would be to decide

13  whether or not the defendant is guilty.  It's my job to

14  prove it to you.  I have to prove to you the elements of

15  the crime that he's accused of; and the elements of the

16  crime that he's accused of, they're up there.  I have to

17  prove to you that while in the course of committing

18  robbery, that he murdered Ms. Harrison.

19            I do that beyond a reasonable doubt.  That

20  is the standard of the level of evidence that I have to

21  prove to you in this court.  And that's not beyond all

22  doubt or beyond a shadow of a doubt.  It's beyond a

23  reasonable doubt.

24            But when we asked you in your

25  questionnaire if you would hold the State to a higher

STATE OF TEXAS VS. RUBEN GUTIERREZ                                159

1   burden on a capital murder case, you said yes, that you

2   would.

3                   Tell me why you think we should be held to

4   a higher burden.

5       A.    I don't know.

6       Q.    Okay.  The law is beyond a reasonable doubt.

7   That's what the law is.  And the law is the same for all

8   cases.  Whether it be a drug charge, or a driving while

9   intoxicated charge, a murder charge or a capital murder

10  charge, the law says the burden of the proof, the burden

11  that I have stays the same.  It doesn't change.

12                  How do you feel about that knowing that

13  the burden of proof is the same whether this be capital

14  murder or D.W.I.?

15      A.    (No response).

16      Q.    Do you think that's a bad law?

17      A.    No, because you have your -- I mean, you have

18  your duty and your duty is, you know, to do that.  So --

19      Q.    And that's -- the law says that's all I need to

20  do.  I don't have any higher burden just because it's a

21  capital murder case.  How do you feel about that?

22      A.    (No response).

23      Q.    Do you think I should have a higher burden?

24  Should I have to prove it to you beyond all doubt --

25      A.    Yes.

STATE OF TEXAS VS. RUBEN GUTIERREZ                          160

1      Q.    -- or beyond a shadow of a doubt?

2      A.    I think you should prove it all, you know.

3      Q.    Beyond all doubt?

4      A.    Beyond all doubt.

5      Q.    Okay.  That's not what the law is.  The law

6  says I have to prove it to you beyond a reasonable doubt.

7  You have to use your reason and common sense and, after

8  careful and impartial consideration, reach a decision.

9               That's what the law says I have to do.  I

10 don't have to prove it to you 100 percent.  And in fact,

11 there's probably no way I can prove it to you 100 percent

12 unless you were there and you saw it happen, okay?  So I

13 can't do that and I don't have to, okay?  That is the

14 law.

15               Can you follow that law or do you have

16 personal feelings in your heart that says, "If I'm not

17 100 percent sure, then I could never convict"?

18     A.    I would say depending on the case, but in this

19 case, it's -- I mean, I wasn't there.

20     Q.    Right.

21     A.    So I'd have to just, you know, just hear the

22 evidence, hear what's there.

23     Q.    Okay.  Could you follow the standard -- if when

24 the Judge gave you the law, if he says, "The standard is

25 beyond a reasonable doubt," which is not beyond all

1   doubt, which is not beyond a shadow of a doubt, which is

2   not 100 percent, it's beyond a reasonable doubt, can you

3   follow that law?

4        A.   Yes.

5        Q.   Okay.  That's what I need you to do.  I need

6   you -- and if you don't like the law, that's okay.  And

7   if you can't follow it, that's okay, too.  There aren't

8   any right or wrong answers in all of this.  But I need to

9   know how you feel and honestly how you feel so that both

10  sides get a fair trial, okay?  Because -- and if it's not

11  fair, you know, that -- that's not fair for either side.

12  It's not fair for the people of Cameron County, it's not

13  fair for the defendant.

14            Tell me, then, knowing that, okay, you

15  have to come to a point where if you do find the

16  defendant guilty, you will then be asked a series of

17  questions.  And based on your answers to those questions,

18  the death penalty may be imposed.

19            Tell me what your feelings are about the

20  death penalty.

21       A.   What I feel about the death penalty is -- I

22  mean, if you committed the crime, then that's -- you have

23  to also think about the consequences.  So I mean,

24  depending on the seriousness of the crime, I mean, if

25  that's what it's going to take, then do it.

STATE OF TEXAS VS. RUBEN GUTIERREZ                              162

1     Q.   What types of crimes do you think should have
2   the death penalty?
3     A.   Intentional, you know, crimes, like intentional
4   murder, you know.
5     Q.   Okay.  In the State of Texas one of the ways
6   that you can be subjected to the death penalty is if
7   while committing robbery or you murder someone while
8   committing a robbery, you're robbing someone like in the
9   Circle K hypothetical Mr. Blaylock has used before where
10  you go into the Circle K and while you're stealing the
11  money from the store clerk, while you're robbing her,
12  holding her at gunpoint, you kill her, the law says that
13  that can be -- that is capital murder and that the death
14  penalty can be assessed against you.  How do you feel
15  about that?
16    A.   (No response).
17    Q.   Do you think that should be a capital offense?
18    A.   I think so.
19    Q.   Okay.  Why do you think?
20    A.   Because, I mean, he had a chance to think.  I
21  mean, he was going to go and rob something and, I mean,
22  he should have known that if something was to go wrong,
23  you know, and in order for you to get out of it, you
24  would probably have to do something worse.
25    Q.   Now, when we asked you if you wanted to be a

1   juror in this case, you told the Judge no, that you did

2   not want to be a juror in this case; and that one of the

3   reasons or the reason why is that while you knew, you

4   know -- you have a criminal justice background.  I'm sure

5   you find a lot of this very fascinating, but that you

6   would not want the life of that person in your hands.

7             Tell me why you don't want to be a juror.

8   Is that the reason why?

9        A.   I just -- I mean, I don't know.  I've given it

10  a lot of thought and I feel like -- I feel -- I would

11  feel bad, you know, to have a life, you know, of a young

12  man in my hands.

