IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| RUBEN GUTIERREZ, | § | |
| | § | |
| Petitioner, | § | |
| | § | Civil Action No. 1:09-CV-00022 |
| VS. | § | |
| | § | This is a capital case |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal Justice, | § | **Execution Scheduled for 9/12/18** |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

### FEDERAL DEFENDER'S ADVISORY REGARDING THE PENDING MOTION TO APPOINT COUNSEL

COMES NOW, the Federal Defender for the Western District of Texas, by and through her supervising assistant for the Capital Habeas Unit ("CHU"), and advises this Court regarding Ruben Gutierrez's pending Motion (Doc. 56), to appoint the CHU to monitor his case and propose qualified counsel for appointment under 18 U.S.C. § 3599, and to replace current counsel who is unable to fulfill the statutory requirements of her appointment. For the following reasons, the Federal Defender respectfully submits the Motion should be granted.

1. Substitution is Mandatory Under the Unique Circumstances of this Case

Section 3599 creates "a mandatory right to qualified legal counsel" for death-sentenced individuals. *McFarland v. Scott*, 512 U.S. 849, 859 (1994). As both parties have already advised this Court, § 3599(e) requires that an attorney appointed under that section be able to represent the petitioner through all available proceedings. Mot. (Doc. 56) at 3-4;

1

Opp. (Doc. 58) at 2. Mr. Gutierrez's current counsel is unable to continue under the statute's unambiguous terms because she cannot appear as appointed counsel in the Court of Appeals for the Fifth Circuit. Appointed counsel's expulsion from filing as appointed counsel disqualifies her from appointment under § 3599(e)'s terms such that her withdrawal and the substitution of new counsel are necessary.

The impossibility of appointed counsel continuing under the statute is plain when one considers the possibility of an adverse ruling on the present Motion. Were this Court to deny the motion to withdraw and substitute counsel, Mr. Gutierrez would have the right to appeal. *See, e.g., Christeson v. Roper*, 574 U.S. ___, 135 S. Ct. 891 (2015). The parties agree that § 3599(e) entitles Mr. Gutierrez to counsel in that proceeding. But Mr. Gutierrez would be without counsel to appeal an adverse ruling on the pending motion. Thus, regardless of whatever other remedies may be available to Mr. Gutierrez, there is already an adversarial proceeding in which he is one ruling away from being unrepresented.[1]

The parties have advised this Court that *Martel v. Clair*, 665 U.S. 648 (2012), established an "interests of justice" standard for substitution motions under § 3599. In *Clair*, the Supreme Court rejected a standard for substitution of counsel under § 3599(e) that would have required that "'the lawyer lacks the qualifications necessary for appointment ....'" *Christeson*, 135 S. Ct. at 894 (quoting *Clair*, 565 U.S. at 658). The Court found that standard

---

[1] Similarly, were this Court to issue or deny a stay of execution, Mr. Gutierrez would be without counsel to appeal from or defend that ruling. On July 17, 2018, undersigned counsel provided appointed counsel a motion for various forms of relief including both those sought in the pending Motion and a stay of execution. The pending Motion borrows generously from that draft, but appointed counsel elected not to seek a stay.

2

was too restrictive. *Clair*, 565 U.S. at 658; *id.* at 660-61 ("Still worse, the State's proposed test guts § 3599's provision for substitution motions."). *Clair* also rejected a requirement that the appointed attorney have a disqualifying conflict of interest. *Ibid.* Here, Mr. Gutierrez satisfies even the too-restrictive standard rejected by *Clair*. Due to her inability to represent Mr. Gutierrez under § 3599 in any proceedings before the Fifth Circuit, appointed counsel lacks a qualification necessary for appointment. As discussed *infra*, she also labors under a conflict when replying to the State's Opposition. Therefore, under the extraordinary circumstances of this case, this Court lacks discretion to deny withdrawal and substitution; appointed counsel does not meet the statutory criteria for continued appointment and, for the reasons explained *infra*, she cannot be associated with new counsel.