13       Q.   Okay.

14       A.   I mean, maybe, you know -- I don't know.  Maybe

15  later on it changes, but after I hear everything, but,

16  you know, right now it's -- I think about it and it's

17  like to have a life of a person in my hands, it's hard.

18       Q.   Okay.  Let me talk to you, then, about how this

19  system works.  You're not actually asked a question that

20  says, "Do you think this defendant should receive the

21  death penalty?"  You're not asked that question.  You

22  don't have to check "yes" or "no."

23             Instead you're asked these three special

24  right here.  And based on your answers to these three

25  questions, then the Judge makes a determination about

STATE OF TEXAS VS. RUBEN GUTIERREZ                         164

1    whether or not to impose the death penalty.

2                   THE COURT:  After someone is found guilty.

3         Q.   (BY MS. FISCHER)  After -- yes.  If the

4    defendant is found guilty, if you find him guilty.  So

5    let's get to that point, then.  Let's say you do find the

6    defendant guilty or a defendant guilty of capital murder.

7    You find that while committing robbery, he murdered

8    someone.

9                   The first question you're going to be

10   asked is whether there is a probability that the

11   defendant would commit criminal acts of violence that

12   would constitute a continuing threat to society.  Do you

13   understand what that question is asking you?

14        A.   If he can repeat it.

15        Q.   Exactly.  Okay.  Let's say that you do find

16   that he may hurt again, okay?  Let's say that you listen

17   to the evidence, maybe hear about his background and

18   think, "Yeah, he'll probably do that again."

19                  Now, if you answer this question "yes,"

20   the defendant may receive the death penalty, okay?

21        A.   (Nods head).

22        Q.   Are you going to be able to answer this

23   question honestly when in the back of your mind you know

24   that he may receive the death penalty?

25        A.   After hearing the evidence, yes.

PAM L. ESQUIVEL, CSR, RPR

STATE OF TEXAS VS. RUBEN GUTIERREZ                           165

1      Q.   Okay.  So, then, you're not going to have any

2  feelings in your heart that you're going to say, "I'm

3  going to answer this 'no' because I don't want him to get

4  the death penalty.  I don't want his death on my hands"?

5      A.   Uh-uh.  No.

6      Q.   Okay.  Well, that's different from what you

7  were saying a minute ago.  Can you do it?  Can you answer

8  the question honestly?

9      A.   I mean, after hearing the evidence and

10 everything, I mean, I think I can.

11     Q.   Okay.  Now, let's talk a little bit about that

12 question what the word "society" means.  What does the

13 word "society" mean to you?

14     A.   Can you repeat it?

15     Q.   This question -- this word right here, society,

16 what do you think of when you think of that word society?

17 Who is society?

18     A.   Like me or the rest of the people.

19     Q.   And the people you're around.  So even the

20 people in jail, they have their own society?

21     A.   Yes.

22     Q.   Okay.  So you're going to be asked a question

23 to decide whether or not he's going to be a continuing

24 threat to society.  Based on the evidence that you hear,

25 can you answer that question honestly?

1        A.    Yes.

2        Q.    Okay.  Even knowing the defendant could be

3   considered for the death penalty?

4        A.    Yes.

5        Q.    Okay.  The next question then asks you whether

6   the defendant actually caused the death of the deceased,

7   or did not actually cause the death of the deceased but

8   intended to kill the deceased or another, or anticipated

9   that a human life would be taken.

10              This question right here asks you to take

11  into consideration what we call the law of parties.  And

12  the law of parties is the situation where Mr. Blaylock

13  had talked about before where two people go into a store,

14  the Circle K, to rob it.

15              And let's say that one goes in and the

16  other one is waiting out in the car to drive away as soon

17  as Mr. Blaylock gets the money, you know.  Let's say I'm

18  waiting in the car to drive him away.

19              The law of parties says we're both equally

20  guilty if we both planned, participated in the commission

21  of the crime.  Even though I didn't go in the store and

22  actually take the money, the law says I'm just as guilty

23  of robbery.  How do you feel about that?

24       A.    I don't think it's fair.

25       Q.    Why don't you think it's fair?

STATE OF TEXAS VS. RUBEN GUTIERREZ                          167

1      A.   Because, I mean, if that one person without
2   even thinking about it goes and kills, and the other
3   person -- I mean, even though he helped or he had a part
4   in it, I mean, how did that other person know that this
5   other person was going to kill?
6      Q.   Okay.  Well, let's talk a little bit more,
7   then, because it's very important that you tell me how
8   you feel about it because the law is such that you can be
9   considered for the death penalty if you actually cause
10  the death of a person.
11           So let's say Mr. Blaylock did go into that
12  store and he shot the store clerk while he was robbing
13  her.  You would agree with me he actually caused that
14  store clerk to die?
15     A.   (Nods head).
16     Q.   The law says that he can receive the death
17  penalty because while in the course of committing
18  robbery, he murders someone.  How do you feel about that?
19     A.   I'm not sure.
20     Q.   Okay.  But now, let's add me to this.  We have
21  a plan.  We're going to go into the Circle K together and
22  we're going to rob it.  We both take in our knives.  We
23  both have our weapons.  And while he's over there talking
24  to the store clerk telling her to give him the money, I'm
25  over at the beer cooler getting some beer that we're

STATE OF TEXAS VS. RUBEN GUTIERREZ                    168

1   going to take also during our robbery.

2                   The store clerk won't give him the money.

3   So I tell him, "Well, just stab her, get her out of the

4   way, kill her, and let's get the money and run."  So he

5   does.

6                   Now, once again, he did the stabbing, so

7   he actually caused the death.  But even if you did not

8   actually cause the death but you intended that they be

9   killed, the law says that I can receive the death

10  penalty.  How do you feel about that?

11      A.   Well, if this other person, like you said, like

12  if you are the one that actually told him, "Well, stab

13  her," then they're both guilty.

14      Q.   Okay.  Do you think I should receive the death

15  penalty?