### 2. Conflict of Interest Rules Preclude a Co-counsel Remedy in this Case

#### a. *Appointed Counsel has a Conflict of Interest*

This Court has asked counsel to address whether the appointment of co-counsel for Mr. Gutierrez would resolve the issue. The Federal Defender, through undersigned counsel, respectfully submits co-counsel would not adequately address this situation. First, as just stated, appointed counsel is ineligible to continue under the plain language of § 3599. Second, the State's Opposition holds Mr. Gutierrez accountable for appointed counsel's delay in bringing her Fifth Circuit disqualification to the attention of this Court. Opp. 4-6. The State correctly asserts that appointed counsel's inability to proceed under the terms of her appointment was apparent as early as January 2018. Opp. 4-5 & n. 4. But, the State asserts, *Mr. Gutierrez* was dilatory because *appointed counsel* waited six months to seek a remedy. *Id.* at 4-6.

Appointed counsel had a duty to keep her client advised of significant developments in the case, and to provide information "reasonably necessary to permit the client to make informed decisions regarding the representation."[2] Tex. Disciplinary R. Prof. Conduct. 1.03(a) & (b). But appointed counsel delayed bringing her filing disability to Mr. Gutierrez's attention until the case reached the present crisis point, and that delay is being used against her client even though the same delay arguably constituted a breach of her duties to that client.

In *Christeson, supra*, the Supreme Court found counsel labors under a conflict of interest when she must assert her own professional failings as grounds for the client to obtain equitable or other forms of relief. *Christeson*, 135 S. Ct. at 894 (citing *Maples v. Thomas*, 565 U.S. 266, 285, n. 8 (2012)). The State's Opposition, by urging this Court to hold Mr. Gutierrez responsible for delays caused by his counsel's failure to advise him, requires the attorney representing Mr. Gutierrez to point out that the equities weigh against the State's position because appointed counsel failed to fulfill her duty to keep her client informed that she was unable to fulfill the requirements of her appointment. *Cf. Maples, supra*, 565 U.S. at 286 (granting relief from default where counsel failed to keep petitioner informed that they

---

[2] Rule 4, ¶ A, of the Rules of Discipline of this Court requires that a lawyer must advise this Court if she has been disbarred or suspended by another court, and must "immediately cease to practice before this court." Appointed counsel has not been disbarred or suspended from practice before the Fifth Circuit. But she has been barred from filing in cases in which she was appointed under the Criminal Justice Act ("CJA"), including another capital habeas case with an execution date. It would have been consistent with the spirit of Rule 4, at least, for appointed counsel to have immediately reported her removal from the Fifth Circuit's CJA panel so that this Court could determine whether to continue her appointment.

were not able to continue to represent him and that failure to inform led to default). That is, even in this proceeding to determine whether Mr. Gutierrez is entitled to substitute counsel, appointed counsel is unable to fully assert the petitioner's interests.

In *Christeson,* the Court held it was an abuse of discretion for the lower courts to refuse to substitute counsel so that conflict-free counsel could seek relief based on the deficient representation of appointed counsel. Here, the State concedes that the Fifth Circuit has held § 3599 entitles a capital habeas petitioner to conflict-free counsel. Opp. 3 (citing *Clark v. Davis*, 850 F.3d 770, 779 (5th Cir. 2017)). Therefore, the result here should be the same as the result in *Christeson*: this Court should appoint new counsel and give conflict-free counsel adequate time to identify and assert any grounds for relief that might be available to Mr. Gutierrez. *See Christeson*, 135 S. Ct. at 895.

### b. Current Counsel's Conflict would be Imputed to Co-counsel

Appointed counsel's inability to assert her own deficiencies precludes not only her sole appearance in this matter, but her appearance as co-counsel. Appointed counsel's legal disability falls under Texas Disciplinary Rule 1.06(b)(2) which prohibits a lawyer from representing "a person if the representation of that person . . . reasonably appears to be or become adversely limited . . . by the lawyer's or law firm's own interests." Texas Disciplinary Rule 1.06(f) provides that if a particular lawyer could not represent a client under the conflict disqualification rule, "no other lawyer while a member of or associated with that lawyer's firm" may represent the client. Were this Court to appoint co-counsel for Ms. Schmucker, it would be associating that lawyer with her in a way that violates the imputed disqualification rule.