16      A.   Yes.

17      Q.   Okay.  Now, the last part of this is if you

18  anticipated that a human life would be taken, you can

19  receive the death penalty.  You can be just as guilty

20  under the law of parties and receive the same type of

21  punishment.

22                   And this is probably what you were talking

23  about a minute ago, which is why I want you to pay very

24  particular attention to the last part of this question

25  when you said you never know and how can one -- you know,

STATE OF TEXAS VS. RUBEN GUTIERREZ                    169

1    the driver be responsible if he didn't know.

2              Let's say we go into the Circle K, he and

3    I.  We both have our knives and we both say, you know,

4    "We're going to get the money.  That's our goal, you

5    know.  While you're getting the money, I'm going to go

6    get the beer.  We've got to get the money, and then let's

7    get out of here."

8              Let's say while this is going on, the

9    store clerk won't give him the money, so he does kill

10   her.  And then we run and I didn't say the words, "Go

11   ahead and kill her, John."  I didn't say those words, but

12   I went in there with my weapon and he went in there with

13   his weapon, and we knew we were going to get the money.

14             Now, I didn't actually cause that store

15   clerk to die as far as I didn't actually do the stabbing,

16   but do you think I anticipated a human life might be

17   taken?

18        A.   Yes, because you had that goal.

19        Q.   Okay.  But now the law says if I anticipated

20   that a human life would be taken, then I, too, just like

21   Mr. Blaylock, can have the death penalty as my

22   punishment.  How do you feel about that?

23        A.   I would say it's fair.

24        Q.   Okay.  Now, that's different from what you told

25   me before about the driver not knowing.  Do you feel

STATE OF TEXAS VS. RUBEN GUTIERREZ                    170

1   comfortable with that law now that we've talked about it

2   and I've explained it to you?

3        A.    Yes.

4        Q.    Okay.  So you could find the other party, the

5   person who didn't pull the trigger, guilty under the law

6   of parties if you thought the evidence was sufficient --

7        A.    Yes.

8        Q.    -- and sentence them to the death penalty?

9        A.    (Nods head).

10       Q.    Okay.  Or consider --

11       A.    Consider.

12       Q.    You have to answer these questions honestly is

13   what I'm saying.  And if you have a hidden idea that

14   maybe, "Well, I don't think the person who didn't do the

15   stabbing, I don't think they should ever receive the

16   death penalty," then that might cause you to answer one

17   of these questions falsely; wouldn't you agree with me?

18       A.    Yes.

19       Q.    Are you going to do that?

20       A.    No.

21       Q.    Okay.  The last question, then, is what we call

22   the mitigation question.  And mitigation, basically the

23   definition is something that makes you less morally

24   blameworthy, makes you less to blame.

25                   And the law says you have to consider

STATE OF TEXAS VS. RUBEN GUTIERREZ                    171

1   those things.  You have to consider the evidence of the
2   case, the circumstances about the case, the certain
3   things about the defendant that you may or may not hear,
4   and also the defendant's role in this.
5                  And then you have to find if there are
6   some mitigating circumstances or even a mitigating
7   circumstance to warrant life in prison rather than death.
8   The law says you have to make that consideration, okay?
9                  Is there anything about your feelings
10  about the death penalty that are always going to make you
11  say, "I think life is better than death"?
12      A.    No.
13      Q.    Okay.  So you can consider both punishments and
14  you can answer this question honestly?  If you do hear
15  something that's mitigating, then you can say, "Yes, I do
16  think there's something that maybe -- that life is
17  better"?  What if you don't hear anything good about the
18  defendant?  Can you say, "Death is better than life"?
19      A.    Yes.
20      Q.    Okay.  There are a couple of things about the
21  law that are sometimes contrary to what we think, you
22  know, the law ought to be.  One of those is that in the
23  State of Texas, a husband doesn't have to testify against
24  the wife.  How do you feel about that law?
25      A.    I would say it's fair.

STATE OF TEXAS VS. RUBEN GUTIERREZ                    172

1      Q.   Okay.  Even if the wife saw the crime being

2   committed, she does not have to testify; and I can't

3   force her to testify, okay?  Are you going to hold it

4   against me if you don't hear from the wife?

5      A.   No.

6      Q.   Okay.  The same thing goes for co-defendants;

7   and co-defendants are people who commit a crime together.

8   Let's say Mr. Blaylock and I went and robbed that

9   Circle K together, then we would be considered

10  co-defendants.

11          They can't make him testify against me.

12  The State can't force a codefendant to get up there and

13  testify.  He has a right to remain silent just like the

14  defendant does.  How do you feel about that?

15     A.   I would say the defendant would want to say

16  something on his part, but I mean --

17     Q.   Okay.  Now, that's another part of the law

18  that's very important.  The defendant here in the State

19  of Texas has a constitutional right to remain silent.  He

20  doesn't have to say anything and he doesn't have to put

21  on any evidence.  How do you feel about that?

22     A.   I would feel sad on his part.

23     Q.   Okay.  Let's say he didn't take the stand.

24  Let's say he didn't get up there and say anything on his

25  behalf, didn't say anything to try and save himself.

STATE OF TEXAS VS. RUBEN GUTIERREZ                    173

1    Would you hold that against him?

2        A.    No.

3        Q.    The law says that you can't.  Can you follow

4    the law?

5        A.    Yes.

6        Q.    Okay.  Now, what about that codefendant, are

7    you going to hold it against him if he doesn't get up

8    there and say what he saw?

9        A.    No.

10       Q.    Okay.  Now, sometimes codefendants do testify.

11   They do get up there.  Let's say Mr. Blaylock cuts a

12   deal; and in exchange for his truthful testimony, they

13   offer him half the amount of time they offer me.  Let's

14   say they say, "Okay.  You can do 25 years instead of 50."

15   How do you feel about somebody doing that, cutting a

16   deal?

17       A.    They're betraying that other person.

18       Q.    Okay.  Do you think it makes them

19   untrustworthy?