5

Under *Maples* and *Christeson,* appointed counsel's interest in avoiding the reputational and economic harms of pleading her own lack of diligence is a sufficient conflict to require substitution. But appointed counsel in this case has an even greater adverse interest than the lawyers in *Maples* and *Christeson* due to the significant reputational and economic damage arising from the Fifth Circuit's action against her. In combination, appointed counsel's expulsion from the Fifth Circuit panel and her delay in coming to this Court makes her interest in avoiding a finding of deficiency overwhelmingly adverse to Mr. Gutierrez's interest in obtaining that finding. It would be asking too much of any lawyers to force them together in a case that requires one of the lawyers to attack the performance of her co-counsel.

### 3. Mr. Gutierrez Seeks Counsel who is Able to Fully Enforce his Rights

This Court directed the parties to address Mr. Gutierrez's position on the pending Motion. On July 24, 2018, appointed counsel advised undersigned counsel that she would file the pending Motion seeking to have the CHU appointed for the purpose of monitoring the case and identifying potential counsel for appointment. Anticipating this Court's question, and aware of the tight time constraints, the same day, undersigned counsel spoke with a colleague from the Texas Defender Service ("TDS") who was planning a trip to see clients at the Polunsky Unit where Mr. Gutierrez is being held. Undersigned counsel was speaking with the colleague as part of counsel's ongoing efforts to locate substitute counsel for Mr. Gutierrez which began before appointed counsel filed her substitution motion. Mr.

Gutierrez had written to TDS seeking assistance with his case.[3] Undersigned counsel asked the colleague to meet with Mr. Gutierrez for the purpose of learning what he wanted. Appointed counsel had previously told the undersigned that she had advised Mr. Gutierrez that she might need to withdraw and seek substitute counsel, and he was prepared to for that.

On July 27, 2018, the colleague met with Mr. Gutierrez at the Polunsky Unit. Mr. Gutierrez advised that he was unaware of the Motion filed by appointed counsel but he wants the relief requested in the Motion. Specifically, Mr. Gutierrez said he wants counsel who is able to represent him in each court from which he might seek relief. He wants counsel who can represent him to the fullest of their abilities and, in particular, an attorney who can advocate for his right to counsel.

Although the colleague did not bring a document for Mr. Gutierrez to write down his desires, Mr. Gutierrez indicated he is willing to sign a retention agreement with new counsel.

### 4.  Appointment of the CHU is Appropriate and will Assist the Court

Federal habeas courts rely on CHUs for more than direct representation. Prior to the creation of the CHUs in Texas, a CHU in another State would be counted upon to "track capital cases in that state to ensure that the claims of death-row inmates are timely presented in both state and federal court." *Lugo v. Secretary, Florida DOC*, 750 F.3d 1198, 1215 (11th Cir. 2014) (Carnes, CJ). CHUs "provide critical assistance and training to private . . . counsel" handling capital habeas cases. *Ibid.*

---

[3] TDS has advised the CHU that it cannot take Mr. Gutierrez's case.

The CHU located in the Office of the Federal Defender for the Northern District of Texas was able to assist Mr. Gutierrez's appointed counsel in another case under similar circumstances. After appointed counsel's inability to appear as CJA counsel in the Fifth Circuit came to light during the litigation in that case, undersigned counsel began searching for qualified attorneys to represent Mr. Gutierrez.

Undersigned counsel proposed having an innocence project assist in Mr. Gutierrez's representation. Appointed counsel vehemently objected to the assistance.

As of this date of filing, undersigned counsel is working with other attorneys to secure counsel for Mr. Gutierrez. If this Court appoints the undersigned, he will file a motion for a stay of execution so that new counsel will have an opportunity to identify Mr. Gutierrez's legal options as the Supreme Court allowed in *Christeson, supra.*

Dated: August 1, 2018

>Respectfully submitted,
>
>MAUREEN SCOTT FRANCO
>Federal Public Defender
>
>/s/ Tivon Schardl
>
>TIVON SCHARDL
>Supervisory Asst. Federal Public Defender
>Capital Habeas Unit
>Bar Number: Florida 73016
>504 Lavaca Street, Suite 960
>Austin, Texas 78701
>Tel.:   512-916-5025
>Fax:   512-916-5035
>Tivon_Schardl@fd.org

**CERTIFICATE OF SERVICE**

  This certifies that a true and correct copy of the foregoing Advisory has been served upon counsel for the Respondent via the CM/ECF system.

                  */s/ Tivon Schardl*
                   Tivon Schardl