20       A.    Yes.

21       Q.    Why?

22       A.    Because, I mean, to do the crime, they trusted

23   each other, but then they can't trust each other after, I

24   mean, they get caught.

25       Q.    Do you think he might come in here and lie to

STATE OF TEXAS VS. RUBEN GUTIERREZ                          174

1    try and save his own skin?

2         A.   Yes.

3         Q.   How can you tell if he's telling the truth?

4    How can you tell if any person is telling the truth?

5         A.   You can't tell.  It's that inner feeling, I

6    guess.

7         Q.   Okay.  What do you do in a situation where

8    you're trying to make a determination about whether

9    someone's telling you the truth?

10        A.   Just hear whatever they have to say.

11        Q.   Okay.  Do you watch them, watch their demeanor,

12   watch how they act?

13        A.   Yes.

14        Q.   Okay.  Could you do the same to the witnesses

15   in this case?

16        A.   Yes.

17        Q.   Okay.  Because you're going to have to make a

18   judgment call as to whether or not you think they're

19   telling the truth, okay?  Can you treat them all the

20   same, whether they be cops, whether they be doctors,

21   whether they be a codefendant?

22        A.   Yes.

23        Q.   How can you tell if somebody intentionally --

24   and you had said this before, about an intentional

25   killing.  How can you tell if somebody intends to do

STATE OF TEXAS VS. RUBEN GUTIERREZ                    175

1    something?  Can you get in a person's mind and see what

2    they're thinking?

3         A.    No.

4         Q.    Then how do you tell?

5         A.    You can't tell.

6         Q.    What if I go over here and I go like this to

7    Mr. Blaylock?  What did I intend to do?

8         A.    Push him.

9         Q.    Okay.  What if I said, "I didn't want to push

10   him.  It was an accident.  As I was getting up from my

11   chair, I accidentally brushed up against him"?  What if I

12   said that, would you believe me?

13        A.    No.

14        Q.    Why?

15        A.    Because, I mean, just by the way you did it,

16   you can tell it was intentional.

17        Q.    Okay.  Is there anything that you want to ask

18   me about this case or maybe about your feelings about the

19   death penalty?  Because this is the last time that we get

20   to visit.  Once the trial starts and you're chosen as a

21   juror, I'm not allowed to talk to you.  Is there any

22   questions -- are there any questions you have about the

23   system or any questions about this case in particular?

24        A.    No.

25        Q.    Okay.  Anything that I haven't asked you that

STATE OF TEXAS VS. RUBEN GUTIERREZ                          176

1    you think is important for me to know about whether or
2    not you'd be a good juror in this case?
3         A.   I don't have any questions.
4         Q.   Okay.  Well, then, let's go back to that answer
5    where we asked you, "Do you want to be a juror?"  And you
6    said no, because you didn't want a person's life in your
7    hands.  If you sit as a juror and you take an oath that
8    you will answer everything honestly and follow the law,
9    can you do that or are you going to have such bad
10   feelings about maybe sentencing someone to the death
11   penalty that you could not be fair?
12        A.   I would feel uncomfortable, but I think I -- I
13   mean, after hearing everything that -- I mean, I can do
14   it.
15        Q.   Okay.  It is a tough decision.  It's tough for
16   every one of us in this room to do any of this.  But I
17   need to know, can you do it?  Can you follow the law and
18   put any personal feelings you may have aside?
19        A.   Yes.
20        Q.   Okay.
21             MS. FISCHER:  I don't have any further
22   questions, Your Honor.
23             MR. GALARZA:  May I proceed, Your Honor?
24             THE COURT:  You may.
25

STATE OF TEXAS VS. RUBEN GUTIERREZ                          177

<div style="border:1px solid">

1                         VOIR DIRE EXAMINATION

2    BY MR. GALARZA:

3         Q.    It's Rosa Delia Hernandez; is that correct?

4         A.    That's correct.

5         Q.    Good afternoon.  My name is Santiago Galarza.

6    I believe we were introduced at the time of voir dire.

7    My co-counsel is Daniel Reyes.  He's not here today.  And

8    we both represent Mr. Gutierrez in this case.

9              Let me go back to what you were talking

10   about in the questionnaire and what Ms. Fischer -- and

11   you stated in your questionnaire that you would feel

12   scared to know that the life of a person is in your

13   hands.  She's gone over all the -- or a lot of the

14   procedure and as to what happens and what you have to go

15   ahead and do as a juror.

16             At this point do you feel that you could

17   set that aside and just go ahead and serve and be fair

18   and impartial in this case?  Do you feel that because

19   somebody's life is in your hands that you will have

20   something in the back of your mind that would prohibit

21   you from serving in this case?

22        A.    Like I said, I mean, after hearing the

23   evidence, I don't think there would be any problem.

24        Q.    Okay.  So you would be fair and impartial?  You

25   would listen to all the evidence and you would decide

</div>

STATE OF TEXAS VS. RUBEN GUTIERREZ                          178

1    based on the testimony?

2         A.    Yes.

3         Q.    Okay.  I believe at the time of -- well, when

4    you went ahead and filled out the questionnaire and when

5    you were asked last Tuesday if you knew any of the

6    parties, I believe you stated no; is that correct?

7         A.    That's correct.

8         Q.    Okay.  And there was a long list of names that

9    were given to you or that were read to you.  You don't

10   know any of those names either?

11        A.    No, sir.

12        Q.    Okay.  Let me give you a couple of more names

13   and just tell me if you know them or not.  Claudia Leyva,

14   she's a dispatcher with the Brownsville Police

15   Department?

16        A.    No.

17        Q.    Tina Hauff, she lives here in Brownsville?

18        A.    No.

19        Q.    Roberto Gonzalez, he's at Cameron County jail

20   here in Brownsville?

21        A.    No.

22        Q.    Tino Ortiz?

23        A.    No.

24        Q.    And Escolastica Harrison also known as

25   Escolastica Cuellar?

STATE OF TEXAS VS. RUBEN GUTIERREZ                      179

1        A.    No.

2        Q.    Okay.  If it happens that once a person comes

3   in to testify and once you see him when you're sitting

4   down as a juror, if at that point you realize that you

5   know that person, would it affect you in any way?

6        A.    No.

7        Q.    Would their testimony -- would you

8   automatically believe them a lot more just because you

9   know them?

10       A.    No.

11       Q.    So you would listen to the testimony, listen to

12  the rest of the testimony, and give it the weight it

13  deserves?

14       A.    Yes.

15       Q.    Here in Texas, would you agree with me that

16  once a person is arrested, that's not evidence that he's

17  automatically guilty of the offense; is that correct?

18       A.    That is correct.

19       Q.    So, he's still innocent of whatever he's been

20  arrested for?

21       A.    That's right.

22       Q.    Okay.  The procedure usually is that once a

23  person is arrested, then at that point the law

24  enforcement agency, which is maybe Brownsville Police

25  Department, San Benito Police Department or any agency,

STATE OF TEXAS VS. RUBEN GUTIERREZ                    180

```
 1    goes ahead and prepares their file.

 2                 They get all the statements that they need

 3    from police officers, witnesses, whoever they need to get

 4    a statement from.  They take pictures if they need any

 5    pictures.  And they just go ahead and prepare the file.

 6                 Once they feel that the file is complete,

 7    then at that point they turn it over to the D.A.'s

 8    Office.  At that point the D.A.'s Office prepares it and

 9    they present it to what we call the grand jury.  Do you

10    know what the grand jury is?

11         A.    Yes.

12         Q.    What's a grand jury?

13         A.    It's the court higher.

14         Q.    Okay.  The grand jury is the people that

15    actually look at their advice and the evidence that there

16    is in this case, and they're the ones that actually say

17    if they can proceed with the case, "Yes, you can proceed

18    with the case," or "No, don't proceed with the case."

19                 If they say, "Yes, go ahead and proceed

20    with the case," which means they true billed it, then at

21    that point the indictment is what they sign so they can

22    proceed with the case and it's filed in one of the

23    district courts.

24                 Just because a grand jury signs an

25    indictment, does that mean that the person is
```

1   automatically guilty?

2        A.   No.

3        Q.   Why not?

4        A.   Because they haven't heard the evidence.

5        Q.   They haven't heard the complete evidence or the

6   accused might not have been there at the time that they

7   heard some evidence; is that correct?

8        A.   Yes.

9        Q.   Okay.  Would you agree with me that at that

10  point and also at the arrest or if a person is arrested,

11  if he might still be in jail and he's been indicted,

12  would you agree with me that he's still innocent as to

13  that point?

14       A.   Yes.

15       Q.   Okay.  And that's because no evidence has been

16  presented; is that correct?

17       A.   That's correct.

18       Q.   In a case -- like an example, this type of

19  case, the State has to prove their case beyond a

20  reasonable doubt.  What beyond a reasonable doubt

21  means -- and let me read it to you.  It's right here on

22  this side.

23            "A reasonable double is a doubt based on

24  reason and common sense after a careful and impartial

25  consideration of all the evidence in the case.  It is the

STATE OF TEXAS VS. RUBEN GUTIERREZ                          182

1   kind of doubt that would make a reasonable person

2   hesitate to act in the most important of his own

3   affairs."  Okay?

4                 What they're advising you to do is your

5   use your reasoning, use your common sense, okay?  Look at

6   the evidence, listen to the testimony, and give it the

7   weight it deserves.  If two people come in to testify, if

8   one person says one thing, the other person says the

9   other thing, okay, you're going to be using your common

10  sense to determine who you're going to go ahead and

11  believe, okay?

12       A.    (Nods head).

13       Q.    Do you follow me so far?

14       A.    Yes.

15       Q.    Do you agree with that?

16       A.    Yes.

17       Q.    Okay.  You're willing to use your common sense

18  and believe either one party or the other party, whatever

19  your feelings are that is telling the truth?

20       A.    Yes.

21       Q.    The second paragraph reads, "Reasonable doubt

22  therefore must be proof of such a convincing character

23  that you would be willing to rely and act upon it without

24  hesitation in the most important of your own affairs."

25                 Have you ever bought a car?

STATE OF TEXAS VS. RUBEN GUTIERREZ                                      183

1       A.    Yes.

2       Q.    When you bought a car, was it a brand-new car

3   or was it a used car?

4       A.    It was a brand-new car.

5       Q.    Did you automatically just go and once you saw

6   the car, you automatically just said, "This is the one

7   I'm going to take"?

8       A.    (No response).

9       Q.    Or did you do some checking around?

10      A.    I did some checking around.

11      Q.    So your common sense is -- tells you not to go

12  automatically.  If the sticker price on the new car says

13  20,000, you know that he might be able to lower that

14  price; is that correct?

15      A.    Yes.

16      Q.    So using your common sense, you're not going to

17  agree to pay 20,000 at that point?

18      A.    That's correct.

19      Q.    So that's the same thing that we're telling you

20  to do in this type of case.  Use your common sense, like

21  I told you again, and go ahead and listen to the

22  testimony and determine who's telling the truth, who's

23  lying, and use your reasoning to determine that, okay?

24      A.    (Nods head).

25      Q.    Do you agree to follow that?

STATE OF TEXAS VS. RUBEN GUTIERREZ                    184

1      A.   Yes.

2      Q.   Okay.  In this type of case the State has to

3    prove all the elements beyond a reasonable doubt.  The

4    elements are right here on my left-hand side, which is

5    your right-hand side.

6              They read, number one, the defendant;

7    number two, on or about the 5th day of September, 1998;

8    number three, in Cameron County, Texas, number four,

9    intentionally; number five, caused the death of an

10   individual by stabbing the individual with a screwdriver

11   or object unknown to the grand jury, or by striking the

12   individual with an object unknown to the grand jury, or

13   by causing the individual to impact with an object

14   unknown to the grand jury; element number six, and the

15   said defendant was then and there in the course of

16   committing or attempting to commit the offense of robbery

17   of the individual.

18             In order for a person to be charged of

19   capital murder, they need to prove murder plus another

20   felony, okay?  In this case they need to prove number

21   five, that the person was actually murdered, okay, and

22   number six, that he intended to commit robbery.  They

23   need to prove all six elements beyond a reasonable doubt.

24             Have you ever played the lotto on

25   Wednesdays and Sundays -- and Saturdays?  I'm sorry.

STATE OF TEXAS VS. RUBEN GUTIERREZ                        185

1      A.    Yes.

2      Q.    Okay.  If you're playing the lotto and you get

3  five out of six numbers, do you automatically get the

4  jackpot, the whole jackpot?

5      A.    No.

6      Q.    Why not?

7      A.    Because you only got five numbers.

8      Q.    Okay.  So it's the same thing here.  We're

9  asking you to do the same thing, okay, that the State

10  needs to prove every single element.  You go to number

11  one, did they prove it beyond a reasonable doubt?  Using

12  your common sense, you look at the evidence, and you

13  determine "yes" or "no."

14              Using number two, the same thing.  You go

15  all the way to determine whether they proved every single

16  element beyond a reasonable doubt.

17              In element number six, let me tell you

18  what robbery is; and I'll read you the definition.  "A

19  person commits an offense of robbery if, in the course of

20  committing theft and with intent to obtain or maintain

21  control of the property, he intentionally, knowingly or

22  recklessly causes bodily injury to another, or

23  intentionally or knowingly threatens or places another in

24  fear of imminent bodily injury or death."

25              Okay.  Would you agree with me that this

1    is against a person?

2        A.   Yes.

3        Q.   Okay.  So if somebody goes to you and they try

4    to take a ring that you have, they tell you, "Give me the

5    ring or I'll kill you," that's robbery.  Would you agree

6    with me?

7        A.   Yes.

8        Q.   Okay.  If somebody just goes to you or goes to

9    me and tries to take something from me, they kill me at

10   the time that they're trying to take it away, at that

11   point -- or recklessly causes bodily injury.  They don't

12   kill me, but they cause bodily injury to me, that's

13   robbery.  Do you follow me so far?

14       A.   Yes.

15       Q.   Burglary, "A person commits an offense of

16   burglary without the effective consent -- if, without the

17   effective consent of the owner, he enters a habitation or

18   a building not then open to the public with intent to

19   commit a felony or a theft, or remain concealed with

20   intent to commit a felony or a theft in a building or

21   habitation, or enters a building or habitation and

22   commits or attempts to commit a felony or a theft."

23            Would you agree with me that this is done

24   against a building or a habitation, burglary?

25       A.   Yes.

STATE OF TEXAS VS. RUBEN GUTIERREZ                        187

1    Q.   Okay.  It's not done against a person, directly

2  against a person?

3    A.   Yes.

4           MS. FISCHER:  Your Honor, may we approach

5  at this point?  I just briefly want to confer with the

6  Court.

7           THE COURT:  All right.

8           **(Off the record discussion at the bench)**

9           THE COURT:  Let me take up a legal matter

10  with the lawyers and I'll call you right back.  Will you

11  step down for a few minutes?  Thank you.

12           **(Prospective juror left the courtroom)**

13           THE COURT:  Go ahead.

14           MS. FISCHER:  Your Honor, at this time the

15  State will exercise its eighth peremptory strike against

16  Ms. Hernandez.

17           MR. GALARZA:  No objection, Your Honor.

18           THE COURT:  All right.  Bring her in.

19           THE BAILIFF:  Yes, Your Honor.

20           THE COURT:  Okay, Ms. Hernandez.  That's

21  all the questions we have for you today.  We appreciate

22  you coming back this afternoon; and you're excused to go.

23           MS. HERNANDEZ:  Thank you.

24           THE COURT:  Thank you.

25           MR. GALARZA:  Thank you.

STATE OF TEXAS VS. RUBEN GUTIERREZ                              188

```
 1                    THE COURT:  Good afternoon, Mr. Perez.
 2                    MR. PEREZ:  Hello.
 3                    THE COURT:  How are you?
 4                    MR. PEREZ:  I'm fine.
 5                    THE COURT:  Good.  I'm sorry for the
 6    delay, first of all, but some questioning takes longer
 7    with some people than others.  So we're ready to start at
 8    this time.  Could I ask you just to speak into the
 9    microphone.  If you want to adjust it, you can go ahead
10    and adjust it to your height.  And the lawyers have a few
11    more questions to ask, okay?
12                    MR. PEREZ:  Okay.
13                    THE COURT:  Go ahead.
14                         ERNESTO PEREZ,
15       having been called as a prospective juror and, upon
16       his oath, was examined and testified as follows:
17                    VOIR DIRE EXAMINATION
18    BY MS. FISCHER:
19         Q.   Good afternoon, sir.  How are you doing?
20         A.   I'm doing fine.
21         Q.   My name is Karen Fischer.  This is John
22    Blaylock.  He's the one that spoke with you all last
23    week.  We work for the Cameron County District Attorney's
24    Office.  That means we represent the people of Cameron
25    County here today.
```

STATE OF TEXAS VS. RUBEN GUTIERREZ                    189

1              Now, I know that -- I've read your
2   questionnaire; and I appreciate you filling that out for
3   me.  And I know that you told us that you have some
4   problems with your eye.
5       A.   Yeah.
6       Q.   Is that going to cause you any problems if you
7   were selected as a juror in this case?
8       A.   No.
9       Q.   Okay.  Tell me what kind of -- obviously, I
10  mean, you did a fine job in filling out the
11  questionnaire.  Did you have any problems reading any of
12  the questionnaire?
13      A.   No.
14      Q.   What kind of problems does your left eye give
15  you?
16      A.   I can't see from it.
17      Q.   Okay.  We have some like boards up over here
18  that have some special issue questions on it that kind of
19  discuss the law.  Can you see these?
20      A.   Uh-huh.
21      Q.   Okay.  Do you have any problem reading with
22  those?
23      A.   Just the bottom ones a little bit.
24      Q.   Okay.  Is that because the print's too small?
25      A.   Uh-huh.  Yes.

STATE OF TEXAS VS. RUBEN GUTIERREZ                    190

1      Q.   Okay.  Now, during the course of this trial
2    there probably will be diagrams and perhaps reading that
3    you may have to do.  Will you be able to do that?
4      A.   I'll be able to see it, but I don't know about
5    that small print.
6      Q.   Okay.  If we got it up closer, would you be
7    able to see it?
8      A.   Okay.  Yes.
9      Q.   If you become a juror, will you remind us that
10   you need to see things up close?  Can you do that?
11     A.   Yes.
12     Q.   Okay.  A long as you can read it, that's fine,
13   but just remind us that you may need to see something up
14   close.
15     A.   Okay.
16     Q.   Just remind me if I do that also.
17          In your questionnaire we asked you a lot
18   of questions about your feelings about the death penalty
19   and about your feelings about a lot of different laws.
20     A.   Yes.
21     Q.   So we do know a lot about you.  And I know that
22   from reading your questionnaire you're generally in favor
23   of capital punishment; you think it's a good idea?
24     A.   Yes.
25     Q.   Tell me why you think it's a good idea.

STATE OF TEXAS VS. RUBEN GUTIERREZ                           191

1       A.    Without it, there wouldn't be -- there would be
2   more crime, I guess.
3       Q.    Okay.  Now, this trial and at any trial in the
4   State of Texas, we have a two-part system.  Now, the
5   first part of your job if you're a juror is you have to
6   make a decision about whether or not the defendant is
7   guilty.
8               And if you do find the defendant guilty,
9   then you're asked to consider the death penalty.  And
10  you're asked to do that by answering a series of
11  questions; and that's those questions up there on that
12  board, okay?
13              And it's my job or our job to prove the
14  case to you beyond a reasonable doubt.  That's what the
15  standard of the law is, beyond a reasonable doubt.  When
16  we asked you -- and that's why I want to talk to you.
17  One of the specific questions is you -- we asked you,
18  "Should the State be required to prove their case beyond
19  all doubt in a capital murder prosecution?"
20              Tell me why you think that I should have
21  to prove my case beyond all doubt.
22      A.    I don't understand that.
23      Q.    Okay.  Let me kind of -- let me explain it to
24  you like this.  The law says that I have to prove the
25  case to you beyond a reasonable doubt.  That's what the

1    standard is.  And that means I have to -- you have to use

2    your reason and your common sense; and after a careful

3    and impartial consideration, you have to make a decision.

4              Okay.  Beyond a reasonable doubt does not

5    mean beyond all doubt or beyond a shadow of a doubt.

6         A.   Okay.  I understand now.

7         Q.   Okay.  Do you see what I'm saying?  It's kind

8    of like if you were going to go and you were going to buy

9    a home.  You know, you'd probably think about it for a

10   long time.  Have you ever bought your own home?

11        A.   No.

12        Q.   Okay.  I haven't either, but, you know, I've

13   been thinking about it for a very long time.  And you

14   would think about it and you would make some careful and

15   impartial decisions, right?  And you may have some doubts

16   along the way, but you would research it and listen to

17   what people had to say.  And then if you thought it was

18   right, you'd buy the house.  Wouldn't you agree with me

19   on that?

20        A.   Yes.

21        Q.   Okay.  That's kind of like what beyond a

22   reasonable doubt is.

23        A.   Oh, okay.

24        Q.   You may not be 100 percent sure, but you've

25   researched it and you've listened to the evidence, you

1    know, you could make a decision, okay?  So that's what

2    the law is.  I just need to make sure you can follow the

3    law.

4         A.    Okay.  Yes.

5         Q.    Okay.  When we asked you if you wanted to be a

6    juror in this case, you checked "no."  But then you said,

7    "My decision tends to be more for as long as the facts

8    are put on the table."  Then you will evaluate

9    everything.  Do you think you can be fair and impartial?

10        A.    Yes.

11        Q.    That's what you have to be.  If you can do

12   that, then you'll make a good juror in the case.

13              When you said no, is there any particular

14   reason why you don't think you'd be a good juror?

15        A.    I have no answer right now.

16        Q.    Okay.  Do you think you would make a good

17   juror?

18        A.    (No response).

19        Q.    Could you listen to the evidence and be fair?

20        A.    Yes.

21        Q.    Okay.  Now, in the event that you do find the

22   defendant guilty of capital murder -- and the capital

23   murder charge in this case is if while in the course of

24   committing robbery, Ms. Harrison was killed, we proved

25   that to you beyond a reasonable doubt, that is a capital

STATE OF TEXAS VS. RUBEN GUTIERREZ                          194

1   offense, if you kill someone while in the committing

2   robbery, okay?

3            Are you okay with that law?  Can you

4   follow that law?  Do you think it's a good idea?

5        A.   It's a good idea.

6        Q.   Okay.  If you find him guilty, then you're

7   asked to consider these special questions.  And based on

8   your answers to these questions, that tells the Court

9   whether or not to impose the death penalty.

10           The first question you're asked is whether

11  there is a probability that the defendant would commit

12  criminal acts of violence that would constitute a

13  continuing threat to society.

14           Basically this question is asking you, "Do

15  you think the defendant is going to hurt again?  Is he a

16  future danger?"  Okay.

17           Can you tell me how you would be able to

18  decide if someone were a future danger to society?

19       A.   Well, we can't decide because some of us --

20  they get sent to prison.  As soon as they get out, they

21  do it again.

22       Q.   Well, I noticed that you were a jailer at one

23  point in time at the Willacy County jail.  You probably

24  saw some of that, didn't you?

25       A.   Uh-huh.  Yes.

STATE OF TEXAS VS. RUBEN GUTIERREZ                          195

1    Q.   Okay.  Do you think you can make it -- do
2  you -- I mean, if you heard evidence maybe about the
3  defendant's background or things that you knew about him
4  from his past, do you think you can make a determination
5  that a defendant might hurt again?
6    A.   I don't know how to answer that.
7    Q.   Okay.  The law is going to ask you that
8  question.  This question is going to be there in that law
9  that the Judge gives you.  And you're going to have to
10  listen to what you hear about the case, about the
11  circumstances, about the killing, as well as some things
12  about the defendant.  And then you're going to be asked
13  whether you think that he may hurt again, okay?
14    A.   Okay.
15    Q.   Okay.  You're going to be asked that question;
16  and you're going to have to answer it either "yes" or
17  "no."  Can you do that?
18    A.   (Nods head).
19    Q.   Okay.  Now, let's talk about this.  You have to
20  decide whether the defendant will be a continuing threat
21  to society.  What does "society" mean to you?
22    A.   Society is -- I don't know how to say it.  The
23  United States as a whole.
24    Q.   Okay.  What about when you were a jailer at the
25  Willacy County jail -- was that at the state jail

STATE OF TEXAS VS. RUBEN GUTIERREZ                          196

```
 1    there --
 2         A.    In Raymondville.
 3         Q.    -- up on 77?  Okay.  Would you agree that your
 4    society was the folks there in the jail with you; that
 5    that was your society?
 6         A.    Yes.
 7         Q.    Okay.  And including the inmates and you as a
 8    jailer?
 9         A.    (Nods head).
10         Q.    Okay.  And wouldn't you agree with me that
11    sometimes people in jail can be a continuing threat to
12    society?  Were those inmates a threat to you?
13         A.    Yes.
14         Q.    Okay.  But now, the real important question is
15    because of your experience as a jailer, do you have any
16    prejudice or bias against defendants in general or can
17    you be fair?
18         A.    I don't know.
19         Q.    The law says you have to set those personal
20    feelings aside, that you can't come in here thinking that
21    a defendant's already guilty or you can't come in here
22    thinking, "Well, I'm going to give him the death
23    penalty," that you have to be fair and impartial as you
24    sit here right now because you don't know anything about
25    the case.  Have you heard anything about this case in
```

STATE OF TEXAS VS. RUBEN GUTIERREZ                           197

```
 1   particular?
 2        A.    No.
 3        Q.    Did you know Ms. Harrison?
 4        A.    (Shake head).
 5        Q.    Okay.  Did you grow up here in Brownsville?
 6        A.    No.
 7        Q.    Okay.  Where did you grow up?
 8        A.    San Benito.
 9        Q.    Okay.  Ms. Harrison was a school teacher here
10   in Brownsville.  So if you didn't know anything about her
11   or you don't know anything about the case, I need to know
12   if you can be fair and impartial right now as you sit
13   here in this courtroom.
14        A.    I would listen to the facts.
15        Q.    Okay.  And then make your decision?
16        A.    (Nods head).
17        Q.    Okay.  So you don't think now just because --
18                    THE COURT:  You need to verbalize your
19   answer.
20        Q.    (BY MS. FISCHER)  I'm sorry.  Mr. Perez, she's
21   going to take down everything you say.  So I need to make
22   sure that you say it so that she can hear it.
23        A.    Okay.
24        Q.    Let me ask you the question again.  Because of
25   your past experiences, can you put any personal feelings
```

STATE OF TEXAS VS. RUBEN GUTIERREZ                    198

1   you may have aside and be fair and impartial in this
2   case?
3        A.   I would be fair and impartial.
4        Q.   Okay.  The next part of this question, then, is
5   what we call the law of parties.  And it's a real long
6   question, but have you heard of the law of parties?  Do
7   you understand the concept that when two people are
8   robbing a bank, the person that goes in to get the money
9   is just as guilty as the get-away driver?
10       A.   Yes.
11       Q.   Are you okay with that law?
12       A.   (Nods head).
13       Q.   Okay.
14            THE COURT:  You need to answer, please.
15       A.   Yes.
16            THE COURT:  Thank you.
17       Q.   (BY MS. FISCHER)  She can't take down a nod of
18   the head.  She's got to hear you.
19            This question says that you can be
20   subjected to the death penalty if you actually cause the
21   death of the deceased.  Let's say you go into the
22   Circle K, you rob it and you shoot the store clerk.
23   That's capital murder and you can -- the death penalty
24   could be an appropriate punishment.
25            Even if you don't actually cause the death

STATE OF TEXAS VS. RUBEN GUTIERREZ                           199

1    of the deceased, if you intended for them to die, then

2    you can also receive the death penalty.  And that's kind

3    of in the situation where two people go into the

4    Circle K; and one of them goes to get the money, the

5    other goes to get the beer.  Let's say the store clerk

6    won't give up the money.  And so the other one -- let's

7    say I'm the one over here by the beer.  I say, "Well,

8    just kill him and let's go."

9              Obviously, the killer could get the death

10   penalty.  He actually caused the death.  What about the

11   one that didn't do the killing but said, "Go ahead and

12   kill him"?  How do you feel about that?

13        A.   I would say he would get a lighter sentence.

14        Q.   Okay.  Rather than death?

15        A.   (Nods head).

16        Q.   Why do you say that?

17        A.   I don't know, but he didn't actually pull the

18   trigger.

19        Q.   Okay.  But the law says you can consider him

20   for the death penalty if he intended for the person to be

21   killed.  If I say -- let's say Mr. Blaylock and I go into

22   the Circle K and I tell him -- when the clerk won't give

23   him the money, I say, "John, kill her," did I intend for

24   the store clerk to die?

25        A.   Yes.  I understand now.